# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SIEMENS INDUSTRY SOFTWARE INC., )
)
)
Plaintiff, )
)
v. )
)
BELL SEMICONDUCTOR, LLC, )
)
Defendant. )

C.A. No. 22-01569-CFC

JURY TRIAL DEMAND

### PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

Dated: February 9, 2023

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**

OF COUNSEL:
Frank C. Cimino, Jr.
Megan S. Woodworth
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
202.344.4569
202.344.8300 – Facsimile
fccimino@Venable.com
mswoodworth@Venable.com

Robert E. Bugg
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
New York, NY 10020
212.370.6241
212.307.5598 – Facsimile
rebugg@Venable.com

Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis M. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys For Siemens Industry
Software Inc.*

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS...........................1

II.  SUMMARY OF THE ARGUMENT....................................................1

III. STATEMENT OF THE FACTS.........................................................3

IV.  ARGUMENT......................................................................................5

    A.   Legal Standard. ...........................................................................5

    B.   This Court Has Jurisdiction Over Siemens' Case.......................6

        1.   Siemens' allegations establish reasonable potential for indemnity obligations .......................................................7

        2.   Controversy exists as to indirect infringement............. 10

        3.   Controversy exists as to direct infringement ................ 16

    C.   The Court Should Not Decline Jurisdiction............................ 19

    D.   If Necessary, Siemens Should be Granted Leave to Amend ... 22

V.   CONCLUSION ................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allergan, Inc. v. Revance Therapeutics, Inc.*,
No. 21-1411-RGA, 2022 WL 2866723 (D. Del. July 21, 2022) ...............5

*Applied Materials Inc. v. Cohen*,
No. 17-CV-04990-EMC, 2018 WL 1400378 (N.D. Cal. Mar. 20,
2018) ............................................................................................... 15, 19

*Applied Materials, Inc. v. Demaray LLC*,
No. 5:20-CV-09341-EJD, 2021 WL 4222177 (N.D. Cal. Sept. 16,
2021) ....................................................................... 15, 17, 18, 19

*Arris Grp., Inc. v. Brit. Telecomms. PLC*,
639 F.3d 1368 (Fed. Cir. 2011) .......................................... 2, 7, 11, 15, 16

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ...................................................................3

*Citrix Sys., Inc. v. Parallel Networks Licensing, LLC*,
No. 19-2005-LPS, 2020 WL 2309073 (D. Del. May 8, 2020)............... 13

*Const. Party of Penn. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ............................................................. 2, 5, 6

*Edmunds Holding Co. v. Autobytel Inc.*,
598 F. Supp. 2d 606 (D. Del. 2009) ....................................................... 14

*FedEx Corp. Servs., Inc. v. Eclipse IP LLC*,
15 F. Supp. 3d 1346 (N.D. Ga. 2013)................................................... 7, 8

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358, 1363 (Fed. Cir. 2009) ........................................ 14, 15, 18

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) .......................................................... 2, 22

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)......................................................................... 1, 6, 14

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) ........................................................ *passim*

*Microsoft Corp. v. GeoTag, Inc.*,
    No. 11-175-RGA, 2014 WL 4312167 (D. Del. Aug. 29, 2014) ....... 16, 18

*Microsoft Corp. v. SynKloud Techs., LLC*,
    484 F. Supp. 3d 171 (D. Del. 2020) ...........................................................8

*Microsoft Corp. v. WebXchange Inc.*,
    No. CA 09-484-JJF, 2009 WL 3534845 (D. Del. Oct. 30, 2009) ..... 15, 21

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
    34 F.4th 1334 (Fed. Cir. 2022) ........................................................ *passim*

*In re Mobile Telecomms. Techs., LLC*,
    247 F. Supp. 3d 456 (D. Del. 2017) ................................................. 2, 7, 18

*Schuchardt v. President of the United States*,
    839 F.3d 336 (3d Cir. 2016) .......................................................................7

*SpeedTrack, Inc. v. Off. Depot, Inc.*,
    791 F.3d 1317 (Fed. Cir. 2015) ................................................................ 21

*Vitaworks IP, LLC v. Glanbia Nutritionals (NA), Inc.*,
    No. 19-2259-CFC, 2021 WL 5061707 (D. Del. Oct. 26, 2021) ............. 22

*Wheeler v. Wheeler*,
    639 F. App'x 147 (3d Cir. 2016) ...............................................................3

## **Statutes**

28 U.S.C. § 2201 .........................................................................................6

28 U.S.C. § 271 .................................................................... 3, 11, 12, 16, 18

## **Other Authorities**

Fed. R. Civ. P. 15(a) ......................................................................... 22

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Siemens Industry Software Inc. ("Siemens") filed this declaratory judgment ("DJ") action against Defendant ("BSLLC") in response to BSLLC's nationwide litigation campaign against Siemens' customers.  Other large suppliers, Synopsys, Inc. ("Synopsys") and Cadence Design Systems, Inc. ("Cadence"), have filed a separate Declaratory Judgment case, also in this district (Case No. 1:22-cv-01512-CFC), in which a similar motion to dismiss is currently pending.

BSLLC's claims against Siemens' customers appear focused on the use of Siemens' products.  BSLLC's claims have caused Siemens' customers to demand indemnity and created a reasonable apprehension BSLLC could sue Siemens for infringement.  D.I. 1 ("Compl.") ¶11.  Siemens thus asks this Court for relief—a declaration of non-infringement. *Id.* ¶¶89-115.

BSLLC now moves to dismiss for lack of subject matter jurisdiction ("SMJ").  As explained below, the Court has jurisdiction and should not decline to adjudicate this dispute.

## II.    SUMMARY OF THE ARGUMENT

1.    This Court has jurisdiction over this action.  Arguing a rigid standard governs the case-and-controversy inquiry, BSLLC overlooks the seminal case, *MedImmune v. Genentech*, where the Supreme Court eschewed a rigid inquiry in

assessing DJ jurisdiction in favor of an "all the circumstances" approach. 549 U.S. 118, 127 (2007).

2.    Multiple grounds establish SMJ, including (1) indemnity obligations, (2) controversy as to Siemens' alleged indirect infringement based on its customers' alleged direct infringement, and (3) controversy as to Siemens' alleged direct infringement based on BSLLC's allegations against the customers. *Arris Grp., Inc. v. Brit. Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011); *In re Mobile Telecomms. Techs., LLC*, 247 F. Supp. 3d 456, 461-62 (D. Del. 2017).

3.    Because BSLLC mounts a "facial" attack on SMJ, the Court "consider[s] the allegations of the complaint and documents referenced therein and attached thereto[] in the light most favorable to the plaintiff[s]." *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Under this standard, Siemens' allegations establish SMJ under each basis enumerated above.

4.    BSLLC's request for discretionary denial should be rejected. BSLLC's "laches" argument fails. Siemens did not delay; it filed suit soon after BSLLC accelerated its litigation campaign. And forcing Siemens to intervene in dozens of customer suits would be far less efficient than proceeding here, where the parties with the greatest knowledge and stake in the dispute can litigate it. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

## III.    STATEMENT OF THE FACTS

Starting in April 2022, BSLLC filed over 60 district court actions as well as ITC investigations against customers that use Siemens' Electronic Design Automation ("EDA") software tools.    Compl. ¶¶7-9.    Asserting six patents, BSLLC relies on customers' use of Siemens' tools (and/or Synopsys and Cadence's tools) to plead infringement under 35 U.S.C. § 271.    *Id.* ¶¶7, 51, 57, 65, 75.    BSLLC accuses Siemens' design tools, including its Calibre Design Solutions software product (the "Accused Tool"), as reflected in claim charts attached to customer complaints.[1]    BSLLC does not allege customers modify the Accused Tool to infringe.    *See id.* ¶10.    Nor does BSLLC allege the Accused Tool must be combined with other technology to infringe.    *Id.*    BSLLC, through experts, contends the Accused Tool is specifically designed to follow industry "standard practice[s]" such that use thereof makes infringement "highly likely" and noninfringement "highly unlikely."    Bugg Decl., Ex. 13 at ¶¶24, 85; Ex. 14 at

---

[1] Compl. ¶10; Bugg Decl., Ex. 1 at 10; Ex. 2 at 12-15; Ex. 3 at 13-16; Ex. 4 at 10; Ex. 5 at 3; Ex. 6 at 1, 2, 5, 11-12, 17; Ex. 7 at 3; Ex. 9 at 1; Ex. 10 at 1, 3, 5, 6; Ex. 11 at 2; Ex. 12 at 1, 2, 5, 11, 17, 25, 49, 55, 65 (exemplary accusations in District Court and ITC against NXP, accusing Siemens' tools and citing Calibre documentation).    These are integral pleadings from proceedings referenced in the Complaint also subject to judicial notice.    *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("document integral to or explicitly relied upon in the complaint may be considered without converting the motion into one for summary judgment"); *Wheeler v. Wheeler*, 639 F. App'x 147, 151 n.10 (3d Cir. 2016) (judicial notice of judicial proceedings).

¶¶24, 76, 83, 84, 86, 87; Ex. 15 at ¶¶25, 73, 80, 82; Ex. 16 at ¶¶35, 76; Ex. 17 at

¶¶23, 77; Ex. 18 at ¶¶26, 74, 81, 83; Ex. 19 at ¶¶35, 76.

Siemens licenses its tools to customers via agreements with indemnity

provisions. Compl. ¶11. And as of the filing of Siemens' Complaint, eighteen

defendant-customers have requested indemnity from Siemens. ¶¶6, 11. BSLLC is

seeking discovery from Siemens in the customer cases. In both ITC Investigations,

BSLLC served subpoenas on Siemens seeking documents, testimony, and source

code relating to the Accused Tool. Compl. ¶72; Bugg Decl., Exs. 20-24. In

applying for those subpoenas, BSLLC told the Administrative Law Judge that:

> Siemens is in possession of information relevant to this
> action because Siemens is the supplier of semiconductor
> design tools to the Respondents. These design tools are
> used by the Respondents to design semiconductor
> devices in a manner that directly infringes the method
> claims of the '760 Patent. The documents in Siemens's
> control detail the design features and operations that
> Respondents use which are relevant to this investigation.

Bugg Decl., Ex. 24 at 2 (internal citation omitted). BSLLC also urged the ALJ to

issue the subpoena "[g]iven the importance of the information within Siemen's

possession…." *Id.*

Siemens filed its DJ complaint on December 2, 2022, shortly after BSLLC's

litigation campaign accelerated. Compl. ¶9, Ex. M. Siemens also filed a motion

for Preliminary Injunction on December 29, 2022, to enjoin BSLLC from

proceeding with the customer cases against Siemens' customers. D.I. 17.

While BSLLC has allegedly "reached terms" with certain customers and some of the cases have been dismissed, at least 21 district court cases and two ITC actions involving Siemens' customers will remain, even if all suggested settlements are consummated. *Compare* D.I. 32 ("Mot.") at 5, n.2 *with* Compl. ¶7.

## IV.    ARGUMENT

### A.    Legal Standard

There are two types of subject matter jurisdiction challenges: "facial" and "factual." *Aichele*, 757 F.3d at 357. A "facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* at 358 (cleaned up).

BSLLC fails to state which type of challenge it makes, but its Motion does not contradict the Complaint's allegations. BSLLC instead contends the Complaint does not allege sufficient jurisdictional facts. *E.g.*, Mot. 1 (Siemens "alleged no case or controversy"). This suggests a facial attack. *Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 21-1411-RGA, 2022 WL 2866723, at *3 (D. Del. July 21, 2022); *Aichele*, 757 F.3d at 358-59.

Siemens, therefore, is "entitled to the more generous standard of review associated with" a facial attack. *Aichele*, 757 F.3d at 359. The Court "consider[s] the allegations of the complaint and documents referenced therein and attached

thereto[] in the light most favorable to the plaintiff." *Id.* at 358.  The Court should not "weigh and 'consider evidence outside the pleadings'" or "foray into fact-finding." *Id.* at 358, 359.  The Complaint's allegations, taken as true and construed in favor of Siemens, establish this Court has SMJ over the parties' dispute.[2]

### B.    This Court Has Jurisdiction Over Siemens' Case

The DJ Act allows courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The Supreme Court rejected rigid application of this test, explaining "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127 (cleaned up).

BSLLC acknowledges that where, as here, a patentee sues a supplier's customers alleging infringement based on use of the supplier's technology, the supplier can establish jurisdiction in several ways: (1) a "'reasonable potential' for indemnification liability," or (2) a separate controversy as to the supplier's liability for indirect infringement based on the customer's alleged direct infringement.

---

[2] The Court should not entertain any belated effort to dispute jurisdictional facts for the first time on reply.  If it does, it "must permit [Siemens] to respond with

Mot. 7-8 (citing *Arris*, 639 F.3d at 1375). But these are not "prerequisites for …
jurisdiction in such situations." *Mobile Telecomms.*, 247 F. Supp. at 461. A
supplier can also: (3) demonstrate a controversy as to its own liability for ***direct***
infringement based on the patentee's allegations against customers, even absent
direct threats against the supplier. *Id.* at 461-62. Here, Siemens' Complaint
establishes SMJ under each of bases (1)-(3).

### 1.    Siemens' allegations establish reasonable potential for indemnity obligations

Indemnity obligations establish jurisdiction where (1) an infringement
controversy exists between a patentee and a DJ plaintiff's customers, and (2) DJ
plaintiff alleges facts establishing a "reasonable potential" it will be obligated to
defend/indemnify the customers. *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34
F.4th 1334, 1345-46 (Fed. Cir. 2022). Both requirements are met here: (1) BSLLC
filed infringement actions against Siemens' customers (Compl. ¶¶7-9), and (2)
Siemens' customers have requested indemnity and defense for BSLLC's
allegations pursuant to indemnity provisions of Siemens' license agreements. *Id.*
¶11. That suffices to establish jurisdiction. *E.g.*, *FedEx Corp. Servs., Inc. v.
Eclipse IP LLC*, 15 F. Supp. 3d 1346, 1348-49 (N.D. Ga. 2013) (existence of
indemnity agreements and customer indemnity demands sufficient).

---

evidence supporting jurisdiction." *Schuchardt v. President of the United States*,
839 F.3d 336, 343 (3d Cir. 2016).

BSLLC suggests Siemens needed to concede indemnity liability.  Mot. 9-10. The Federal Circuit expressly rejected that notion in *Mitek*.  34 F.4th at 1346 ("[W]e have never held that the validity of an indemnity demand … needs to be conceded.").[3]  Only a "reasonable potential" of liability is required.  *Id.*  When considering a facial attack on jurisdiction, courts should "closely analyze the relevant indemnity allegations" to determine whether they suffice.  *Id.*  Alleging an indemnity request pursuant to a written agreement is sufficient.  *FedEx*, 15 F. Supp. 3d at 1348-49.

In *Mitek*, the DJ plaintiff alleged its customer contracts contained indemnity clauses and that it received indemnity requests from its customer.  *Id.* at 1338.  It provided no "concrete examples regarding indemnification [n]or attach[ed] any documents embodying an indemnification agreement or a demand for indemnification."  *Id.*  Instead, it pled that its "[customer] agreements include indemnification provisions relating to actual or alleged patent infringement … [and] Mitek has received demands for indemnification from its customers and suppliers"  *Id.*  In fact, in *Mitek*, only one customer suit had been filed before Mitek filed its DJ action—the remaining customers had only received warning

---

[3] *Mitek* thus abrogated decisions requiring DJ plaintiffs to concede indemnity liability. *E.g.*, *Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 179 (D. Del. 2020) (requiring "direct allegation" DJ plaintiff "is obligated to indemnify its customers").

letters of possible infringement. *Id.* Still, the Federal Circuit vacated the district court's dismissal for lack of jurisdiction. *Id.* at 1349.

Siemens' allegations pass muster under *Mitek's* "reasonable potential" standard. Siemens alleges: (1) it has customer contracts governing use of Siemens' tools; (2) the contracts have indemnity provisions for infringement; and (3) customers requested indemnity for BSLLC's claims. Compl. ¶11. Siemens' allegations match those in *Mitek* and establish a "reasonable potential" of indemnity liability.[4]

BSLLC's remaining arguments that Siemens has not established "reasonable potential" for indemnification liability likewise fail.

First, BSLLC argues Siemens needed to allege the "precise scope" of their indemnity agreements so the Court can assess the "merit" of the requests. Mot. 8-9. BSLLC conflates a facial attack with a factual one. The *Mitek* court stated the precise scope of indemnity agreements "may" be relevant to a factual attack—not a facial attack like BSLLC's here. 34 F.4th at 1346. If the Court is inclined to entertain a factual attack on Siemens' obligations, Siemens will submit the underlying agreements, which have already been produced to BSLLC.

---

[4] Siemens has agreed to defend/indemnify customers in connection with BSLLC's allegations, further underscoring a "reasonable potential" the indemnity requests are valid. D.I. 17-3, ¶¶6-8. If the Court finds the Complaint deficient for failure to allege such agreement, Siemens should be granted leave to amend. *See infra* § IV.D.

Second, BSLLC argues Siemens pled itself out of Court by noting disputes with certain customers as to the scope of Siemens' indemnity obligations. Mot. 9 (citing D.I. 17-3). But Siemens expressly admits that it has agreements with customers relating to the Accused Tool that include defense/indemnity obligation provisions, and that many customers have demanded defense or indemnity. Siemens' reservation of rights under the circumstances, however, is irrelevant, as it need not concede liability under *Mitek*. 34 F.4th at 1341-42, 1346 (finding that Mitek could meet the jurisdictional standard despite that Mitek would "not concede an indemnity obligation for customers' demands for indemnification").

Finally, BSLLC argues Siemens cannot show this Court has subject matter jurisdiction "*throughout* [this] suit," pointing to allegations that BSLLC has "reached terms" with some of Siemens' customers. Mot. 10-11. As noted above, at least 21 district court cases and two ITC actions involving Siemens' customers will nevertheless remain. Thus, Siemens has standing and no "speculation" is required.

The Court should deny BSLLC's facial challenge to Siemens' indemnity obligations, which independently establish a justiciable controversy.

### 2.    Controversy exists as to indirect infringement

BSLLC alleges customers directly infringe by using Siemens' tools to practice the claims of the asserted patents. Compl. ¶¶51, 57, 65, 75. BSLLC's

allegations impliedly contend Siemens provides the customers with the components to infringe, as well as instructions for using those components in an infringing manner. *E.g.*, Compl., Ex. H, *passim*. Those allegations thus establish a controversy between BSLLC and Siemens as to Siemens' liability for indirect infringement.

"[W]hen the holder of a patent with method claims accuses [a] supplier's customers of direct infringement based on their use of the supplier's product in the performance of the claimed method, an implicit assertion of indirect infringement by a supplier may arise." *Arris*, 639 F.3d at 1375-76. To determine whether a patentee made such an implied assertion, the Court "look[s] to the elements of the potential cause of action" under 35 U.S.C. § 271. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014). A patentee's allegations against customers need only establish a "reasonable potential that such a claim [of indirect infringement] could be brought" against the supplier. *Id.*

Here, Siemens faces a reasonable potential of a claim of induced infringement under § 271(b). To allege Siemens induced infringement, BSLLC would need to allege Siemens "took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Id.* at 904. BSLLC's allegations against Siemens' customers satisfy these elements.

*DataTern* is instructive. *Id.* at 902. The *DataTern* patentee accused DJ plaintiff's customers of direct infringement based on their use of plaintiffs' software. *Id.* The patentee's claim charts in the customer cases "extensively refer[red] to ... functionality" of the DJ plaintiffs' software and cited plaintiffs' "user guides and documentation for each element" of the charted claims. *Id.* The *DataTern* court found these claim charts established an actual controversy between the patentee and DJ plaintiffs. *Id.* at 905. The court reasoned that, because the claim charts alleged infringement based on the customers' use of the accused software and "cite[d] to [supplier]-provided user guides and documentation for each claim element," the charts alleged the supplier "provide[d] its customers with the necessary components to infringe … as well as the instruction manuals for using the components in an infringing manner," which the court held was "evidence of the required mental state." *Id.; see also Mitek* 34 F.4th at 1343 (providing manuals along with software enough for inducement, even where a customer's customization is required for infringement).

BSLLC's allegations here are similar to those in *DataTern*. BSLLC alleges customers infringe by using Siemens' tools. Compl., *passim*. Although BSLLC's claim charts focus largely on excerpts from Cadence manuals, each Complaint refers to Siemens' Accused Tool as providing the same functionality, which BSLLC's experts have expressly declared in urging the ITC to open an

12

Investigation. E.g., Bugg Decl. Ex. 18, ¶16 ("the design tools used by design engineers in the semiconductor industry, all operate in substantially similar fashion for schematic capture, simulation, layout, verification, design rule check, and fill-generation."); *see also* Bugg Decl. Ex. 12 at 1, 2, 5, 11, 17, 25, 49, 55, 65 (exemplary NXP claim chart wherein BSLLC alleges "[t]hese same steps are carried out by Siemens," citing Siemens' Calibre documentation).

Thus, as in *DataTern*, BSLLC's claim charts allege Siemens provides customers with the components to infringe, as well as instruction manuals for using the components in an infringing manner. The charts, therefore, impliedly assert indirect infringement against Siemens. *DataTern*, 755 F.3d at 905; *see also Citrix Sys., Inc. v. Parallel Networks Licensing, LLC*, No. 19-2005-LPS, 2020 WL 2309073, at *2-6 (D. Del. May 8, 2020) (finding controversy as to indirect infringement where complaint in customer case "relie[d] on [DJ plaintiff's] user manuals and documentation in its description of the alleged infringement").[5]

BSLLC argues a patentee must "manifest[] an intent to assert" its patents by "act[ing] 'overtly and specifically toward[s]'" Siemens to establish a controversy. Mot. 11. BSLLC is wrong, and its own cited cases demonstrate no such requirement. *See Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606,

---

[5] BSLLC's contentions do not need to "compel the conclusion" Siemens also infringes. Mot. 13 (citing *Fujitsu*). They need only establish a "reasonable

610 (D. Del. 2009) ("overt, specific act toward the declaratory judgment plaintiff is not required to demonstrate the existence of an actual controversy"); *DataTern*, 755 F.3d at 905 (finding jurisdiction despite absence of overt act).[6]

As the Supreme Court made clear in *MedImmune*, rigid tests for DJ jurisdiction are inappropriate, as "all the circumstances" must be considered in determining whether a substantial controversy exists.  549 U.S. at 127; *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009) ("conduct that can be reasonably inferred as demonstrating [an] intent to enforce a patent can create declaratory judgment jurisdiction").  BSLLC's avoidance of "overt" and "specific" threats against Siemens therefore does not eliminate the implied threat of infringement created by its own pleadings.  *Hewlett-Packard*, 587 F.3d at 1362 ("purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement'"); *Arris*, 639 F.3d at 1379 (express accusation of infringement unnecessary); *Applied Materials Inc. v. Cohen*, No. 17-CV-04990-EMC, 2018 WL 1400378, at *5-7 (N.D. Cal. Mar. 20, 2018) (finding controversy as to indirect

---

potential" BSLLC could bring a claim for indirect infringement. *DataTern*, 755 F.3d at 905.  Regardless, BSLLC's contentions meet either standard.

[6] *Edmunds* concluded "more" was required in the absence of an "overt, specific act."  598 F. Supp. 2d at 610.  *Mitek* concluded "more" was shown by the claim charts patentee sent to customers and an assertion that software used by customers "operates in a similar way."  34 F.4th at 1345.

infringement without "any contact or affirmative acts of patent enforcement taken against" DJ plaintiff).

Nevertheless, BSLLC has acted "overtly and specifically" towards Siemens. In BSLLC's ITC cases against customers, BSLLC subpoenaed information about Siemens' tools in connection with its infringement allegations. Compl. ¶72. BSLLC's "subpoena requests demonstrate [BSLLC's] intent to enforce its patents and the threat of future injury facing" Siemens itself. *Applied Materials, Inc. v. Demaray LLC*, No. 5:20-CV-09341-EJD, 2021 WL 4222177, at *6 (N.D. Cal. Sept. 16, 2021).[7] Nor has BSLLC provided Siemens a covenant-not-to-sue, further demonstrating the existence of a justiciable dispute. *Id.* at *7; *Arris*, 639 F.3d at 1381.

Finally, BSLLC's reliance on *WebXchange* is misplaced. *WebXchange* predates *Arris* and *DataTern* and improperly required that the patentee's contentions against customers would "necessitate a finding that [DJ plaintiff] itself infringed"—rather than merely establishing a "reasonable potential" of an indirect infringement claim being brought. *Microsoft Corp. v. WebXchange Inc.*, No. CA 09-484-JJF, 2009 WL 3534845, at *4 (D. Del. Oct. 30, 2009). It is also distinguishable, as the patentee there alleged infringement based on a "larger

---

[7] Contrary to BSLLC's suggestion (Mot. 12), the Federal Circuit did not hold in *Mitek* that subpoenas should be given "no weight" in the jurisdictional analysis, but

[customer] system, of which" DJ plaintiff's software was "just one part." *Id.* at *3. Here, by contrast, BSLLC's allegations are focused solely on use of the EDA tools.

### 3.    Controversy exists as to direct infringement

BSLLC also impliedly asserts direct infringement against Siemens by alleging customers directly infringe the asserted patents by using Siemens' tools. *See Microsoft Corp. v. GeoTag, Inc.*, No. 11-175-RGA, 2014 WL 4312167, at *2 (D. Del. Aug. 29, 2014).    Because it "is entirely possible that a customer and vendor can both directly infringe a patent based upon the same conduct," where the supplier engages in similar conduct as the customer, the patentee "could just as easily have asserted a claim of direct infringement against [supplier] based on the same underlying circumstances in the customer suits." *Id.*   In these circumstances, an "express accusation" against the supplier is "unnecessary." *Id.* (finding jurisdiction based on "reasonable potential" of direct infringement claim against DJ plaintiff).

Because BSLLC alleges infringement under § 271(a) (Compl. ¶¶7, 51, 57, 65, 75) and Siemens itself uses its tools—including for R&D, testing, and demonstration purposes—BSLLC's allegations against customers also establish a controversy as to Siemens' liability for direct infringement. *See* Compl. ¶¶13, 34, 92, 96, 100, 104, 108, 112.   Construed in the light most favorable to Siemens,

_____

instead faulted the district court for not providing adequate reasoning for its

Siemens' allegations make it implausible that Siemens does not use its own software for research, development, testing, and demonstration purposes. Compl. ¶¶2, 4. Indeed, in its Prayer For Relief, Siemens requests declarations for each BSLLC patent that Siemens "does not infringe any claim … directly or indirectly." Compl. p.40.[8]

*Demaray* is instructive. 2021 WL 4222177. There, the patentee asserted method claims against DJ plaintiff's customers, alleging infringement based on use of DJ plaintiff's products. *Id.* at *2. Although the patentee had not directly accused the plaintiff of infringement, the court nonetheless found a controversy as to plaintiff's liability for direct infringement. *Id.* at *7. In particular, the *Demaray* patentee—like BSLLC—accused customers of "directly infringing … method claims" by using DJ plaintiff's technology. *Id.* Patentee's infringement contentions "clearly identified" plaintiff's technology "as embodying numerous elements of the asserted claims," and—like BSLLC—patentee "relied in part on [plaintiff's] literature and documentation about" plaintiff's technology for almost every claim limitation. *Id.* Because the DJ plaintiff had also used the software accused of practicing the patentee's claims, the court found a "sufficient threat of a

---

finding of no jurisdiction. 34 F.4th at 1342-44.

[8] If the Court finds the Complaint is deficient for failure to describe such use in more detail, Siemens should be granted leave to amend. *See infra* § IV.D.

17

claim for direct infringement" against plaintiff "so as to give rise to an actual controversy." *Id.*

Here, BSLLC accuses customers of infringing the asserted patents by using Siemens' tools. *Supra* at 3, n.1. BSLLC's contentions thus impliedly assert Siemens directly infringes the asserted patents because Siemens also uses their tools, including for R&D, testing, and demonstration purposes. *See* Compl. ¶¶2-4. BSLLC, therefore, "could just as easily have asserted a claim for direct infringement against" Siemens. *Demaray*, 2021 WL 4222177, at *7; *GeoTag*, 2014 WL 4312167, at *2. Thus, "there is a sufficient threat of a claim for direct infringement under 35 U.S.C. § 271 against [Siemens] so as to give rise to an actual controversy." *Demaray*, 2021 WL 4222177, at *7; *Cohen*, 2018 WL 1400378, at *3-4.

BSLLC does not address the controversy as to Siemens' direct infringement. But like indirect infringement, there is no requirement for BSLLC to "act[] 'overtly and specifically'" towards Siemens or "manifest its intent" to sue. Mot. 12; *Hewlett-Packard*, 587 F.3d at 1362; *Mobile Telecomms.*, 247 F. Supp. 3d at 461-62 specific threats of litigation not required to establish jurisdiction). And again, BSLLC's subpoena to Siemens and its failure to provide a covenant-not-to-sue further supports finding a controversy as to direct infringement. *Demaray*, 2021 WL 4222177, at *6-7.

Thus, there is also a justiciable controversy between BSLLC and Siemens as to Siemens' liability for direct infringement.

## C.    The Court Should Not Decline Jurisdiction

"There must be well-founded reasons for declining to entertain a declaratory judgment action." *Mitek*, 34 F.4th at 1347 (cleaned up).  Bell provides none.

First, Bell's argument Siemens should have intervened in each customer case ignores the impracticality of doing so.  Mot. 20-21.  The primary question is "whether ultimately the intervention route is ***more effective or efficient*** than the declaratory-judgment route." *Mitek*, 34 F.4th at 1347-48 (emphasis added).

Here, intervention in dozens of cases would be impractical and wasteful.[9] Even if Siemens could successfully intervene in each case—which itself would require substantial time and money—it would be forced to litigate the same issues of whether its Accused Tool infringes in over 20 lawsuits, needlessly burdening both Siemens and the judiciary and risking inconsistent outcomes on these issues.[10] Proceeding here, by contrast, would allow Siemens to efficiently resolve these

---

[9] Even if some customers settle (Mot. 5, n.2), at least 21 suits against Siemens' customers will proceed.

[10] The Federal Circuit's passing statement in *DataTern*, 755 F.3d at 904, that a DJ plaintiff could intervene in a customer case (Mot. 20-21) was dicta; the plaintiff had no indemnity obligations to the customers at issue.  Regardless, *DataTern* is distinguishable: there was only one customer case, such that the plaintiff could "efficiently" defend the customers there.  *DataTern*, 755 F.3d at 904.  For similar reasons BSLLC's reliance on *Cellco Partnership v. Broadcom Corp.*, which

issues in a single forum, confirming intervention is not a better alternative. *Mitek*, 34 F.4th at 1347 (court may decline jurisdiction "where an alternative remedy is ***better or more effective***") (emphasis added).

Second, BSLLC's laches argument fails. For starters, Siemens did not unreasonably delay in bringing suit. While BSLLC filed a handful of cases in spring and summer, it filed fifty-eight cases between August and November. Compl. ¶¶7-8. That includes two ITC Complaints BSLLC filed in October, which were instituted in November. Compl. ¶8. Siemens filed suit on December 2, 2022, shortly after BSLLC's litigation campaign grew to unreasonable proportions.[11] BSLLC cites *Vita-Mix*, 581 F.3d at 1333, but *Vita-Mix* involved a delay of over five years, and even then, the court found no laches.

Nor was BSLLC prejudiced by "delay." Laches prejudice must stem from the alleged delay itself. *Vita-Mix*, 581 F.3d at 1333. BSLLC misunderstands this and alleges purported prejudices from delay in resolving the customer suits, such as customer bankruptcy and loss of evidence relevant to the customer cases. Mot. 15-17. This is irrelevant (and, in any case, speculative). Nor are BSLLC's

---

involved a single related district court case and single ITC action, is misplaced. 227 F. App'x 889, 890 (Fed. Cir. 2007).

[11] Indeed, as recently as January 25, 2023, BSLLC filed new suits against Siemens' customer ams-OSRAM AG. *See Bell Semiconductor, LLC, v. AMS Sensors USA Inc. and AMS-OSRAM AG*, Case Nos. 4-23-cv-0069 (E.D. Tex. 2023); *Bell Semiconductor, LLC, v. AMS Sensors USA Inc. and AMS-OSRAM AG*, Case Nos.

expenditures to-date from prosecuting the customer cases relevant. In any case, those harms are of BSLLC's own making, as it intentionally chose to file 3-4 suits per customer, needlessly multiplying its own costs. Finally, BSLLC's argument in the companion DJ case that it would lose progress in its customer cases if this DJ action continues is unsupported and contradicted by its decision to simultaneously litigate against dozens of companies.

Third, BSLLC's assertion that this case is not "useful" is meritless. BSLLC's contention that it can proceed against customers even if Siemens prevails on infringement is wrong on the law. As the Federal Circuit confirmed, the Supreme Court's *Kessler* doctrine operates to preclude patentees like BSLLC from asserting customers' use of suppliers' technology—including software—infringes once the suppliers obtain a judgment of non-infringement. *See SpeedTrack, Inc. v. Off. Depot, Inc.*, 791 F.3d 1317, 1324-29 (Fed. Cir. 2015).[12] Thus, this case is nothing like *Cellco*, 227 F. App'x 889, which had no such potential to moot dozens of other cases.

This case is also "useful" because it would allow Siemens—the entity with the greatest knowledge of, and strong interest in defending, its Accused Tool—to

---

4-23-cv-0070 (E.D. Tex. 2023); *Bell Semiconductor, LLC, v. AMS Sensors USA Inc. and AMS-OSRAM AG*, Case Nos. 4-23-cv-0071 (E.D. Tex. 2023).

[12] *WebXchange*, 2009 WL 3534845, at *4, cited by BSLLC for the opposite proposition (Mot. 19), is unsupported by Federal Circuit authority. *WebXchange*

efficiently litigate BSLLC's infringement allegations in one forum. For this reason, "manufacturer suits" like this one routinely "take[] precedence" over "customer suits" like BSLLC's under the "customer suit" exception—even where customers do not agree to be bound by the manufacturer suit. *Katz*, 909 F.2d at 1464 (affirming injunction against customer suit in view of manufacturer's DJ suit, even where customers did not agree to be bound and where "additional issues involving the [customers]" could remain after resolution of the manufacturer suit).

In short, there is no reason for the Court to decline jurisdiction over this case.

### D.    If Necessary, Siemens Should be Granted Leave to Amend

If jurisdictional facts are not sufficiently alleged, Siemens requests leave to amend. Fed. R. Civ. P. 15(a). Siemens has not previously amended, and amendment would not prejudice BSLLC. Amendment, moreover, would "ensure … claims are decided on the merits rather than on technicalities." *Vitaworks IP, LLC v. Glanbia Nutritionals (NA), Inc.*, No. 19-2259-CFC, 2021 WL 5061707, at *1 (D. Del. Oct. 26, 2021) (cleaned up).

### V.    CONCLUSION

For these reasons, BSLLC's Motion should be denied.

---

cites *Fujitsu*, 2008 WL 3539503, at *3, but *Fujitsu* cites no legal authority for the proposition in question.

Dated:  February 9, 2023

OF COUNSEL:
Frank C. Cimino, Jr.
Megan S. Woodworth
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
202.344.4569
202.344.8300 – Facsimile
fccimino@Venable.com
mswoodworth@Venable.com

Robert E. Bugg
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
New York, NY  10020
212.370.6241
212.307.5598 – Facsimile
rebugg@Venable.com

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**

 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis M. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys   for   Siemens   Industry
Software Inc.*

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SIEMENS INDUSTRY SOFTWARE )
INC.,                      )
                           )
        Plaintiff,         )
                           )
    v.                     )        C.A. No. 22-01569-CFC
                           )
                           )        JURY TRIAL DEMAND
BELL SEMICONDUCTOR, LLC,   )
                           )
        Defendant.         )
                           )

## CERTIFICATION OF COMPLIANCE

The undersigned certifies that Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss Complaint is in Times New Roman 14-point font and contains 5,000 words, exclusive of caption, tables, and signature block, counted using Microsoft Word's word count feature.

Dated:  February 9, 2023

OF COUNSEL:
Frank C. Cimino, Jr.
Megan S. Woodworth
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
202.344.4569
202.344.8300 – Facsimile
fccimino@Venable.com
mswoodworth@Venable.com


Robert E. Bugg
VENABLE LLP

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**

 */s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis M. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

1

Rockefeller Center
1270 Avenue of the Americas          *Attorneys for Siemens Industry*
New York, NY  10020                   *Software Inc.*
212.370.6241
212.307.5598 – Facsimile
rebugg@Venable.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 9, 2023, a copy of the

foregoing document was served on the counsel listed below in the manner

indicated:

**<u>BY EMAIL</u>**

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

David Sochia
Richard Kamprath
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
dsochia@McKoolSmith.com
rkamprath@McKoolSmith.com

Kyle Ryman
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
kryman@McKoolSmith.com

Joshua J. Newcomer
MCKOOL SMITH, P.C.
600 Travis Street #7000
Houston, TX 77002
jnewcomer@McKoolSmith.com

Lauren H. Simenauer
MCKOOL SMITH, P.C.
1999 K Street NW
Washington, D.C. 20006
lsimenauer@McKoolSmith.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Anne Shea Gaza (No. 4093)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Siemens Industry Software Inc.*