```
1                IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3

4    SYNOPSYS, INC. and CADENCE      )
     DESIGN SYSTEMS, INC.,           )
5                                    )
                    Plaintiffs,      )
6                                    ) C.A. No. 22-1512-CFC
     v.                              )
7                                    ) DEMAND FOR JURY TRIAL
     BELL SEMICONDUCTOR, LLC,        )
8                                    )
                    Defendant.       )
9    - - - - - - - - - - - - - - - - -
     SIEMENS INDUSTRY SOFTWARE INC., )
10                                   )
                    Plaintiff,       ) C.A. No. 22-1569-CFC
11                                   )
     v.                              )
12                                   )
     BELL SEMICONDUCTOR, LLC,        )
13                                   )
                    Defendant.       )
14
                                     J. Caleb Boggs Courthouse
15                                   844 North King Street
                                     Wilmington, Delaware
16
                                     Thursday, April 27, 2023
17                                   9:02 a.m.
                                     Oral Argument
18

19   BEFORE:  THE HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

20   APPEARANCES:

21                YOUNG CONAWAY STARGATT & TAYLOR, LLP
                  BY:  PILAR G. KRAMAN, ESQUIRE
22                BY:  ROBERT M. VRANA, ESQUIRE

23                        -and-

24

25
```

```
 1    APPEARANCES CONTINUED:

 2
                  ARNOLD & PORTER
 3                BY:  MATTHEW M. WOLF, ESQUIRE
                  BY:  JEFFREY A. MILLER, ESQUIRE
 4                BY:  KURT RIESTER, ESQUIRE

 5                        -and-

 6                WILKIE FARR & GALLAGHER LLP
                  BY:  KRISTA SCHWARTZ, ESQUIRE
 7                BY:  BARRINGTON DYER, ESQUIRE

 8                        -and-

 9                VENABLE LLP
                  BY:  FRANK C. CIMINO, JR., ESQUIRE
10                BY:  MEGAN S. WOODWORTH, ESQUIRE

11                    For the Siemens Plaintiff

12                FARNAN LLP
                  BY:  BRIAN E. FARNAN, ESQUIRE
13
                          -and-
14
                  McKOOL SMITH
15                BY:  RICHARD A. KAMPRATH, ESQUIRE
                  BY:  JOSHUA J. NEWCOMER, ESQUIRE
16                BY:  KYLE RYMAN, ESQUIRE
                  BY:  LAUREN SIMENAUER, ESQUIRE
17                BY:  HANNAH MIRZOEFF, ESQUIRE

18                    For the Defendant

19                U.S. ATTORNEY'S OFFICE
                  BY:  DYLAN J. STEINBERG, ESQUIRE
20
                          -and-
21
                  U.S. INTERNATIONAL TRADE COMMISSION
22                BY:  SIDNEY ROSENZWEIG, ESQUIRE

23                    For the U.S. International Trade Commission

24

25
```

*** PROCEEDINGS ***

08:36:52 1

08:58:56 2

08:59:09 3    DEPUTY CLERK:  All rise.  Now, in the United

09:02:22 4  States District Court for the District of Delaware, the

09:02:25 5  Honorable Colm F. Connolly presiding.

09:02:28 6    THE COURT:  All right.  Good morning.  Please be

09:02:33 7  seated.

09:02:34 8    Yes, Ms. Kraman.  Ms. Kraman.

09:02:43 9    MS. KRAMAN:  Good morning, Your Honor.

09:02:46 10    THE COURT:  Good morning.

09:02:47 11    MS. KRAMAN:  Pilar Kraman of Young Conaway for

09:02:50 12  Plaintiffs.  And with me from Young Conaway is Rob Vrana,

09:02:54 13  and next to Rob is Megan Woodworth from Venable --

09:02:57 14    MS. WOODWORTH:  Good morning.

09:02:58 15    MS. KRAMAN:  -- for Siemens.

09:03:00 16    And then Jeff Miller from Arnold & Porter for

09:03:04 17  Cadence.

09:03:04 18    MR. MILLER:  Good morning, Your Honor.

09:03:04 19    MS. KRAMAN:  And then at counsel table, Matt

09:03:06 20  Wolf --

09:03:06 21    MR. WOLF:  Good morning, Your Honor.

09:03:07 22    MS. KRAMAN:  -- from Arnold & Porter for

09:03:08 23  Cadence.  Isaac -- oh, sorry.  Krista Schwartz --

09:03:14 24    MS. SCHWARTZ:  Good morning, Your Honor.

09:03:15 25    MS. KRAMAN:  -- from Wilkie Farr for Synopsys.

09:03:15  1          Frank Cimino --

09:03:15  2          MR. CIMINO:  Good morning, Your Honor.

09:03:15  3          MS. KRAMAN:  -- for Siemens from Venable.

09:03:19  4          Kurt Riester from Arnold & Porter for Cadence.

09:03:19  5          MR. RIESTER:  Good morning, Your Honor.

09:03:23  6          MS. KRAMAN:  And then in the gallery is Justin

09:03:27  7  Boyce from Synopsys and Isaac Lin from Cadence.

09:03:30  8          MR. LIN:  Good morning, Your Honor.

09:03:31  9          THE COURT:  All right.  Thank you.

09:03:33 10          So, you covered all the Plaintiffs?

09:03:34 11          MS. KRAMAN:  Yes.

09:03:35 12          THE COURT:  All right.  Good.  Thank you.

09:03:37 13          Mr. Farnan.

09:03:39 14          MR. FARNAN:  Good morning, Your Honor.

09:03:42 15          THE COURT:  Good morning.

09:03:43 16          MR. FARNAN:  Brian Farnan on behalf of Bell

09:03:46 17  Semiconductor, and with me today is Richard Kamprath, Lauren

09:03:46 18  Simenauer.

09:03:46 19          MR. KAMPRATH:  Good morning, Your Honor.

09:03:46 20          MS. SIMENAUER:  Good morning, Your Honor.

09:03:50 21          MR. FARNAN:  Josh Newcomer.

09:03:52 22          MR. NEWCOMER:  Good morning, Your Honor.

09:03:53 23          MR. FARNAN:  Hannah Mirzoeff.

24          MS. MIRZOEFF:  Good morning, Your Honor.

25          MR. FARNAN:  We have Kyle Ryman --

1            MR. RYMAN:  Good morning, Your Honor.

2            MR. FARNAN:  -- all from McKool Smith.  And on

3    behalf of the client, we have Josh --

4            MR. VESCHI:  Good morning, your Honor.

5            MR. FARNAN:  John, I'm sorry.  John.  All right.

6            THE COURT:  And then I have -- it's Bell; right?

7            So, I've got Siemens -- no, no.  Sorry.  I've

8    got everybody then.

9            All right.  I'm mixed up here.  I've got --

10    Mr. Steinberg, welcome.

11            MR. STEINBERG:  Good morning, Your Honor.  Dylan

12    Steinberg on behalf of the United States International Trade

13    Commission.  With me from the Commission is Sidney

14    Rosenzweig, the Commission's Acting Assistant General

15    Counsel.

16            THE COURT:  Okay.  All right.  Thank you.

17            Mr. Rosenzweig, let me start with you.

18            MR. ROSENZWEIG:  Good morning, Your Honor.

19            THE COURT:  Good morning.  Has the ITC ever

20    written a brief like that before?

21            MR. ROSENZWEIG:  It's been a long time.  The

22    Commission was involved in the *Tessera* case that went in

23    front of the Federal Circuit some time ago which resolved

24    the issue of contractual disputes giving rise to enjoining

25    parties to Commission proceedings.  And it could be that the

09:05:17 1    Commission participated back in *Convertible Rowing* and some

09:05:21 2    of these other very -- from my perspective, cases that

09:05:24 3    preceded my time with the Commission over the last 14 years.

09:05:27 4    This is our first time intervening in one of these cases in

09:05:32 5    a while.

09:05:34 6         In *Philips vs. Thales*, which was in front of --

09:05:36 7         THE COURT:  Yeah, I didn't see it in that case,

09:05:39 8    so I was wondering what prompted this.

09:05:41 9         MR. ROSENZWEIG:  Well, we need to be notified

09:05:43 10   about these proceedings.  So, in this case, we just got a

09:05:45 11   status report from Bell that said, "Hey, Commission, you

09:05:47 12   might be interested in this."  And we were.

09:05:50 13        And if we had received that type of notification

09:05:53 14   from one of the parties in *Philips vs. Thales* or it turns

09:05:57 15   out that there are a number of these cases over the last

09:05:59 16   five years that have been -- that were string cited in our

09:06:02 17   brief, *Kershaw*, *Hoist,* and some of these others, I think we

09:06:06 18   would have participated in those as well or tried to, if we

09:06:09 19   could.

09:06:13 20        THE COURT:  What's the interest of the ITC?

09:06:15 21        MR. ROSENZWEIG:  Well, the interest of the ITC

09:06:18 22   is in making sure that the Commission's proceedings can go

09:06:20 23   forward in the manner contemplated by Congress and in the

09:06:24 24   manner required by our statute in which Commission

09:06:26 25   proceedings are to conclude at the earliest practical time

09:06:31  1    and in which Congress has recognized that the Commission

09:06:36  2    adjudicates trade disputes that can occur simultaneously

09:06:40  3    with District Court proceedings.  And often when that's

09:06:43  4    done, in accordance with Section 1659 of Title 28, the

09:06:50  5    Commission proceedings are ordinarily required to go first.

09:06:54  6    So, the Commission's interest is in making sure that that

09:06:59  7    regime is respected.

09:07:00  8         I think the Commission's interest is also in

09:07:02  9    making sure that if a Court has concerns about something

09:07:07 10    that the Commission is doing -- here it doesn't seem -- that

09:07:10 11    doesn't seem to be the case.  It seems to be more -- all the

09:07:13 12    relief here is targeted toward Bell.  But if the Court did

09:07:17 13    have concerns about what the Commission is doing, that Court

09:07:20 14    probably ought to be the Federal Circuit directly on review

09:07:24 15    of the Commission or by mandamus instead of having District

09:07:28 16    Courts potentially enjoining the Commission or enjoining

09:07:31 17    parties at the Commission.

09:07:33 18         THE COURT:  Nobody's asked for enjoinment of the

09:07:35 19    Commission here; correct?

09:07:37 20         MR. ROSENZWEIG:  No one's asked for enjoining of

09:07:39 21    the Commission, but the relief that's sought here is

09:07:41 22    unprecedented.  And it's just a short little two-step where

09:07:45 23    the movants here complain that they would prefer not to be

09:07:50 24    encumbered with what they contend is simultaneous litigation

09:07:55 25    at the Commission and in this Court.  And if, under the very

09:07:59  1   routine facts of this case the Court were to enjoin Bell

09:08:04  2   from participating, and I submit that there's no precedent

09:08:08  3   for that, but if the Court were to do that, that would

09:08:11  4   interfere with -- potentially interfere with a lot of

09:08:15  5   Commission cases.

09:08:16  6          THE COURT:  You don't dispute, though, that a

09:08:18  7   District Court has the authority to enjoin a party from

09:08:22  8   participating in an ITC proceeding, do you?

09:08:25  9          MR. ROSENZWEIG:  No, I don't dispute that.  And

09:08:28 10   in this Court's decision in *Convertible Rowing*, Judge

09:08:31 11   Schwartz recognized that the Court could conceivably also

09:08:33 12   have the authority to enjoin the Commission directly, and

09:08:37 13   we're not here to challenge any of that.

09:08:39 14          In this case, you know, the Court cannot or

09:08:44 15   should not enjoin the Commission directly.  It's not even

09:08:46 16   sought because the Commission isn't doing anything improper

09:08:49 17   to compromise this Court's jurisdiction.  And, likewise, the

09:08:52 18   Court cannot or should not enjoin Bell because Bell is not

09:08:57 19   doing anything, much less anything improper to compromise

09:09:01 20   the Court's jurisdiction here.

09:09:03 21          THE COURT:  Well, it's the "cannot," I guess.

09:09:04 22   I'm a little surprised.  I understand the Commission might

09:09:08 23   say should not, but you're saying there's binding authority

09:09:12 24   that would preclude this Court from enjoining Bell?

09:09:17 25          MR. ROSENZWEIG:  I would say that there's a lot

09:09:18  1    of authority that should give this Court a lot of caution

09:09:21  2    before exercising that authority, to the extent that the

09:09:24  3    Court has it.

09:09:25  4              THE COURT:  That's a different thing than saying

09:09:26  5    "the Court cannot do it," though.

09:09:28  6              MR. ROSENZWEIG:  I think -- under existing

09:09:31  7    precedent, the facts of this case do not warrant that

09:09:35  8    exercise of authority.  It would be unprecedented.  I'm not

09:09:39  9    here to purport to challenge the Court's authority.  That

09:09:44 10    would be improper.  It would be wrong.  But there's no

09:09:47 11    situation in any decision, including in the decisions of

09:09:52 12    this district, that would provide for relief for the movants

09:09:57 13    to enjoin.

09:09:57 14              THE COURT:  Including my own decision in the

09:10:00 15    *Philips* case?

09:10:00 16              MR. ROSENZWEIG:  Yeah, absolutely.

09:10:01 17              THE COURT:  Okay.  All right.  I just wanted

09:10:03 18    that clarification.  Thank you.

09:10:05 19              MR. ROSENZWEIG:  And I think just one other

09:10:06 20    thing that I would just note, if I could, is as to the

09:10:08 21    status of these two Commission investigations --

09:10:10 22              THE COURT:  Yes, actually that would be helpful.

09:10:12 23              MR. ROSENZWEIG:  Fact discovery, as I understand

09:10:14 24    it, closes in both cases next week, and the Markman

09:10:18 25    proceedings are completely concluded in one of the two

09:10:22  1    proceedings.  A Markman Order was issued.

09:10:23  2              In the other one, a Markman ruling is expected

09:10:26  3    any day now because all of the briefing and the hearing have

09:10:30  4    already been conducted.  And our trials are expected in both

09:10:34  5    before administrative law judges in August.

09:10:36  6              THE COURT:  And do you think that trial date is

09:10:38  7    going to be kept?

09:10:40  8              MR. ROSENZWEIG:  I would ask Bell and some of

09:10:44  9    the parties here who would have a little bit more

09:10:47 10    behind-the-scenes knowledge.  I have no reason to believe

09:10:49 11    that those trial dates are moving, but I'm not in the best

09:10:54 12    position.

09:10:54 13              THE COURT:  All right.  Thank you.  That was

09:10:56 14    helpful.

09:10:56 15              All right.  Let's start with the motion to

09:10:57 16    dismiss.

09:11:12 17              MR. KAMPRATH:  Good morning, Your Honor.  I'm

09:11:13 18    Richard Kamprath with McKool Smith representing Bell.

09:11:17 19              THE COURT:  All right.

09:11:29 20              MR. KAMPRATH:  Thank you, Your Honor.  We have

09:11:39 21    some slides we just passed to you, and I think we've got

09:11:42 22    some copies for everyone else as well.  I think maybe we can

09:11:45 23    give you kind of a status update of the context of this

09:11:48 24    lawsuit and the other litigations that are going on.

09:11:55 25              So, about one year ago in April of 2022, Bell

09:12:01 1    Semiconductor started its licensing campaign and filed

09:12:04 2    ten District Court cases and one ITC case.  And that ITC

09:12:10 3    case, Cadence intervened.  We can talk about that.

09:12:13 4          In May of 2022, no cases were filed.  In June of

09:12:18 5    2022, one District Court case was filed.  In July, none were

09:12:22 6    filed.  In August of 2022, 30 cases were filed, District

09:12:26 7    Court cases.  September of 2022, seven more cases were

09:12:29 8    filed.  October of 2022, 31 cases, including two ITC cases

09:12:34 9    were filed.  November of 2022, eleven cases were filed.  In

09:12:39 10   December of '22, one case was filed.

09:12:44 11         So, at the peak of the litigation campaign, Your

09:12:48 12   Honor, there were 24 entities that were sued and over 94

09:12:54 13   lawsuits.  And part of the reason why there's so many

09:12:56 14   lawsuits, as Your Honor may know, the statute governing

09:12:59 15   patent suits requires filing a separate lawsuit against each

09:13:03 16   Defendant.  You can't conglomerate them all and put them all

09:13:06 17   in one suit unless there's a similar nexus of facts relating

09:13:09 18   to all the infringement.  So, 91 District Court cases, three

09:13:14 19   ITC investigations at the height of the campaign.

09:13:19 20         Since that time, 16 entities have resolved with

09:13:25 21   Bell Semi as of today, which means eight of those entities

09:13:28 22   remain with 28 District Court cases and the two ITC cases.

09:13:33 23         THE COURT:  Well, when you say they've

09:13:35 24   "resolved," you're saying that the only cases that are

09:13:42 25   currently pending in a District Court are 28?

09:13:47  1          MR. KAMPRATH:  Yes, sir.  Yes, Your Honor.

09:13:48  2          THE COURT:  Okay.  Because I thought from the

09:13:49  3  briefing it sounded like there had been some settlements,

09:13:52  4  but the cases have not been actually dismissed?

09:13:54  5          MR. KAMPRATH:  So, there are a number of cases

09:13:56  6  that have been dismissed because of resolution between the

09:13:58  7  parties.

09:13:59  8          THE COURT:  Right.  So, how many active cases

09:14:01  9  are there?

09:14:01 10          MR. KAMPRATH:  Twenty-eight active District

09:14:03 11  Court cases, Your Honor, with two ITC cases.

09:14:05 12          THE COURT:  All right.  So, the remainder of the

09:14:07 13  91 have been dismissed?

09:14:09 14          MR. KAMPRATH:  Yes, Your Honor, or in the --

09:14:10 15  have been -- there's been motion practice to dismiss and --

09:14:13 16          THE COURT:  It's important -- well, you've got

09:14:14 17  to be really straight with me here.  I didn't ask -- I

09:14:17 18  asked:  Are they pending?  Are they in existence?

09:14:19 19          And for you to say that, Yes, they're either

09:14:22 20  dismissed or there's motions pending, then that means the

09:14:26 21  cases haven't been closed or dismissed yet.

09:14:28 22          MR. KAMPRATH:  Understood, Your Honor.

09:14:29 23          THE COURT:  So, let's be really careful.  Let's

09:14:31 24  be accurate.

09:14:33 25          Are there only 28 pending District Court actions

09:14:37  1    currently?

09:14:38  2                    MR. KAMPRATH:  No.

09:14:39  3                    THE COURT:  Okay.

09:14:39  4                    MR. KAMPRATH:  There are --

09:14:40  5                    THE COURT:  So, what's the real number?

09:14:41  6                    MR. KAMPRATH:  So, I don't have that real

09:14:42  7    number.  The cases that are not the 28 currently pending

09:14:46  8    cases, those cases include cases that have been dismissed

09:14:50  9    and cases where motions to dismiss have been filed because

09:14:53 10    of resolution between the parties.  And we're waiting on the

09:14:56 11    Court to rule.

09:14:58 12                    THE COURT:  All right.  So, there's 28 cases

09:15:00 13    where there's --

09:15:01 14                    MR. KAMPRATH:  Active.

09:15:02 15                    THE COURT:  -- active litigation?

09:15:03 16                    MR. KAMPRATH:  Yes, Your Honor.

09:15:03 17                    THE COURT:  All right.  What is the most

09:15:05 18    advanced of those 28 cases?

09:15:07 19                    MR. KAMPRATH:  Yes, Your Honor.  So, the -- some

09:15:09 20    of the cases that were filed in April of last year,

09:15:12 21    including the *NXP* case, that case is in -- we have a number

09:15:18 22    of cases that are in discovery.  There's been discovery

09:15:22 23    proceeding.

09:15:22 24                    The *NXP* case in California has Markman briefing

09:15:25 25    going on right now.  The Markman hearing is next month, and

09:15:28  1    so we'll be through Markman at that time.

09:15:30  2              THE COURT:  And that's a Northern District of

09:15:33  3    California case; is that right?

09:15:33  4              MR. KAMPRATH:  I believe so, Your Honor.

09:15:34  5              THE COURT:  Okay.  And who's handling that case?

09:15:38  6              MR. KAMPRATH:  Representing Bell?

09:15:40  7              THE COURT:  No, I'm sorry.  What judge is

09:15:42  8    handling the case?

09:15:42  9              MR. KAMPRATH:  I don't have that judge's name

09:15:45 10    right in front of me, but we can find that out and give it

09:15:47 11    to Your Honor.

09:15:47 12              THE COURT:  Now, the *Omni* case -- so, are there

09:15:50 13    three *Omni* cases?

09:15:51 14              MR. KAMPRATH:  In District Court or in ITC?

09:15:53 15              THE COURT:  Sorry.  In District Court.

09:15:55 16              MR. KAMPRATH:  There are -- I think there are

09:15:56 17    three *Omni* cases and then there's -- one of the ITC cases

09:15:59 18    includes *Omnivision*, as well.

09:16:01 19              THE COURT:  All right.  The three District Court

09:16:03 20    *Omni* cases are also in the Northern District of California;

09:16:05 21    is that correct?

09:16:06 22              MR. KAMPRATH:  I believe that's right,

09:16:07 23    Your Honor.

09:16:07 24              THE COURT:  And they've been stayed, at least

09:16:09 25    pending what I do here; is that fair?

09:16:11  1          MR. KAMPRATH:  As of three days ago, yes, Your

09:16:13  2   Honor.

09:16:13  3          THE COURT:  All right.  Now, where were those

09:16:15  4   cases in terms of the timeline of the litigation?

09:16:19  5          MR. KAMPRATH:  So, those were not as far along.

09:16:22  6   Those were in the motion to dismiss stage.

09:16:24  7          THE COURT:  All right.  Had there been discovery

09:16:26  8   taken?

09:16:26  9          MR. KAMPRATH:  No, Your Honor.  And those are in

09:16:29 10   front of Judge Huff.

09:16:30 11          THE COURT:  I thought they were Judge Kronstadt.

09:16:32 12          MR. KAMPRATH:  The *Omnivision* cases are

09:16:34 13   Judge Kronstadt.  The *NXP* was Judge Huff, Your Honor.

09:16:38 14   Sorry, Your Honor.

09:16:38 15          THE COURT:  No, no.  It's okay.

09:16:40 16          Okay.  All right.  So, the bottom line is there

09:16:41 17   are still 28 active District Court cases going on against --

09:16:50 18          MR. KAMPRATH:  Eight remaining.

09:16:51 19          THE COURT:  -- eight entities, all of whom use

09:16:55 20   the software made by one of the three Plaintiffs in the two

09:17:02 21   actions before me?

09:17:03 22          MR. KAMPRATH:  Correct, Your Honor.

09:17:04 23          THE COURT:  Okay.  Is it fair to say that

09:17:07 24   there's an allegation in the Complaints in each of those

09:17:09 25   actions that specifically alleges, under an infringement

09:17:15  1    count, that the EDA software that provides a basis for an

09:17:23  2    infringement claim was made, manufactured or provided by at

09:17:29  3    least one of the three Defendants in my case?

09:17:31  4           MR. KAMPRATH:  So, Your Honor, if I understand

09:17:33  5    your question correctly, is there an infringement allegation

09:17:39  6    in the underlying District Court cases that form -- based on

09:17:44  7    Cadence, Siemens, or Synopsys tools, that forms a basis for

09:17:48  8    infringement -- an infringement allegation against Cadence,

09:17:51  9    Siemens, or Synopsys, or for the underlying accused

09:17:54 10    infringers?

09:17:55 11           THE COURT:  Well, those cases are only directed

09:17:59 12    against the accused infringer.

09:18:00 13           MR. KAMPRATH:  Correct, Your Honor.

09:18:01 14           THE COURT:  So, I'm only interested in the

09:18:02 15    allegation against the accused infringers.

09:18:05 16           Is it based on an allegation that those accused

09:18:09 17    infringers use the software manufactured by one of the three

09:18:18 18    Plaintiffs in my actions?

09:18:19 19           MR. KAMPRATH:  Yes, Your Honor.

09:18:20 20           THE COURT:  Okay.  So, they are -- this is

09:18:23 21    situated just like the *Omni* cases?

09:18:25 22           MR. KAMPRATH:  Yes, Your Honor.

09:18:26 23           THE COURT:  Okay.  Thank you.

09:18:26 24           MR. KAMPRATH:  In general.

09:18:27 25           And the one clarification I will make to you,

09:18:30  1   and this is part of what we can talk about, is each of the

09:18:33  2   underlying cases when those Complaints were filed, they each

09:18:38  3   had a chart attached to the Complaint.  Each of those charts

09:18:42  4   has one -- at least one claim, one -- for one of the patents

09:18:46  5   that discusses how we believe -- how Bell believes that

09:18:51  6   patent claim is met by use of one of those EDA tools.

09:18:57  7            Those -- none of those charts have evidence or

09:19:00  8   show user manuals or things from every single one of

09:19:03  9   Cadence, Siemens, and Synopsys.

09:19:05 10            THE COURT:  But they reference one of them.  At

09:19:08 11   least one, but just not all three?

09:19:10 12            MR. KAMPRATH:  Yes, Your Honor.

09:19:11 13            THE COURT:  Okay.  But isn't that enough to

09:19:14 14   create a controversy?

09:19:16 15            MR. KAMPRATH:  So, Your Honor, that's the

09:19:18 16   question, right.  And so, for DJ jurisdiction, we don't

09:19:22 17   believe so.  And just -- I will tell you, I know we were

09:19:27 18   talking about the *Omnivision* case.  There was also a motion

09:19:31 19   to stay based on this District Court -- these DJ cases filed

09:19:36 20   in the *NXP* case --

09:19:37 21            THE COURT:  That was denied?

09:19:38 22            MR. KAMPRATH:  -- that was denied in January.

09:19:40 23   Yes, Your Honor.

09:19:41 24            And I have a copy of that, if you want me to

09:19:43 25   bring it up.

09:19:43  1          THE COURT:  Yeah, sure.  You can hand it up.

09:19:45  2    Thank you.

09:19:57  3          Do you want to point out to me anything in

09:20:09  4    particular in this decision?

09:20:10  5          MR. KAMPRATH:  No, Your Honor, other than the

09:20:12  6    same issues that were in front of Judge Kronstadt were also

09:20:15  7    in front of Judge Huff, and she decided differently.  That

09:20:19  8    the other case under the first to file rule and the

09:20:23  9    customer-suit exception, that the customer-suit exception

09:20:26 10    should not apply and that her cases should go forward.

09:20:36 11          And my partner, Josh Newcomer, is going to

09:20:39 12    address the preliminary injunction motion.  He can speak

09:20:41 13    more to the first to file rule, Your Honor.

09:20:44 14          THE COURT:  Okay.  All right.  Thank you.

09:20:50 15          MR. KAMPRATH:  So, Your Honor, this Court does

09:20:55 16    not have subject matter jurisdiction over these cases

09:20:58 17    because the Plaintiffs have failed to plead facts to support

09:21:01 18    subject matter jurisdiction in their Complaint, and because,

09:21:04 19    under Federal Circuit law, they could and can join the

09:21:08 20    pending underlying cases against the accused infringers.

09:21:11 21          THE COURT:  All right.  So, is this a facial or

09:21:13 22    a factual attack on jurisdiction?

09:21:16 23          MR. KAMPRATH:  Great question, Your Honor.  We

09:21:17 24    believe that there's no subject matter jurisdiction under

09:21:21 25    either standard.

09:21:22 1                    THE COURT:  Okay.  But what did you mount?

09:21:24 2                    MR. KAMPRATH:  So, we mounted both.

09:21:25 3                    THE COURT:  Oh, you mounted both.  Okay.

09:21:27 4                    MR. KAMPRATH:  And here is the problem and why

09:21:29 5     it's a great question.  At the time the Complaint was filed,

09:21:33 6     we believe that facially there's no subject matter

09:21:35 7     jurisdiction based on the Complaint itself.

09:21:38 8                    The issue, as Your Honor knows, is the Complaint

09:21:41 9     was filed and then there was discovery taken related to the

09:21:43 10    preliminary injunction.  And there have been things and

09:21:46 11    facts that have come to light that also support a factual

09:21:49 12    attack on the Complaint and that there's a lack of subject

09:21:52 13    matter jurisdiction.  But we believe you could look at the

09:21:55 14    Complaint itself and facially there is no subject matter

09:21:59 15    jurisdiction.

09:21:59 16                   THE COURT:  All right.

09:22:02 17                   MR. KAMPRATH:  So, a few things just to start.

09:22:05 18    This is from the *Applied Materials* case:  "The burden is on

09:22:09 19    the DJ Plaintiffs to prove and to establish subject matter

09:22:12 20    jurisdiction," as Your Honor knows.

09:22:14 21                   THE COURT:  Actually, why are you citing a

09:22:17 22    Federal Circuit case?  Isn't this a Third Circuit question?

09:22:19 23                   MR. KAMPRATH:  It is a Third Circuit question,

09:22:20 24    unless it has to do with patent law.  And in this case, the

09:22:25 25    subject matter jurisdiction question has been addressed by

09:22:27  1    Federal Circuit as well.

09:22:29  2              THE COURT:  But in the *Mitek* case, the Federal

09:22:32  3    Circuit relied on Fifth Circuit law because it was Texas

09:22:34  4    law.

09:22:35  5              MR. KAMPRATH:  Correct.

09:22:35  6              THE COURT:  So, wouldn't the Federal Circuit

09:22:36  7    rely on Third Circuit law in this case?

09:22:39  8              MR. KAMPRATH:  Correct, Your Honor.  It would be

09:22:39  9    Third Circuit law.

09:22:40 10              THE COURT:  All right.

09:22:42 11              MR. KAMPRATH:  Jurisdiction must be determined

09:22:49 12    at the time of the filing of the Complaint, Your Honor, and

09:22:52 13    has to continue throughout the case.  And so, why we

09:22:55 14    initially filed a patent and have the facial attack is the

09:22:58 15    pleadings and the Complaints in these two cases are not

09:23:01 16    sufficient to show subject matter jurisdiction.

09:23:04 17              And a big part of that -- and the reason why

09:23:11 18    their Complaint fails facially is because the pleadings in

09:23:13 19    the Complaint are not pled on a specific

09:23:16 20    Plaintiff-by-Plaintiff, claim-by-claim, patent-by-patent

09:23:20 21    analysis.

09:23:22 22              Many of the statements are inferences or the

09:23:24 23    statements in the Complaint say "DJ Plaintiffs have this,"

09:23:28 24    or "something has happened to these DJ Plaintiffs," or "they

09:23:31 25    have indemnity or defense obligations."  There's no specific

09:23:35  1    pleading in the Complaint as to each of the DJ Plaintiffs

09:23:37  2    and what's happening between them and each of the causes of

09:23:40  3    action.

09:23:41  4              THE COURT:  Well, the Complaints -- and you're

09:23:45  5    going to treat them -- I think we're all going to treat the

09:23:48  6    two different actions here the same; is that fair?

09:23:52  7              I mean, do we need to break apart what's said in

09:23:55  8    the 1512 -- or what is it, 1516 action?

09:23:59  9              MR. KAMPRATH:  From our point of view, you can

09:24:00 10    treat them similarly, Your Honor.

09:24:02 11              THE COURT:  All right.  What do you all think?

09:24:04 12              MS. SCHWARTZ:  Yes, Your Honor.  For the most

09:24:06 13    part, they're identical for these purposes.

09:24:10 14              THE COURT:  Okay.  So, we've got these

09:24:11 15    Complaints.  They allege that you're engaged in, to use your

09:24:18 16    words this morning, "a licensing campaign."

09:24:21 17              Right?

09:24:22 18              MR. KAMPRATH:  Yes, Your Honor.

09:24:23 19              THE COURT:  Which involves bringing lawsuits --

09:24:24 20              MR. KAMPRATH:  Yes, Your Honor.

09:24:25 21              THE COURT:  -- against Defendants.  That's

09:24:26 22    alleged.

09:24:27 23              It's alleged that the Defendants in those

09:24:30 24    actions are customers of the Plaintiffs in these actions;

09:24:36 25    correct?

09:24:36  1          MR. KAMPRATH:  Yes, Your Honor.

09:24:36  2          THE COURT:  It's alleged that the Complaints in

09:24:41  3   the underlying actions all allege, as I think you've

09:24:46  4   admitted, that the infringement claims are based on the

09:24:54  5   Defendant customer's use of software provided and

09:25:02  6   manufactured by one of the three Defendants -- one of the

09:25:06  7   three Plaintiffs in my cases; correct?

09:25:08  8          MR. KAMPRATH:  Correct, Your Honor.

09:25:09  9          THE COURT:  All right.  So, they've got lawsuits

09:25:12 10   that allege infringement based on alleged use of the

09:25:21 11   software manufactured by one of the three Plaintiffs here.

09:25:27 12          Isn't that enough on *Mitek*?  I mean, that seems

09:25:31 13   to provide a reasonable apprehension of being sued for

09:25:38 14   infringement, which is all that's required; isn't it?

09:25:41 15          MR. KAMPRATH:  Your Honor, excuse me.  I'm

09:25:45 16   overcoming allergies this week.

09:25:47 17          The mere allegation of infringement in an

09:25:50 18   underlying District Court case cannot serve as the basis for

09:25:54 19   DJ allegations in a subsequent case.

09:25:57 20          THE COURT:  And where is the law that says that?

09:25:59 21          MR. KAMPRATH:  Your Honor, that is the *DataTern*

09:26:01 22   case.  It's *DataTern,* 755 F.3d 899.

09:26:12 23          THE COURT:  Do you have a copy of it?

09:26:14 24          MR. KAMPRATH:  I do not have a copy.

09:26:15 25          THE COURT:  All right.  So, it's *DataTern*.  Give

09:26:17 1    me the cite.

09:26:18 2              MR. KAMPRATH:  I'm sorry, Your Honor.  It's

09:26:20 3    *Microsoft Corp. v. DataTern Incorporated*.

09:26:23 4              THE COURT:  Okay.

09:26:24 5              MR. KAMPRATH:  755 F.3d 899.

09:26:28 6              MS. SCHWARTZ:  Your Honor, I have copies if

09:26:31 7    you'd like one.

09:26:32 8              THE COURT:  May I see a copy?  Yeah.  Do you

09:26:34 9    have multiple copies of it?

09:26:36 10             MS. SCHWARTZ:  I do.

09:26:36 11             THE COURT:  Can you provide one to Mr. -- is

09:26:37 12   that how you pronounce it, Kamprath?

09:26:39 13             MR. KAMPRATH:  Kamprath.  I have my own copy.

09:26:42 14             THE COURT:  Oh, you have your own copy?

09:26:43 15             MR. KAMPRATH:  Yes.

09:26:43 16             THE COURT:  Great.  Mr. Kamprath, maybe you can

09:26:46 17   show me in the case, just so I'm very comfortable with what

09:26:49 18   you said.

09:26:50 19             MR. KAMPRATH:  Yes, Your Honor.

09:26:50 20             THE COURT:  Thanks.

09:26:56 21             MR. KAMPRATH:  On Page 904, there's a paragraph

09:27:03 22   that starts -- and I'll read it to you, Your Honor.

09:27:06 23             THE COURT:  Hold on a second.

09:27:50 24             Okay.  And you're referring to Page 904?

09:27:56 25             MR. KAMPRATH:  Yes, Your Honor.

09:27:56  1              THE COURT:  Okay.

09:27:56  2              MR. KAMPRATH:  And it's the paragraph that

09:27:56  3      starts, "To the extent that appellees argue that they have a

09:27:58  4      right to bring a declaratory judgment action solely because

09:28:02  5      their customers have been sued for direct infringement, they

09:28:06  6      are incorrect."

09:28:06  7              And what *DataTern* goes on to say is there has to

09:28:12  8      be another basis.  And it talks about four different bases,

09:28:16  9      Your Honor.

09:28:17 10              THE COURT:  Mm-hmm.

09:28:17 11              MR. KAMPRATH:  Indemnity obligations or subject

09:28:21 12      matter jurisdiction based on reasonable apprehension that

09:28:24 13      the DJ Plaintiffs would be sued for direct infringement,

09:28:27 14      indirect infringement, which is inducement, or contributory

09:28:31 15      infringement.

09:28:31 16              And I plan to discuss those four, Your Honor.

09:29:03 17              THE COURT:  I guess my problem with this is it's

09:29:08 18      true the sentence says exactly what you said, but the facts

09:29:13 19      I just articulated go beyond that.

09:29:18 20              I articulated, among other things, that the

09:29:22 21      Complaints in the underlying actions allege that the

09:29:31 22      customer Defendants infringed the patents because they used

09:29:40 23      the software provided by the Plaintiffs in this action.  But

09:29:47 24      it seems to be not necessarily covered by the statement that

09:29:53 25      solely because customers have been sued for direct

09:29:57 1    infringement, there is jurisdiction for a DJ action.

09:30:02 2              MR. KAMPRATH:  So, Your Honor, this case -- the

09:30:04 3    *DataTern* -- *Microsoft v. DataTern* case is very seminal for

09:30:09 4    us in deciding this case.  And what *DataTern* says, and in

09:30:13 5    that case there were three patents asserted.  And what the

09:30:18 6    Court did is it went through and looked at were there

09:30:21 7    indemnity obligations --

09:30:23 8              THE COURT:  I know it did.

09:30:23 9              MR. KAMPRATH:  -- direct infringement --

09:30:25 10             THE COURT:  And, frankly, I think there's

09:30:26 11   probably a really good argument that there is sufficient

09:30:29 12   allegations of indemnity obligation, but I want to focus --

09:30:33 13   especially when I look at *Mitek*, and when I think about the

09:30:36 14   Supreme Court jurisprudence on this, and I think the test is

09:30:42 15   whether there's a reasonable apprehension of alleged

09:30:45 16   liability.

09:30:46 17             That would be ultimately the test.  You agree;

09:30:48 18   right?

09:30:48 19             MR. KAMPRATH:  Yes, Your Honor.

09:30:49 20             THE COURT:  All right.  So, what I'm trying to

09:30:51 21   understand, and I agree about the sentence here, but I'm

09:30:55 22   trying to understand why a litigation/licensing campaign

09:31:01 23   that involves suing over 90 customers that alleges

09:31:06 24   infringement, based solely on the use of the software to

09:31:11 25   design or to employ the methods covered by the patents, why

09:31:20  1   that doesn't create a reasonable apprehension of alleged

09:31:27  2   liability.

09:31:27  3           And I agree you have this sentence here, but I

09:31:29  4   read that sentence in isolation at least just to say the

09:31:33  5   fact that somebody sued a customer of a DJ Plaintiff isn't

09:31:39  6   sufficient to create Article III jurisdiction.

09:31:45  7           MR. KAMPRATH:  Correct, Your Honor.  So, the

09:31:47  8   *DataTern* case had a very similar fact pattern, as we're

09:31:51  9   discussing.

09:31:51 10           So, I think that sentence is the starting point.

09:31:54 11   And it answers your question:  Is the mere lawsuit itself

09:31:57 12   enough?  And the answer is no based on that.

09:31:59 13           THE COURT:  Again, it's not "the mere lawsuit."

09:32:00 14           MR. KAMPRATH:  That's right.

09:32:01 15           THE COURT:  If you've got specific allegations

09:32:03 16   in the Complaint in this -- in the Complaints plural.

09:32:05 17           MR. KAMPRATH:  Correct.  And, Your Honor, I

09:32:06 18   think that's the next step is the Court has to analyze, what

09:32:10 19   are those allegations in the Complaint?  And then what

09:32:13 20   you -- but you have to look at it in the specific causes of

09:32:16 21   action that the DJ Plaintiffs are bringing.  It has to be

09:32:19 22   under direct infringement, inducement or contributory

09:32:23 23   infringement.  It can't just be in the abstract by itself.

09:32:26 24   Is there enough subject matter jurisdiction?

09:32:29 25           The question is:  Is there subject matter

09:32:31 1    jurisdiction for one or each of those, an allegation of

09:32:34 2    direct infringement, inducement or contributory

09:32:37 3    infringement?

09:32:37 4            THE COURT:  All right.  What was the allegation,

09:32:41 5    the factual allegations in the Complaints in the *Microsoft*

09:32:45 6    *v. DataTern* case?

09:32:46 7            MR. KAMPRATH:  They similarly, Your Honor, had

09:32:49 8    claim charts that showed how the patents were being used by

09:32:55 9    the customers based on Microsoft, for example, user guides

09:33:00 10   and manuals.  So, it's similar to this case, Your Honor.

09:33:03 11           So, there are three patents.  Two of the patents

09:33:07 12   the Court found it had subject matter jurisdiction based on

09:33:11 13   those manuals and the plus factor, and we can get into that.

09:33:15 14           But for the third patent that did not sue -- did

09:33:18 15   not cite user manuals, but cited third-party materials, the

09:33:22 16   Court found it did not have subject matter jurisdiction for

09:33:26 17   inducement because there wasn't any evidence in those charts

09:33:28 18   that Microsoft was encouraging others to directly infringe.

09:33:32 19   And that's why *DataTern* -- you've got to look at the

09:33:34 20   specific causes of action, direct infringement, inducement

09:33:37 21   and/or contributory infringement.

09:33:40 22           THE COURT:  All right.  You don't see any

09:33:54 23   tension between *Microsoft* against *DataTern* and the *Mitek*

09:33:59 24   case which is much more recent?

09:34:01 25           MR. KAMPRATH:  No, Your Honor.

09:34:02  1          THE COURT:  Okay.  All right.  I don't want to

09:34:05  2   dwell because we've got to watch time on this issue.  Let's

09:34:09  3   turn to -- you would agree that under *DataTern* -- and you do

09:34:14  4   agree in your briefing that a reasonable apprehension of

09:34:25  5   being subject to indemnification obligation would create a

09:34:30  6   case in controversy jurisdiction; right?

09:34:32  7          MR. KAMPRATH:  If that's alleged in the

09:34:35  8   Complaint, yes, Your Honor.

09:34:35  9          THE COURT:  Okay.  All right.  Why isn't it

09:34:36 10   alleged here?

09:34:37 11          MR. KAMPRATH:  Great question.  So, here on

09:34:38 12   Slide 9 is a citation from the Synopsys and Cadence

09:34:43 13   Complaint.  This is their basis for saying that there are

09:34:46 14   indemnity obligations, and there are a couple problems with

09:34:49 15   it.

09:34:49 16          Number one, it says that the customers have

09:34:53 17   entered into license agreements with the Plaintiffs.  We

09:34:55 18   don't know which customers have entered into license

09:34:58 19   agreements.  We don't know which Plaintiffs have entered

09:35:00 20   into license agreements.

09:35:01 21          THE COURT:  They only have to have one.

09:35:02 22          MR. KAMPRATH:  For each of the DJ Plaintiffs,

09:35:04 23   Your Honor, and we don't know that each of the DJ Plaintiffs

09:35:07 24   have those licenses with customers.

09:35:09 25          THE COURT:  So, your only beef here is it says

09:35:12  1    Plaintiffs, it doesn't say which of the two Plaintiffs in

09:35:15  2    1512; is that right?

09:35:16  3                MR. KAMPRATH:  That's the first beef we have.

09:35:18  4                THE COURT:  All right.  Well, that seems to

09:35:19  5    be -- that's not going to pass muster here.  I mean, you

09:35:22  6    know, I agree it would be ideal that it identifies which,

09:35:30  7    but that's not -- I don't think that that's compelling.

09:35:33  8                MR. KAMPRATH:  Fair enough.

09:35:34  9                THE COURT:  And it can be corrected quickly.

09:35:35 10                MR. KAMPRATH:  It could be, Your Honor.

09:35:37 11                THE COURT:  All right.

09:35:37 12                MR. KAMPRATH:  Secondly, the sentence says, "The

09:35:40 13    license agreements contain defense and/or indemnity

09:35:43 14    provisions."

09:35:44 15                This is the bigger problem, Your Honor.  There's

09:35:47 16    been no citation to any case law where a defense obligation

09:35:50 17    can give rise to subject matter jurisdiction.  It's

09:35:54 18    indemnity obligations.

09:35:55 19                So, we here have another ambiguity that we don't

09:35:57 20    know if it's defense or indemnity provisions.  Again, this

09:36:01 21    is just in the Complaint, and we're looking at what the

09:36:04 22    Complaint says.

09:36:05 23                THE COURT:  Well, there's no case that says the

09:36:07 24    defense obligation isn't sufficient, is there?

09:36:09 25                MR. KAMPRATH:  Not that we've found, Your Honor.

09:36:10  1          THE COURT:  Right.

09:36:11  2          MR. KAMPRATH:  But, Your Honor, I would

09:36:14  3   recommend if that's the case, if it's all defense

09:36:16  4   obligations, then the proper course of action would be for

09:36:19  5   the DJ Plaintiffs to go and defend the underlying cases that

09:36:23  6   have --

09:36:23  7          THE COURT:  Look, I agree that, you know, that's

09:36:26  8   true.  They could do that.  But let me tell you what I find

09:36:31  9   really compelling.  It's what the Supreme Court says about

09:36:35 10   DJ actions because, ultimately, we all work under what the

09:36:39 11   Supreme Court says.

09:36:42 12          And I was really taken by what the Supreme Court

09:37:05 13   said in the *Kerotest* case that you all cited.  The Court

09:37:17 14   said, "The Federal Declaratory Judgments Act, facilitating

09:37:22 15   as it does the initiation of litigation by different parties

09:37:26 16   to many-sided transactions, has created complicated problems

09:37:31 17   for coordinate courts.  Wise judicial administration giving

09:37:38 18   regard to conservation of judicial resources and

09:37:43 19   comprehensive disposition of litigation does not counsel

09:37:47 20   rigid mechanical solution of such problems.

09:37:52 21          "The factors relevant to wise administration

09:37:55 22   here are equitable in nature.  Necessarily, an ample degree

09:38:01 23   of discretion, appropriate for disciplined and experienced

09:38:06 24   judges, must be left to the lower courts."

09:38:09 25          MR. KAMPRATH:  Completely agree.

09:38:10  1        THE COURT:  So, you're right.  They could go

09:38:11  2   intervene in 90-some cases.  But I think wise, experienced,

09:38:19  3   disciplined judges would say, That's not a really good

09:38:22  4   solution.

09:38:25  5        MR. KAMPRATH:  Your Honor, I would respectfully

09:38:27  6   disagree and let me tell you why.  The underlying lawsuits,

09:38:31  7   some of which, as you know, we've discussed have been

09:38:33  8   pending for over a year and are already advanced.  The DJ

09:38:38  9   Plaintiffs have discussed that some of the issues that are

09:38:41 10   at issue in this case overlap with the same exact issues in

09:38:45 11   those cases and will be decided before -- presumably before

09:38:48 12   this case or these cases would go to trial.

09:38:51 13        The bigger issue, Your Honor, is that the facts

09:38:56 14   regarding infringement in those underlining cases, those

09:39:00 15   facts -- that evidence is generally not going to be with the

09:39:02 16   DJ Plaintiffs.  Some of that will be with the DJ Plaintiffs,

09:39:06 17   the software and how it works.  But the who, what, when,

09:39:09 18   where and why of how those method claims that are asserted

09:39:13 19   in the underlying cases, how those are infringed, the DJ

09:39:17 20   Plaintiffs don't have any of that evidence.

09:39:19 21        So, the underlying cases will resolve a ton of

09:39:22 22   different issues, including specific acts of infringement by

09:39:25 23   the accused infringers.  The issues that would need to be

09:39:30 24   resolved in this case are a subset of those issues that

09:39:33 25   could be resolved in the underlying cases as well.

09:39:35 1          And, Your Honor, I would recommend or just

09:39:38 2   mention the DJ Plaintiffs would not have to intervene in

09:39:43 3   90 cases.  As we discussed, a number of those have been

09:39:45 4   resolved with the underlying Defendants.

09:39:49 5          There would be at least one case that they could

09:39:52 6   have -- they could intervene, and they could participate in

09:39:55 7   the case, fully adjudicate the issues that are relevant to

09:39:59 8   them that are related to the actual underlying issues of the

09:40:02 9   who, what, when, where, why and how the accused defenders in

09:40:07 10  the underlying cases are infringing.

09:40:08 11         THE COURT:  All right.  Well, this all came up

09:40:10 12  and kind of got into the preliminary injunction issue

09:40:14 13  really, but it came up in response to when you were positing

09:40:18 14  that this idea, defense versus indemnity somehow is

09:40:28 15  meaningful.

09:40:29 16         MR. KAMPRATH:  Correct, Your Honor.

09:40:29 17         THE COURT:  And that the obligation to defend

09:40:33 18  would not give rise to jurisdiction, as I understood your

09:40:37 19  argument --

09:40:38 20         MR. KAMPRATH:  Correct, Your Honor.

09:40:39 21         THE COURT:  -- because they could intervene.

09:40:41 22         MR. KAMPRATH:  Correct, Your Honor.

09:40:42 23         THE COURT:  Right.  But regardless, the

09:40:46 24  obligation to defend imposes expense.  And if they have to

09:40:53 25  bear that expense or if there's a reasonable apprehension

09:40:56  1    that they would have to bear that expense, that seems to

09:40:59  2    give rise to a case of controversy.

09:41:04  3                    MR. KAMPRATH:  So, Your Honor, that's an

09:41:05  4    excellent point, and I think that's where the factual attack

09:41:08  5    comes into play.  And I defer to my colleague, Mr. Newcomer,

09:41:13  6    as well.

09:41:14  7                    But since the filing of the Complaint, there

09:41:16  8    have been a number of discovery items that have happened,

09:41:20  9    document production, depositions so far.  And, number one,

09:41:26 10    there's been no evidence of any indemnity obligations that

09:41:29 11    have been fulfilled.  But there are only a handful -- and,

09:41:33 12    again, we can get into this, but there are only a handful or

09:41:36 13    very few defense obligations that have been asked for,

09:41:39 14    received, and --

09:41:40 15                    THE COURT:  So, I agree.  It may not be as

09:41:43 16    fulsome as the rather vague allegations in the Complaint

09:41:48 17    would suggest.  But at the end of the day, don't I now have

09:41:51 18    a record that at least -- well, that each Plaintiff has been

09:42:09 19    in receipt of at least one request for indemnification or

09:42:14 20    defense coverage?  Is that not fair?

09:42:16 21                    MR. KAMPRATH:  Yes, it is, Your Honor.

09:42:17 22                    THE COURT:  Okay.  And isn't that enough by

09:42:19 23    itself to create a case for controversy, a reasonable

09:42:23 24    apprehension that the Plaintiffs are going to have to incur

09:42:30 25    some cost related to these cases?

09:42:34  1              MR. KAMPRATH:  Facially, Your Honor, that might

09:42:36  2      be correct.  And that's the problem here.  Factually --

09:42:39  3              THE COURT:  No, it is factual because I thought

09:42:41  4      it's based on affidavits.

09:42:43  5              MR. KAMPRATH:  That's right.

09:42:44  6              THE COURT:  Right.  Affidavits; right?  So, it

09:42:46  7      is factual.

09:42:46  8              Now, it may be that you've got a better argument

09:42:48  9      like, Well, they overstated the case or that, Hey, many, if

09:42:53 10      not most, of these underlying Defendants are not going to

09:42:59 11      make, or have not made, or will not make defense or

09:43:04 12      indemnity requests.  But they only need one.

09:43:08 13              MR. KAMPRATH:  They need one for a facial

09:43:11 14      attack, Your Honor.  But we would submit --

09:43:12 15              THE COURT:  Why don't they need one for a

09:43:14 16      factual attack?

09:43:15 17              MR. KAMPRATH:  For a factual -- remember, they

09:43:17 18      have to have subject matter jurisdiction throughout the

09:43:20 19      case, and so this is -- kind of the complicated part is

09:43:22 20      we've been looking at and talking about the Complaint and at

09:43:25 21      the time of the Complaint.

09:43:26 22              But now, if there are new facts where they've

09:43:28 23      lacked subject matter jurisdiction because, for example,

09:43:31 24      there are no indemnity obligations or they're fighting

09:43:35 25      against their own customers, that changes course.  And so,

09:43:37 1    that's why it's a complicated analysis of looking at the

09:43:40 2    Complaint.  There has to be subject matter jurisdiction

09:43:43 3    then, but it has to continue throughout the case.

09:43:45 4              And so, part of the reason why we bring this up

09:43:49 5    in discretionary denial is that there are changed facts that

09:43:53 6    have happened.  And so, even if you accept the allegations

09:43:56 7    as true and even if you say those allegations are sufficient

09:43:59 8    for subject matter jurisdiction at the time of the

09:44:02 9    Complaint, we believe the facts that have come out since

09:44:06 10   then don't support that allegation.

09:44:09 11             THE COURT:  And a factual analysis is not based

09:44:12 12   on the time -- or I should say, rather, it's not determined

09:44:17 13   based on the time of the filing of the Complaint, it's based

09:44:20 14   on the current state of affairs.

09:44:22 15             Is that your position?

09:44:23 16             MR. KAMPRATH:  Correct.  Technically it would be

09:44:26 17   based on both, and if there's -- at any time there was

09:44:29 18   insufficient subject matter jurisdiction.  But you're right,

09:44:31 19   Your Honor.

09:44:32 20             THE COURT:  Okay.  All right.

09:44:34 21             MR. KAMPRATH:  The last -- I mean, we can go

09:44:37 22   back and talk about the other subject matter jurisdiction

09:44:41 23   issues as we talk.  There's indemnity obligations.  We think

09:44:45 24   there are issues there.

09:44:46 25             There's indirect infringement, inducement,

09:44:49  1    contributory infringement.  We think there are issues there.

09:44:51  2            There's direct infringement allegations.  We

09:44:53  3    think there are issues there.

09:44:58  4            THE COURT:  You want to hit what those issues

09:45:00  5    are?

09:45:00  6            MR. KAMPRATH:  Yes, Your Honor.

09:45:09  7            Again, we will turn to *DataTern*.  As we

09:45:11  8    discussed, *DataTern* looks at just the filing of the lawsuit

09:45:15  9    itself is not enough for DJ jurisdiction.  But as we've

09:45:18 10    discussed, if there's more, and in the *DataTern* there was,

09:45:20 11    and in this case there is more.  If there's more, such as

09:45:23 12    charts that show and are pointing to a third party, such as

09:45:26 13    the DJ Plaintiffs here, and their software being used, that

09:45:31 14    could form the basis for a DJ -- for DJ jurisdiction for

09:45:34 15    specific claims.  And here, those claims would be -- are the

09:45:38 16    ones that were pled:  contributory infringement, inducement,

09:45:41 17    and direct infringement.

09:45:43 18            So, for contributory infringement, the *DataTern*

09:45:46 19    case tells us to look at the statute, 35 U.S.C. 271(c)

09:45:51 20    requires a product -- if it's going to be a contributory --

09:45:56 21    if it's going to be a contributory product to infringement,

09:45:59 22    it cannot be a staple article or commodity of commerce

09:46:03 23    suitable for substantial non-infringing use.

09:46:07 24            So, we look at what was pled in the Complaint.

09:46:13 25    We have multiple paragraphs in the *Synopsys v. Cadence* or

09:46:17  1    Synopsys and Cadence Complaint, Paragraph 2, 3, 5 and 6.

09:46:22  2    Paragraph 4 is here, but the other paragraphs are 2, 3, 5

09:46:25  3    and 6 that discuss how Cadence, Siemens, and Synopsys'

09:46:28  4    different products work and what they're used for.

09:46:31  5            At a high level, Your Honor, these products are

09:46:33  6    circuit design products.  They're software that allows

09:46:36  7    engineers and circuit designers to design very complicated

09:46:39  8    chips.

09:46:40  9            I've been an engineer.  I was a soft or a

09:46:43 10    hardware engineer myself.  These products can be used to

09:46:46 11    design a whole bunch of different chips.  They're used for

09:46:49 12    designing digital chips, analog chips, mixed signal chips, a

09:46:54 13    whole bunch of different types of chips.

09:46:57 14            There's no evidence and there's no pleading in

09:46:58 15    the Complaints that these products do not have a substantial

09:47:02 16    non-infringing use.  And, in fact, as we see in these

09:47:06 17    paragraphs, it talks about all the different uses of the EDA

09:47:11 18    tools that would be the DJ products.

09:47:13 19            And, in fact, Bell Semi admits that these EDA

09:47:18 20    tools have substantial non-infringing uses, so there cannot

09:47:21 21    be a basis for subject matter jurisdiction for contributory

09:47:24 22    infringement, Your Honor.

09:47:25 23            For inducement, the DJ Plaintiffs have to show

09:47:36 24    that there was an affirmative act encouraging others to

09:47:41 25    infringe.  And what that comes down to in *DataTern* is --

09:47:43 1                    THE COURT:  Can I just stop you there?

09:47:44 2                    MR. KAMPRATH:  Yes, Your Honor.

09:47:45 3                    THE COURT:  They have to show that there's a

09:47:47 4       reasonable apprehension that they're going to be subject to

09:47:50 5       induced infringement allegations?

09:47:51 6                    MR. KAMPRATH:  Correct, Your Honor.

09:47:52 7                    THE COURT:  Okay.

09:47:53 8                    MR. KAMPRATH:  And the way that we figure out

09:47:54 9       whether there is reasonable apprehension is we go to the

09:47:57 10      statute, which is 271(b).  Unfortunately, 271(b) does not

09:48:02 11      provide a ton of guidance.

09:48:03 12                   But *DataTern* does, and it talks about how to

09:48:07 13      prove induced infringement.  The patentee must show that the

09:48:10 14      accused inducer took an affirmative act to encourage

09:48:14 15      infringement with the knowledge that the induced acts

09:48:16 16      constitute patent infringement.

09:48:17 17                   And here, as we've been discussing and as Your

09:48:20 18      Honor has been intimating, in *DataTern* there were charts

09:48:23 19      that cited to Microsoft user guides and manuals.

09:48:27 20                   We have the same thing here.  There are multiple

09:48:30 21      charts that were attached to the multiple underlying

09:48:33 22      lawsuits that show how the use -- that cite to user guides

09:48:38 23      and manuals for specific DJ Plaintiffs of EDA tools, how

09:48:44 24      those could be used by the underlying accused infringers to

09:48:48 25      practice the methods of the accused or the asserted patents.

09:48:52  1          That's the only evidence they have of a basis

09:48:58  2    for subject matter jurisdiction for inducement are those

09:49:02  3    charts.  The problem is *DataTern* says that -- the *DataTern*

09:49:07  4    case looks at -- looked at those charts and then said,

09:49:14  5    "Considering these instructions," so looking at the charts

09:49:17  6    and all of the citations in those charts in those cases to

09:49:21  7    the Microsoft user guides and manuals, it said, "Considering

09:49:25  8    these instructions in view of the rest of the evidence on

09:49:28  9    record," then it found that there was a reasonable

09:49:31 10    apprehension of a suit for indirect infringement.

09:49:34 11          THE COURT:  And you don't have that here?

09:49:36 12          MR. KAMPRATH:  Correct, Your Honor.  The only

09:49:37 13    thing we have are these charts.  And I would submit to you,

09:49:40 14    Your Honor --

09:49:40 15          THE COURT:  And you're saying you're basing

09:49:42 16    it -- it's the rest of the evidence on the record that

09:49:45 17    existed in *DataTern*?

09:49:46 18          MR. KAMPRATH:  Correct.  There's at least those

09:49:48 19    two things, Your Honor.  And we don't have any pleading in

09:49:50 20    this case in the DJ Plaintiffs' Complaint of anything else

09:49:53 21    that's happened, other than those charts that are attached

09:49:57 22    to the underlying Complaints.

09:50:02 23          Bell Semi has not had any overt acts against the

09:50:05 24    DJ Plaintiffs.  And, in fact, Your Honor, now looking in the

09:50:08 25    context of the litigation as we've spoken, the first cases,

09:50:12  1    underlying cases, as we've discussed, were filed in April of

09:50:15  2    2022.  DJ Plaintiffs waited seven months to file this DJ

09:50:19  3    case or these DJ cases.

09:50:22  4                So, saying that there's a reasonable

09:50:24  5    apprehension of an actual litigation being filed, it seems

09:50:29  6    like if that was true, they would have filed these DJ cases

09:50:32  7    closer to the first filed underlying cases, which, again,

09:50:35  8    goes back to the efficiency.  They could have intervened or

09:50:39  9    joined in those first filed cases, and they chose not to for

09:50:42 10    whatever reason.

09:50:43 11                THE COURT:  I don't know.  In *Mitek* the Court

09:50:44 12    said that there just had to be allegations by the patentee,

09:50:47 13    or other record evidence to establish at least a reasonable

09:50:50 14    potential that infringement claims against *Mitek* could be

09:50:54 15    brought.  It's a reasonable potential, and that's a case

09:50:58 16    from last year.

09:50:59 17                MR. KAMPRATH:  And, Your Honor, I would submit

09:51:01 18    if they had filed this case in April of last year, that

09:51:04 19    might have been correct.  But waiting seven months, and

09:51:07 20    Bell Semi has yet to file any lawsuit against Cadence,

09:51:12 21    Siemens, or Synopsys.  If there was a reasonable

09:51:14 22    apprehension, there is no reasonable apprehension now.

09:51:20 23                THE COURT:  Because you haven't sued them yet?

09:51:22 24                MR. KAMPRATH:  Correct, Your Honor.

09:51:23 25                THE COURT:  I mean, that seems to me to be

09:51:25  1    contradicted by *Mitek*.  I mean, if you look at the timeline

09:51:28  2    in *Mitek*, there were a lot more months between the initial

09:51:35  3    filings and when Judge Gilstrap made his decision which was

09:51:39  4    reversed.

09:51:40  5            MR. KAMPRATH:  Correct, Your Honor.

09:51:40  6            THE COURT:  That's a hard -- I don't get that.

09:51:43  7    But anyway, let's not dwell on that.

09:51:45  8            MR. KAMPRATH:  Well, it's also just the whole

09:51:47  9    entire context, Your Honor.  And as we talked, there were

09:51:50 10    90 cases filed, as well, and so that's different from *Mitek*.

09:51:53 11            But in this case, because there was this

09:51:55 12    campaign and it was moving on --

09:51:57 13            THE COURT:  Well, so do you want to just state

09:52:00 14    in open court here that you will not sue them?

09:52:01 15            MR. KAMPRATH:  I can't state that for my --

09:52:02 16            THE COURT:  Well, that would take care of it,

09:52:04 17    wouldn't it?

09:52:09 18            MR. KAMPRATH:  It could, but I can't state that

09:52:11 19    for my client, Your Honor.

09:52:16 20            The last basis would be direct infringement.

09:52:20 21    And the problem here is the same as the problem with the

09:52:24 22    indirect inducement claim, Your Honor.  The only basis they

09:52:27 23    have for a direct infringement claim would be the claim

09:52:31 24    charts that were provided as part of the underlying

09:52:34 25    lawsuits.

09:52:35 1          THE COURT:  Well, it's also -- you do have

09:52:36 2    allegations in the Complaints themselves --

09:52:39 3          MR. KAMPRATH:  Correct, Your Honor.

09:52:40 4          THE COURT:  -- that say it, so it's not just the

09:52:42 5    claim charts.

09:52:42 6          MR. KAMPRATH:  Right.  The claim chart --

09:52:43 7          THE COURT:  In fact, what's noticeable about the

09:52:46 8    underlying Complaints is really the only fact alleged in the

09:52:49 9    Complaints about infringement is that the accused infringers

09:52:57 10   use the software manufactured by one of the Plaintiffs.

09:53:02 11         MR. KAMPRATH:  Your Honor, that's the allegation

09:53:05 12   of how the method claim limitations are met, but there are

09:53:08 13   other allegations about how the method claims are -- how the

09:53:11 14   patent -- how the patented features are used.  And so, it

09:53:15 15   goes back to -- and there are a ton of allegations in there

09:53:18 16   about who, what, when, where, why, how these are being

09:53:21 17   practiced.

09:53:41 18         Your Honor, I just heard from my client and we

09:53:44 19   can state in open court that if these cases are dismissed,

09:53:48 20   Bell Semiconductor will not sue the DJ patent -- DJ

09:53:52 21   Plaintiffs on these claims that are brought here.

09:53:57 22         THE COURT:  All right.  Does that change the

09:54:00 23   calculus for anyone sitting at the table?

09:54:04 24         MR. WOLF:  Your Honor, no, because the whole

09:54:05 25   point of this is indemnity.

09:54:07  1          THE COURT:  Right.  You could have done a nicer

09:54:10  2   job, though, of articulating that, couldn't you have?

09:54:11  3          MR. WOLF:  Your Honor, I'm not -- yes, Your

09:54:13  4   Honor, we could have.

09:54:13  5          THE COURT:  All right.

09:54:14  6          MR. WOLF:  Yes.

09:54:14  7          THE COURT:  Go ahead.

09:54:16  8          MR. KAMPRATH:  Your Honor, excuse me.  Unless

09:54:18  9   you have any other questions, that's all I have, Your Honor.

09:54:20 10          THE COURT:  Let me throw something at you and

09:54:27 11   get your reaction.

09:54:28 12          MR. KAMPRATH:  Of course.

09:54:29 13          THE COURT:  I think a better way of resolving

09:54:36 14   this preliminary injunction issue without hearing -- you

09:54:41 15   know, I've got to hear arguments from the parties, but a

09:54:43 16   thought --

09:54:43 17          MR. KAMPRATH:  Of course.

09:54:44 18          THE COURT:  -- really occurs to me.  It's not

09:54:46 19   addressed until, I think, the last paragraph in your reply

09:54:48 20   brief.  But it occurred to me before I read the reply brief,

09:54:52 21   which is that what we ought to do to create judicial

09:54:57 22   efficiency across the country is fast-track this case and

09:55:04 23   litigate validity.

09:55:10 24          And I'm going to guess all the other district

09:55:13 25   courts would say, You know what, let's step down.  Let's

09:55:17  1    create judicial efficiency for the court system as a whole

09:55:21  2    and get that litigated.  I think that's what Judge Kronstadt

09:55:25  3    was saying.

09:55:26  4              And so, what I'm also thinking, though, is,

09:55:34  5    well, why don't we do that, but at the same time engage in

09:55:38  6    expedited personal jurisdiction discovery.  And so, I don't

09:55:43  7    decide your motion definitively until that's done.

09:55:48  8              What do you think about that?

09:55:50  9              MR. KAMPRATH:  So, excuse me, Your Honor.  A

09:55:52 10    couple just issues with that.

09:55:54 11              Number one is, I think, Judge Huff, who's been

09:55:56 12    litigating her cases for a year now, may have an issue with

09:55:59 13    that.  And she may say that she should be the one to

09:56:03 14    litigate those issues as she's already been looking at these

09:56:05 15    things for a year.

09:56:06 16              THE COURT:  Well, do you have a trial date in

09:56:09 17    that case?

09:56:09 18              MR. KAMPRATH:  We do.

09:56:10 19              THE COURT:  When is it?

09:56:11 20              MR. KAMPRATH:  I'll hold that for you, Your

09:56:14 21    Honor, but as I stated earlier, those cases against *NXP*, the

09:56:17 22    claim construction briefing will be done next month.  So,

09:56:19 23    it's in the middle of discovery, and claim construction is

09:56:22 24    almost finished.

09:56:23 25              The other thing I'd say, Your Honor, is there's

09:56:27 1    efficiency looking forward and then there are all the

09:56:29 2    efficiencies or inefficiencies that have happened going

09:56:33 3    backwards.  And staying all of these other litigations so

09:56:36 4    that the validity could be decided is one way to look at

09:56:39 5    efficiency.

09:56:40 6           THE COURT:  Well, actually in fairness -- sorry

09:56:42 7    to interrupt, but I should have said we can also have

09:56:45 8    non-infringement.  I mean, you know, because that's what --

09:56:47 9    again, Judge Kronstadt is thinking, you know, you're right

09:56:51 10   that infringement by one of the customer defendants doesn't

09:56:59 11   do anything to resolve infringement or not necessarily

09:57:03 12   infringement by another.  But it seems very clear that if

09:57:06 13   there's a finding of non-infringement in this case, that has

09:57:11 14   enormous judicial efficiency repercussions.

09:57:15 15          MR. KAMPRATH:  I think that's correct, Your

09:57:17 16   Honor.  And one thing I'll tell you, the Judge Huff *NXP*

09:57:21 17   case, the trial date is February 6th, 2024.

09:57:25 18          And here's the problem, Your Honor.  In that one

09:57:30 19   scenario, that might be more efficient, but the problem is

09:57:32 20   if it's -- if these patents are found to be valid and

09:57:36 21   infringed by the DJ Plaintiffs, for example, we still would

09:57:39 22   then have to go and try every single other one of those

09:57:42 23   underlying cases because, number one, none of the underlying

09:57:46 24   accused infringers have agreed to be bound by factual

09:57:49 25   findings in this case.

09:57:50  1          And, number two, as we discussed, all the actual

09:57:54  2    evidence about how any of the accused infringer circuits are

09:57:58  3    made using these tools, Cadence, Siemens and Synopsys don't

09:58:01  4    have that evidence, Your Honor.

09:58:02  5          And so, there is a potential outcome where it

09:58:06  6    may be more efficient to do it that way, but that, we

09:58:09  7    submit, is not the most efficient way to try all these

09:58:12  8    issues that are at issue.

09:58:14  9          THE COURT:  Yeah, I disagree with you there.

09:58:17 10    There's no question it would be most efficient to have one

09:58:21 11    Court address the validity and non-infringement of the

09:58:26 12    software manufactured by these three plaintiffs.

09:58:30 13          MR. KAMPRATH:  And, Your Honor --

09:58:30 14          THE COURT:  I just disagree with you.

09:58:32 15          MR. KAMPRATH:  -- the other point I would make

09:58:33 16    is there is a mechanism for that.  If that was going to

09:58:38 17    occur, the MDL, and, you know, DJ Plaintiffs could have and

09:58:42 18    probably should have filed a multidistrict litigation

09:58:45 19    request to have all of these cases put together, and they

09:58:49 20    did not.  So, again, I mean, this bleeds into or colors the

09:58:53 21    efficiency argument we're making.

09:58:55 22          THE COURT:  All right.  How come you didn't sue

09:58:56 23    the three Plaintiffs here?

09:58:58 24          MR. KAMPRATH:  Your Honor, it goes to the people

09:59:03 25    that are actually using the products and, again, it goes

09:59:08 1    back to the actual evidence involved in collecting and

09:59:11 2    showing who's actually using the products.  It also goes

09:59:14 3    into who you want to sue.  And Plaintiffs have a right to

09:59:17 4    sue who they would like to between who's actually

09:59:19 5    infringing.

09:59:20 6            THE COURT:  You have a right.  It's America.

09:59:22 7    You have a right.  But I don't think I'm going to get a

09:59:28 8    complete candid answer from you.  I don't mean to --

09:59:28 9            MR. KAMPRATH:  No.

09:59:31 10           THE COURT:  -- impugn your integrity, but I'm

09:59:32 11   sure your client wouldn't allow it.  It's notable that you

09:59:35 12   didn't sue the Plaintiffs in this action.

09:59:36 13           MR. KAMPRATH:  Correct, Your Honor.

09:59:38 14           THE COURT:  And there's advantages to obtaining

09:59:42 15   settlements by not suing the Plaintiffs directly in this

09:59:46 16   action, aren't there?

09:59:47 17           MR. KAMPRATH:  Of course, Your Honor.  And,

09:59:48 18   again, that goes to strategy and licensing strategy.

09:59:50 19           THE COURT:  And there are burdens placed on the

09:59:52 20   Court system as a whole by you choosing to not sue these

09:59:58 21   Plaintiffs and go around the country and file almost a

10:00:02 22   hundred infringement cases; correct?

10:00:05 23           MR. KAMPRATH:  I agree with you, Your Honor, and

10:00:06 24   I would submit that there's also burden on our client for

10:00:10 25   having patents and having all these entities infringe their

10:00:13 1    patents.  So, I understand, and this is part of the

10:00:16 2    strategy -- and, again, if we could have filed one case and

10:00:19 3    put all of the accused infringers in one case, we would have

10:00:22 4    tried that, but there are statutes that prevent that.  So, I

10:00:24 5    understand your point, but part of it is we're hamstrung on

10:00:27 6    what we can do and where we can file.

10:00:30 7            Also, under *TC Heartland* we can't have venue in

10:00:32 8    one place.  So, again, MDL could have been an option if, you

10:00:37 9    know, DJ Plaintiffs wanted to go that route, but that was

10:00:39 10   not decided.  Instead, they decided to file a subsequent,

10:00:42 11   what we would say, duplicative case here.

10:00:45 12           THE COURT:  All right.  Anything else?

10:00:47 13           MR. KAMPRATH:  No, Your Honor.

10:00:47 14           THE COURT:  All right.  Thank you.

10:00:48 15           MR. KAMPRATH:  Thank you very much.

10:01:00 16           MS. SCHWARTZ:  Good morning, Your Honor.  My

10:01:08 17   co-counsel will be addressing many of the points that were

10:01:11 18   touched upon about the various District Court litigations

10:01:14 19   that are going on in the context of the motion for

10:01:18 20   preliminary injunction, but I did want to touch briefly on

10:01:22 21   the *NXP* case in particular.

10:01:25 22           I am counsel for NXP in that case, along with

10:01:30 23   Cadence's counsel, Mr. Miller.  So, we are providing a

10:01:35 24   defense for NXP.  I'm very familiar with that case as a

10:01:39 25   result.

10:01:39 1                        THE COURT:  So, who's the "we are providing a

10:01:43 2         defense"?

10:01:43 3                        MS. SCHWARTZ:  At the moment, Cadence and

10:01:44 4         Synopsys.

10:01:44 5                        THE COURT:  Are paying for the defense of NXP?

10:01:47 6                        MS. SCHWARTZ:  They are providing counsel.

10:01:48 7                        THE COURT:  You have record evidence to that

10:01:50 8         effect?

10:01:51 9                        MS. SCHWARTZ:  I believe it comes up in the

10:01:53 10        context of the motion for preliminary injunction, yes.

10:01:56 11                       THE COURT:  Can you point me to the record

10:01:57 12        evidence?

10:01:58 13                       MS. SCHWARTZ:  I would be able to, but I don't

10:02:00 14        have it right on hand here.  But I can find it if -- when I

10:02:03 15        sit back down for the preliminary injunction.

10:02:05 16                       THE COURT:  Well, you've got, I don't know how

10:02:07 17        many, people sitting at the table.  I am assuming

10:02:09 18        somebody --

10:02:09 19                       MS. SCHWARTZ:  I think someone is looking now.

10:02:11 20        But, in particular, there were a couple of

10:02:13 21        misrepresentations about the *NXP* case.

10:02:16 22                       So, first of all, it was not Judge Huff who

10:02:19 23        denied the customer-suit motion to stay in that case.  It

10:02:22 24        was her predecessor on the case, Judge Bashant.  In that

10:02:26 25        decision --

10:02:26  1              THE COURT:  Well, in fairness, you said
10:02:28  2   misrepresentation.  I mean, you said --
10:02:34  3              MS. SCHWARTZ:  The --
10:02:34  4              THE COURT:  Just be careful with your use of the
10:02:36  5   words.  I thought Mr. Kamprath did a very nice job and
10:02:40  6   didn't come across to me like he was being misleading.  I
10:02:44  7   think he had to rely on a number of people.  That's what
10:02:46  8   happens when you have a person who sues people in 90
10:02:50  9   different District Courts.  So, it's hard to keep track of
10:02:53 10   these things.
10:02:53 11              MS. SCHWARTZ:  Point taken, Your Honor.
10:02:55 12   Apologies.
10:02:56 13              THE COURT:  It's all right.
10:02:56 14              MS. SCHWARTZ:  But Judge Bashant in her decision
10:02:59 15   denying the motion to stay on the customer-suit exception
10:03:01 16   relied, in large part, on Bell's representation that they
10:03:05 17   had a meritorious motion to dismiss in connection with this
10:03:09 18   case here, the cases brought by the DJ Plaintiffs.  And so,
10:03:14 19   certainly this Court's ruling if -- to the extent Your Honor
10:03:18 20   would deny a motion to dismiss, I think it's quite possible
10:03:24 21   that we'd move to reconsider that motion to stay, to the
10:03:27 22   extent Your Honor doesn't grant the preliminary injunction
10:03:29 23   motion.
10:03:30 24              So, I don't -- I think there's a lot of these
10:03:33 25   pieces that are all interconnected and basically come back

10:03:37 1    to the motion to dismiss that's pending before us today.

10:03:41 2    So, I just wanted to raise that issue.

10:03:47 3              I believe Mr. Kamprath said that we were well

10:03:48 4    into discovery.  The very first two depositions Bell took

10:03:54 5    this past week, they were each 20-minute depositions.  So,

10:04:00 6    we're just getting underway with discovery in the *NXP* cases.

10:04:04 7    The case is certainly --

10:04:05 8              THE COURT:  Who did they depose for 20 minutes?

10:04:08 9              MS. SCHWARTZ:  Two different engineers at NXP.

10:04:10 10   They took two 30(b)(1) depositions.

10:04:20 11             So, going back to --

10:04:22 12             THE COURT:  I just need a second.

10:04:46 13             Sorry.  Go ahead.

10:04:47 14             MS. SCHWARTZ:  Circling back to Your Honor's

10:04:50 15   question about record evidence of the counsel being provided

10:04:54 16   by Cadence and Synopsys, those are DI-53 and DI-54 where we

10:05:00 17   have declarations from Mr. Miller and from my partner,

10:05:05 18   Barrington Dyer, as to the cases at the time of these

10:05:11 19   declarations as to which Defendants were being -- in which

10:05:15 20   cases.  The suppliers were providing counsel for the

10:05:19 21   individual customers.

10:05:20 22             THE COURT:  All right.  Just hold on one second.

10:05:29 23             All right.  Can you point where in DI-53?

10:05:32 24             MS. SCHWARTZ:  So, DI-53, Paragraph 2 mentions

10:05:37 25   that Cadence agreed to defend certain of its customers, and

10:05:41 1   because of that Arnold & Porter lists off cases A through K

10:05:47 2   in which Cadence is providing representation for NXP,

10:05:54 3   Sequans, and Socionext, both in District Court and in ITC

10:05:58 4   proceedings.

10:06:00 5            And then Paragraph 3 includes additional counsel

10:06:04 6   where Cadence was providing counsel in cases that have since

10:06:09 7   been settled.  That's L through T, those cases in

10:06:17 8   Paragraph 3 of DI-53.

10:06:20 9            THE COURT:  Okay.

10:06:21 10           MS. SCHWARTZ:  DI-54, similarly, Paragraph 2

10:06:26 11  lists the cases for which Synopsys is currently providing

10:06:32 12  defense in various *NXP* and *Socionext* cases.

10:06:36 13           THE COURT:  All right.  So, you've got Synopsys

10:06:40 14  and Cadence on the record providing defenses, paying for

10:06:45 15  defenses in cases, including NXP, and then were you also --

10:06:50 16  you're representing Siemens as well, right?

10:06:53 17           MS. SCHWARTZ:  I'm representing Synopsys.

10:06:54 18           THE COURT:  Well, are you speaking on behalf of

10:06:56 19  Siemens this morning?

10:06:57 20           MS. SCHWARTZ:  I'm speaking on behalf of

10:06:59 21  Siemens, to the extent I can.  If there are

10:07:00 22  additional factual --

10:07:00 23           THE COURT:  Why don't you identify -- just put

10:07:02 24  on the record specific record evidence of defense or

10:07:08 25  indemnification obligations being paid for by Siemens.

10:07:13 1          MS. SCHWARTZ:  I will let Mr. Cimino correct me

10:07:18 2     with any specifics, as he is counsel for Siemens there.

10:07:21 3          THE COURT:  Let's put it on the record.

10:07:22 4          MR. CIMINO:  Good morning, Your Honor.  Frank

10:07:23 5     Cimino for Siemens.

10:07:23 6          We have not agreed to accept indemnity or defend

10:07:28 7     any of our customers yet.  We have six of our customers that

10:07:32 8     are currently being sued.  They have all requested that --

10:07:36 9     we have some pretty serious requests, and the company is

10:07:40 10    considering what to do.  And, obviously, the outcome of this

10:07:42 11    case will help them decide.  But so far, we are not

10:07:47 12    representing any of our customers.

10:07:51 13         THE COURT:  So, you have not had to spend a

10:07:53 14    single penny yet, but there is record evidence, I do recall,

10:07:56 15    where there have been demands.

10:07:59 16         MR. CIMINO:  We have demands from all of the

10:08:01 17    customers that are still in the active cases.

10:08:03 18         THE COURT:  Oh, all of the customers?

10:08:05 19         MR. CIMINO:  We have six customers in the active

10:08:07 20    cases.

10:08:08 21         THE COURT:  And all of them have made demands

10:08:12 22    for indemnification or defense costs?

10:08:12 23         MR. CIMINO:  Yes, Your Honor.  We just have not

10:08:14 24    come to an agreement with them yet.

10:08:16 25         THE COURT:  Got you.

10:08:16  1          MR. CIMINO:  And we haven't spent a single penny

10:08:18  2   as counsel for those customers, but we have been assisting

10:08:21  3   them with their defenses and have filed this suit.  So, we

10:08:24  4   have spent a penny.

10:08:25  5          THE COURT:  Okay.  Thank you.

10:08:27  6          MS. SCHWARTZ:  But I expect that Mr. Wolf will

10:08:32  7   be able to address additional points in the context of the

10:08:35  8   preliminary injunction motion, but I wanted to put those

10:08:37  9   personal points on the record.

10:08:40 10          THE COURT:  Okay.

10:08:41 11          MS. SCHWARTZ:  In the context of the motion to

10:08:42 12   dismiss, I'd like to start with the *MedImmune* case because I

10:08:47 13   think this really sets the requisite standard, being the

10:08:51 14   Supreme Court decision.  And so, the question is really

10:08:54 15   whether the facts here, whether the facts that are pled in

10:08:57 16   the Complaint provide a substantial controversy between Bell

10:09:04 17   and the three suppliers here, whether there is enough in the

10:09:08 18   Complaint to substantiate adverse legal interests between

10:09:12 19   them and us, where there is a reasonable apprehension here

10:09:15 20   of some potential impact on the suppliers.

10:09:18 21          And I think both the allegations in the

10:09:23 22   Complaint and the factual development that's taken place

10:09:25 23   after the filing of the motion to dismiss substantiate that

10:09:29 24   the suppliers do have significant risk here.  There's

10:09:35 25   substantial controversy between Bell and the suppliers'

10:09:38 1    customers, which then necessarily implicates the suppliers.

10:09:42 2              And so, if we look at the different ways that

10:09:48 3    suppliers can establish standing, there's three possible

10:09:52 4    ways that we've kind of summarized here from --

10:09:55 5              THE COURT:  Why don't you just get to *DataTern*,

10:09:57 6    right.  Because I think you've got jurisdiction, but he

10:09:59 7    wants to -- you've got to address *DataTern*.

10:10:01 8              MS. SCHWARTZ:  Okay.  So, I'll skip over the

10:10:05 9    indemnity allegation and jump to --

10:10:06 10             THE COURT:  Well, you've got record evidence,

10:10:08 11   first of all --

10:10:09 12             MS. SCHWARTZ:  Yes.

10:10:10 13             THE COURT:  -- that there have been either

10:10:12 14   demands or -- well, you've got record evidence that there

10:10:15 15   have been demands for defense or indemnification

10:10:20 16   reimbursement by underlying Defendants made to each of the

10:10:31 17   Plaintiffs in this case; right?

10:10:33 18             MS. SCHWARTZ:  Correct.

10:10:33 19             THE COURT:  Okay.  So, we've got that on the

10:10:35 20   record.

10:10:35 21             MS. SCHWARTZ:  Yes.

10:10:35 22             THE COURT:  Okay.

10:10:36 23             MS. SCHWARTZ:  Including there's a wealth of

10:10:38 24   that evidence in connection with the preliminary injunction

10:10:40 25   briefing.

10:10:41  1          THE COURT:  Right.  Okay.

10:10:42  2          MS. SCHWARTZ:  And both -- all three suppliers

10:10:44  3   have produced all of their license agreements with the

10:10:47  4   customers that have been sued up to the point of the

10:10:51  5   briefing on the preliminary injunction motion.  So, there's

10:10:55  6   ample evidence that's been produced to substantiate those.

10:11:01  7          So, if I skip to the controversy as to indirect

10:11:07  8   infringement, and I think this is really where *DataTern*

10:11:10  9   comes into play.  So, *DataTern* did not involve questions of

10:11:16 10   indemnity issues.

10:11:18 11          The Plaintiffs there, Microsoft being one of

10:11:21 12   them, brought a declaratory judgment action.  And in order

10:11:25 13   to try and establish subject matter jurisdiction was

10:11:29 14   pointing to the customer complaints and the claim -- the

10:11:34 15   infringement claim charts there as setting up an implied

10:11:39 16   indirect infringement case against Microsoft.

10:11:41 17          So, that was the general factual allegations

10:11:45 18   there.  And if we look -- I think there's a reasonable

10:11:49 19   potential of a similar indirect infringement claim here.

10:11:52 20          And it's important to note that in *DataTern* the

10:11:54 21   Court did find that there was subject matter jurisdiction as

10:12:00 22   to at least part of Microsoft's claims.  There was only one

10:12:06 23   patent where there just wasn't enough record evidence to

10:12:10 24   substantiate there was a reasonable apprehension of an

10:12:13 25   indirect infringement claim.

10:12:14  1          And so, the *Arris Group* confirms that you can

10:12:18  2    have an implicit assertion of indirect infringement when you

10:12:21  3    sue a customer of a supplier.  And the *DataTern* case at the

10:12:27  4    bottom here is what kind of then sets the standard of what

10:12:30  5    do you do in order to determine whether there is this

10:12:33  6    implicit assertion of indirect infringement?

10:12:35  7          And all you need to have is a reasonable

10:12:38  8    potential, based on the record evidence, that such a claim

10:12:41  9    could be brought.  That's on Page 905 of the *DataTern* case.

10:12:49 10          And so, here we have that reasonable potential.

10:12:51 11    I think basically if we boil down the *DataTern* case, there's

10:12:54 12    two points that it kind of looks at:  Are the customers

10:12:58 13    accused of direct infringement based on use of supplier's

10:13:02 14    tools?  We heard Mr. Kamprath answer, yes, that is the case

10:13:05 15    there.  So, A is easily satisfied.

10:13:08 16          And so then the next question is:  Do the

10:13:11 17    suppliers have the requisite mental state -- I'm sorry -- in

10:13:16 18    order to do either -- in order to do an indirect

10:13:22 19    infringement allegation?  And here the documentation that's

10:13:26 20    in the record, and these are, you know, Exhibits 1

10:13:30 21    through 32, I believe, to the declarations in support of our

10:13:35 22    opposition to the motion to dismiss, are just a sampling of

10:13:39 23    many of the Bell allegations against the customers.  And

10:13:42 24    they definitely demonstrate that they cite to the supplier's

10:13:46 25    documentation over and over again, you know, which gives the

10:13:51  1    implied accusation that the suppliers are instructing

10:13:55  2    customers on how to use the software and in an infringing

10:13:59  3    fashion, which is enough to give an implied indirect

10:14:02  4    infringement count.

10:14:02  5              THE COURT:  All right.  Give me an example of

10:14:04  6    one of those.

10:14:05  7              MS. SCHWARTZ:  Sure.  If we look at -- I think

10:14:06  8    Slide 26 is a nice one.

10:14:12  9              This is an example of a customer claim chart

10:14:16 10    taken from the -- one of the *Socionext* litigations, and you

10:14:21 11    can see in the background there is --

10:14:23 12              THE COURT:  Is this case still pending?

10:14:25 13              MS. SCHWARTZ:  Yes.  It is, Your Honor.

10:14:26 14              THE COURT:  Okay.

10:14:26 15              MS. SCHWARTZ:  There are a number of

10:14:29 16    cut-and-paste excerpts from Cadence's documentation.  And

10:14:33 17    then at the claim chart, it finishes up and says these same

10:14:37 18    steps are carried out by Synopsys, pointing to Synopsys user

10:14:42 19    guides; these same steps are carried out by Siemens,

10:14:45 20    pointing to a Siemens's user documentation.

10:14:49 21              So, this is just one of the examples.  And this

10:14:51 22    is DI-39, Exhibit 2, at Page 12.

10:14:57 23              Exhibit 2 is -- the entire thing is a claim

10:14:58 24    chart -- extensive claim chart with extensive citations to

10:15:03 25    user documentation.

10:15:05  1          And we see this repeated over and over in the

10:15:07  2   customer litigation.  So, we not only have these allegations

10:15:11  3   directly against the supplier's products, because the entire

10:15:16  4   basis for these claim charts are the supplier's

10:15:19  5   documentation, and then explicit recitation that these three

10:15:23  6   suppliers all instruct with their documentation pointing to

10:15:28  7   different documentation from Cadence, Siemens and Synopsys

10:15:32  8   to perform these steps.

10:15:34  9          And so, there's a wealth of record evidence

10:15:37 10   here.  This is just a nice one so I can get all three

10:15:41 11   suppliers cleanly on one slide.

10:15:43 12          And so, I think given the evidence that's in the

10:15:48 13   record here, there's no doubt that Bell alleges that the

10:15:53 14   customer infringes based on use of the supplier tools, and

10:15:57 15   those allegations cite to and rely on suppliers'

10:16:01 16   documentation.  It cites to documentation from all three

10:16:04 17   suppliers.

10:16:05 18          And so, I submit that Cadence, Siemens, and

10:16:10 19   Synopsys all satisfy the independent indirect infringement

10:16:15 20   basis to give grounds for DJ jurisdiction.

10:16:18 21          THE COURT:  All right.  Are you just going to

10:16:20 22   concede contributory infringement?

10:16:22 23          MS. SCHWARTZ:  I'm going to contributory --

10:16:23 24          THE COURT:  It's a good idea.

10:16:24 25          MS. SCHWARTZ:  We didn't brief it, so...  We

10:16:26  1   went with inducement as opposed to contributory.

10:16:29  2              THE COURT:  All right.

10:16:30  3              MS. SCHWARTZ:  And I think we also have the

10:16:32  4   third ground, which would be a controversy as to implied

10:16:37  5   direct infringement.  And just based on these claim charts

10:16:41  6   alone, I think we have that.  So, the *Microsoft versus*

10:16:45  7   *GeoTag* case from this district, because the Defendant --

10:16:50  8   Bell could have just as easily asserted a claim of direct

10:16:53  9   infringement against Siemens, Synopsys, and Cadence -- and,

10:16:56 10   again, we heard Mr. Kamprath admit as much -- based on the

10:17:00 11   exact same underlying circumstances.

10:17:02 12              THE COURT:  Right.  But, you know, let me play

10:17:05 13   devil's advocate here.  How do you square that with

10:17:08 14   *DataTern?*

10:17:08 15              MS. SCHWARTZ:  *DataTern* was not addressing the

10:17:10 16   direct infringement.  It was -- it solely focused on the

10:17:12 17   indirect infringement case.

10:17:15 18              THE COURT:  Well, you've got that sentence that

10:17:16 19   Mr. Kamprath recited here in court.  And out of context at

10:17:22 20   least, that would appear to say it's not enough; right?

10:17:25 21              MS. SCHWARTZ:  But that's ignoring the record

10:17:27 22   evidence.  I think when you look at the record evidence --

10:17:31 23   so, I think that that sentence is important because then the

10:17:35 24   later case goes on to look at the record evidence.

10:17:38 25              And based on that *Microsoft DataTern* record

10:17:41 1    evidence, they found indirect infringement, at least for the

10:17:45 2    majority of patents for Microsoft.

10:17:48 3              THE COURT:  My point is that what Judge Andrews

10:17:51 4    did is what, frankly, I would do, at least in the first

10:17:55 5    instance, and what I think is consistent with *Mitek*, which

10:17:58 6    is just to say if you're suing everybody for direct

10:18:00 7    infringement based on their use of the Plaintiffs here

10:18:05 8    product, that is a reasonable potential of alleged

10:18:09 9    infringement liability coming down the pike; right?

10:18:13 10             MS. SCHWARTZ:  I would agree, Your Honor.

10:18:14 11   Especially in view of the claim charts and the expert

10:18:17 12   declarations that Bell attached to each and every one of its

10:18:20 13   customer Complaints that specifically and only point to the

10:18:24 14   suppliers's products, their documentation, and what they do.

10:18:27 15             THE COURT:  Right.

10:18:28 16             MS. SCHWARTZ:  And I think that's sufficient to

10:18:29 17   give subject matter jurisdiction under either indirect or

10:18:33 18   direct implied infringement.

10:18:35 19             THE COURT:  Okay.

10:18:39 20             MS. SCHWARTZ:  And so I don't have --

10:18:41 21             THE COURT:  I just want to make sure that the

10:18:42 22   record is -- and I want to give Mr. Kamprath the opportunity

10:18:47 23   to respond and rebut this is not the case.

10:18:50 24             But my understanding is that there is record

10:18:59 25   evidence in the form of affidavits that establish that in a

10:19:09  1    case currently pending, one of the 28 cases, there has been

10:19:15  2    a demand for either defense cost reimbursement or

10:19:19  3    indemnification made on each of the three Plaintiffs; right?

10:19:26  4    That's what you're saying?

10:19:27  5              MS. SCHWARTZ:  I can confirm that that is

10:19:29  6    absolutely the case for Synopsys and Cadence.

10:19:32  7              THE COURT:  Well --

10:19:33  8              MS. SCHWARTZ:  And I believe Mr. --

10:19:33  9              THE COURT:  -- actually I think -- hold on.

10:19:36 10    Exhibit 2 of DI-39 at Page 12 -- sorry, different topic.

10:19:44 11    I'm confusing things.

10:19:45 12              Okay.  You can confirm it.  That's right.

10:19:48 13    You're confirming it for Cadence and for Synopsys.

10:19:51 14              MS. SCHWARTZ:  Correct.

10:19:51 15              THE COURT:  You can confirm it.

10:19:53 16              Do you disagree with that, Mr. Kamprath?

10:19:56 17              MR. KAMPRATH:  No, Your Honor.

10:19:57 18              THE COURT:  All right.  Then for Siemens, is

10:20:00 19    the -- we just had representation of counsel.

10:20:03 20              Do we have any record evidence in the form of an

10:20:06 21    affidavit that there has been a defense or indemnity request

10:20:17 22    made on Siemens in a currently pending action?

10:20:22 23              MR. CIMINO:  Yes, Your Honor.  The declaration

10:20:24 24    of Tom Evans, Document 17.

10:21:01 25              THE COURT:  Yeah.  Can somebody hand that up?  I

10:21:03 1  am -- for some reason, I do not have DI-17.

10:21:10 2            MR. CIMINO:  I can hand you my copy, Your Honor.

10:21:22 3            THE COURT:  Do you have it?  Okay.  DI-17 in

10:21:30 4  which case?

10:21:30 5            MR. CIMINO:  In the *Siemens* case.  So, the --

10:21:34 6            THE COURT:  So, the DI-17 I have is titled

10:21:37 7  "Siemens Industry Software's Motion For Preliminary

10:21:39 8  Injunction."

10:21:40 9            MR. CIMINO:  Right.  17-3.

10:21:41 10           THE COURT:  Okay.

10:21:43 11           MR. CIMINO:  Sorry about that, Your Honor.

10:21:44 12           THE COURT:  That's all right.

10:21:46 13           MR. CIMINO:  It's an exhibit.

10:21:47 14           THE COURT:  I need 17-3.

10:22:25 15           MR. CIMINO:  Paragraph 6 and 8, Your Honor.

10:22:31 16           THE COURT:  Okay.  But -- and you can confirm

10:22:47 17  that the Defendants, at least one of the Defendants

10:22:55 18  identified in Paragraph 6 of DI-17-3, which is the affidavit

10:23:00 19  or the declaration, rather, of Thomas Evans is currently a

10:23:05 20  Defendant in a pending action; is that right?

10:23:07 21           MR. CIMINO:  Yes, Your Honor, for example, *NXP*.

10:23:11 22           THE COURT:  Oh, okay.  It is one of the

10:23:13 23  Defendants.  All right.

10:23:14 24           MR. CIMINO:  And we've produced the license in

10:23:17 25  connection with the PI, and we produced the correspondence

10:23:21 1    relative to the demands.

10:23:22 2                THE COURT:  Okay.  I just want to get clarity

10:23:25 3    that that's been identified.

10:23:26 4                Okay.  Mr. Kamprath, do you contest that?

10:23:28 5                MR. KAMPRATH:  I don't contest that, Your Honor,

10:23:30 6    but we do have a response to that.

10:23:32 7                THE COURT:  You might, but I just want to get as

10:23:34 8    a factual matter --

10:23:35 9                MR. KAMPRATH:  No, sir.  No, Your Honor.

10:23:36 10               THE COURT:  All right.  Thank you.

10:23:37 11               All right.  Go ahead.

10:23:39 12               MS. SCHWARTZ:  I have nothing further, Your

10:23:40 13   Honor, not on the motion to dismiss.

10:23:42 14               THE COURT:  Okay.  All right.

10:23:46 15               Mr. Kamprath.

10:23:47 16               MR. KAMPRATH:  Very briefly, Your Honor.  On the

10:23:56 17   indemnity point, Your Honor, again, we can look at *DataTern,*

10:24:01 18   and I know we've looked at this case a lot and --

10:24:03 19               THE COURT:  If I were you, I'd be looking at it

10:24:05 20   a lot, too.  It's your best case.

10:24:07 21               MR. KAMPRATH:  We have.  So, Page 904, again,

10:24:09 22   what we just heard is there are requests for indemnity

10:24:15 23   and/or defense to the DJ Plaintiffs.  *DataTern* is, once

10:24:19 24   again, if you look at Page 904, the paragraph that starts,

10:24:23 25   "To the extent that appellees argue."  And if you go down to

10:24:31  1    the sentence that said, "Instead, appellees seek to broaden

10:24:38  2    our precedent quite substantially by arguing that a customer

10:24:42  3    request to indemnify ought to give rise to standing without

10:24:46  4    regard, it appears, to the merit of the customer request."

10:24:49  5              And here's where I take issue, Your Honor.  We

10:24:53  6    see in the pleading, we've heard there's evidence of request

10:24:56  7    for indemnification.  The DJ Plaintiffs have admitted they

10:25:00  8    have not accepted any of those obligations.  There is no

10:25:04  9    DJ -- there is no --

10:25:05 10              THE COURT:  No, no, no.  Well, Siemens has

10:25:09 11    admitted.

10:25:09 12              MR. KAMPRATH:  Not an indemnity obligation.

10:25:11 13              THE COURT:  Oh, indemnity.  I thought you were

10:25:12 14    talking about --

10:25:12 15              MR. KAMPRATH:  There may be defense obligations,

10:25:15 16    but that's not what *DataTern* says.  The basis in *DataTern*

10:25:17 17    and the other Federal Circuit case law is an indemnity

10:25:20 18    obligation and, in fact -- and my colleague, Mr. Newcomer,

10:25:23 19    will discuss some of this -- in the evidence that's been

10:25:25 20    brought forth in the record, the same declarants that

10:25:29 21    provided the evidence that they just pointed to and was sent

10:25:31 22    to Your Honor were deposed in this case, and they've

10:25:34 23    admitted there are no indemnity obligations that have been

10:25:34 24    accepted.

10:25:38 25              So, we've heard DJ Plaintiffs admit.  We've

10:25:41  1    heard all the declarants also say that none of the indemnity

10:25:45  2    obligations have been accepted.

10:25:47  3                Why is that important?  Why does that matter?

10:25:49  4    We're talking about whether there is subject matter

10:25:51  5    jurisdiction to have this case go forward.  There is no

10:25:54  6    basis for that based on the actual facts that have come out

10:25:57  7    in this case.

10:25:59  8                THE COURT:  Okay.

10:26:00  9                MR. KAMPRATH:  The biggest issue I'll point

10:26:02 10    to --

10:26:04 11                THE COURT:  Go ahead.

10:26:05 12                MR. KAMPRATH:  -- Your Honor, and I think this

10:26:08 13    is now putting the horse before the cart, Bell Semi has

10:26:14 14    admitted if the Court dismisses this case, Bell Semi would

10:26:17 15    not bring these claims that are in DJ Plaintiffs' Complaint

10:26:21 16    against the DJ Plaintiffs.  If there's any apprehension of a

10:26:24 17    lawsuit or if there was, I think that goes away with that

10:26:26 18    statement today.

10:26:27 19                THE COURT:  You know, it's not made under oath.

10:26:29 20    I'm not sure that does dispense with it.  It may at some

10:26:33 21    point.

10:26:34 22                MR. KAMPRATH:  Well, Your Honor, we submit we

10:26:35 23    can follow up with the DJ Plaintiffs' counsel.

10:26:38 24                THE COURT:  No, the problem is -- quite frankly,

10:26:41 25    even if we're under oath, the problem is it doesn't address

10:26:43 1    the defense and indemnity obligations.  It does address them

10:26:49 2    being sued directly.  I agree.

10:26:51 3              MR. KAMPRATH:  Your Honor -- and I would then

10:26:53 4    submit we'd look at what DataTern says in the next sentences

10:26:57 5    here, and it says, "Thus, we decline appellees' request to

10:27:01 6    hold that their customers' indemnification requests, which

10:27:04 7    they concede are not valid alone, can create standing --

10:27:07 8              THE COURT:  Wait.  They've not conceded the

10:27:10 9    requests are not valid, have they?

10:27:12 10             MR. KAMPRATH:  No, Your Honor.

10:27:12 11             THE COURT:  Okay.  Well, there's a big

10:27:14 12   difference.

10:27:14 13             MR. KAMPRATH:  Of course.  And I think the point

10:27:15 14   is -- and this is what *DataTern* gets into, and I would ask

10:27:19 15   that you look at Page 904.

10:27:21 16             THE COURT:  I am.

10:27:22 17             MR. KAMPRATH:  What *DataTern* discusses at the

10:27:25 18   bottom of Page 904 is that if there are defense or indemnity

10:27:30 19   obligations and if that's the sole basis for subject matter

10:27:33 20   jurisdiction, what they could have and should have done is

10:27:36 21   defend or indemnify the underlying cases, not filed a DJ

10:27:39 22   case.

10:27:40 23             And so, if the only remaining thing that's

10:27:41 24   creating subject matter jurisdiction is indemnity

10:27:45 25   obligations -- and as we just pointed out, there are

10:27:48  1    questions around that, in our opinion -- they could have and

10:27:50  2    should have indemnified or defended the underlying cases

10:27:54  3    which they've admitted they're not indemnifying as of yet

10:27:58  4    and they are defending some of those.  That's *DataTern*,

10:28:02  5    Page 904, Your Honor.

10:28:02  6                    THE COURT:  All right.

10:28:04  7                    MR. KAMPRATH:  Unless you have anything else,

10:28:05  8    Your Honor, that's all I have.

10:28:06  9                    THE COURT:  No, that's fine.  Thank you.

10:28:11  10                   All right.  Let's give the court reporter a

10:28:13  11   break, and we'll come back at 20 of.

10:28:19  12                   MR. WOLF:  And, Your Honor, just for

10:28:20  13   housekeeping purposes, how long would you like the

10:28:22  14   preliminary injunction discussion to go?

10:28:23  15                   THE COURT:  I didn't have anything particular in

10:28:27  16   mind.  I think you should think about what I mentioned to

10:28:34  17   your friend across the aisle there and maybe think about

10:28:40  18   what's a reasonable calendar.  So, I think that would be

10:28:48  19   wise.

10:28:48  20                   MR. WOLF:  Very good, Your Honor.  Understood.

10:28:50  21                   THE CLERK:  All rise.

10:32:40  22                   (Recess was taken.)

10:44:26  23                   DEPUTY CLERK:  All rise.

10:44:33  24                   THE COURT:  All right.  Please be seated.

10:44:37  25                   Okay.  Before we get to the injunction, so I'm

10:44:42  1    going to deny the motion to dismiss.  I believe that under

10:44:49  2    *MedImmune* -- and I think the case that's most applicable is

10:44:56  3    *Mitek* -- that declaratory judgment jurisdiction exists and

10:45:03  4    Article III jurisdiction, I think, exists.  I think those

10:45:05  5    cases make clear that there has to be a reasonable

10:45:09  6    apprehension of potential claims being brought or potential

10:45:16  7    liability, and it exists here in two forms.

10:45:20  8          It exists first because there is record evidence

10:45:23  9    that is adduced that the -- each of the Plaintiffs has been

10:45:29 10    the subject of a request for reimbursement of defense costs

10:45:33 11    or indemnification by one of the underlying Defendants in

10:45:38 12    the underlying cases in a pending currently open case, one

10:45:44 13    of the 28 cases that's identified by the Defendant.

10:45:48 14          Secondly, I think it's reasonable to apprehend

10:45:59 15    based on the entirety of the litigation strategy employed by

10:46:05 16    the Defendant, and based on the claim charts and the

10:46:11 17    specific allegations in the Complaints in some of the

10:46:15 18    pending cases -- or not just some of them, all of the

10:46:18 19    pending cases that there is a reasonable potential that the

10:46:29 20    Defendants could be subject to infringement claims.

10:46:32 21          Now, I acknowledge -- and I want to just address

10:46:34 22    that specifically, not just direct infringement, but induced

10:46:40 23    infringement.  And I rely on that conclusion based on DI-39,

10:46:46 24    Exhibit 2 at Page 12 where there's reference to the

10:46:54 25    Plaintiffs' user guides.

10:46:59 1          And, now, I recognize that we have had it stated

10:47:05 2     in open court that the Defendant is not going to sue the

10:47:11 3     Plaintiffs.  That's late -- you know, just occurred here.

10:47:21 4     It wasn't filed under oath.  But I do concede if there had

10:47:28 5     been that declaration made under oath, that would cut

10:47:41 6     against, if not, nullify the second basis of the ruling.

10:47:47 7     But what it does not do is address the first basis of the

10:47:52 8     ruling which is sufficient under *Arris*, I think, and under

10:47:58 9     *Mitek* to give rise to the Article III jurisdiction.

10:48:03 10         There is some language admittedly in *DataTern*.

10:48:08 11    It's a little unusual opinion, *DataTern*.  There's only two

10:48:12 12    judges, not a complete panel of the Court.  I think the

10:48:15 13    language that Mr. Kamprath relied on, particularly the

10:48:20 14    hypothetical at the end, is dicta very clearly in my mind.

10:48:25 15    And I think the sentence at the beginning of Page 904 on

10:48:28 16    which he relied most extensively relating to direct

10:48:31 17    infringement relates solely to direct infringement and

10:48:34 18    basically posits the situation where you've got solely

10:48:39 19    allegations of direct infringement against customers and

10:48:43 20    that's it.

10:48:44 21         And the Court is saying that's not enough to

10:48:47 22    trigger or to justify a Plaintiff in a DJ action saying that

10:48:56 23    I think that I'm potentially subject to infringement.  You

10:49:00 24    need more.  That's what that one sentence says.

10:49:09 25         And so, that's my ruling on the jurisdiction.

10:49:12 1    I'm going to deny the motion to dismiss.

10:49:14 2            All right.  So, now we have the preliminary

10:49:16 3    injunction, and I'm going to deny those motions, plural, to

10:49:19 4    dismiss in both cases.  All right.

10:49:21 5            MR. WOLF:  Thank you, Your Honor.  Matthew Wolf.

10:49:24 6            THE COURT:  And I did want to say, look, because

10:49:27 7    I do think there was a point raised by Mr. Kamprath that

10:49:35 8    subject matter jurisdiction has to exist throughout the

10:49:38 9    course of the case, and it may be that some of the

10:49:42 10   underlying cases are resolved and such that there may be

10:49:48 11   basis to question again whether personal jurisdiction or

10:49:52 12   really subject matter jurisdiction -- when I say "personal,"

10:49:54 13   I mean Article III or personal jurisdiction exist.  And so

10:49:58 14   I'm denying it without prejudice to raise if facts arise

10:50:03 15   that all of a sudden make it the case that I no longer have

10:50:10 16   subject matter jurisdiction.

10:50:11 17           All right?  Okay.

10:50:12 18           Thank you.  Let's go with the preliminary

10:50:14 19   injunction.

10:50:14 20           MR. WOLF:  Thank you, Your Honor, and I'm

10:50:15 21   prepared to discuss your question at any point, but --

10:50:19 22           THE COURT:  Why don't you discuss it first

10:50:20 23   because, you know -- yeah, why don't you discuss it first.

10:50:26 24           MR. WOLF:  Your Honor, Plaintiffs are amenable

10:50:28 25   to and, indeed, appreciative of Your Honor's proposition.

10:50:33 1    We would be prepared to go to trial in toto by January, in

10:50:39 2    January.  We would note that there are deep 101 issues here,

10:50:45 3    and so there would be reason to do a preliminary motions

10:50:49 4    practice before we committed to all of the bells and

10:50:52 5    whistles of a preparation for a jury trial.  We could file

10:50:55 6    that next week, the 101 motions.  We could be ready to argue

10:50:59 7    those at Your Honor's convenience, but we would be ready to

10:51:04 8    do everything January 2024.

10:51:08 9              THE COURT:  All right.  Have you filed any 101

10:51:11 10   motions in any of the pending 28 cases?

10:51:13 11             MR. WOLF:  We have, Your Honor.  Many of them

10:51:14 12   are still -- some of them are still being resolved.  One

10:51:17 13   judge denied it pending a Markman hearing.

10:51:21 14             Now, subsequently, Bell didn't identify what

10:51:25 15   terms they wanted construed.  They argued it was premature

10:51:27 16   to analyze 101.  So, in candor to Your Honor, they may take

10:51:30 17   the position that 101 should be only addressed

10:51:34 18   contemporaneous with subject to a Markman hearing.

10:51:37 19             If that's Your Honor's preference, we would be

10:51:40 20   happy to do that.  We'd be happy to do that promptly.

10:51:44 21             THE COURT:  How many patents -- there are six

10:51:46 22   asserted patents here; correct?

10:51:47 23             MR. WOLF:  Yes, Your Honor.

10:51:48 24             THE COURT:  How many of those are in the *NXP*

10:51:51 25   case?

```
10:51:51  1                    MR. WOLF:  All of them.

10:51:52  2                    THE COURT:  All six.  Are there any other

10:51:55  3    patents in the NXP case not asserted here?

10:51:58  4                    MR. WOLF:  I believe it's six for all, and all

10:52:00  5    for six.

10:52:00  6                    THE COURT:  Across the board?

10:52:01  7                    MR. WOLF:  I believe that's right.  Each.

10:52:05  8                    MS. SCHWARTZ:  The most recently filed case

10:52:06  9    against Texas Instruments, I believe, only asserts five

10:52:09 10    cases.  That was filed within the last month, I believe.

10:52:13 11                    THE COURT:  All right.  And the case that's

10:52:14 12    furthest along is the NXP case?

10:52:16 13                    MR. WOLF:  Right.

10:52:17 14                    THE COURT:  And the Markman hearing is scheduled

10:52:19 15    for when?

10:52:20 16                    MR. WOLF:  I'm turning to my colleague,

10:52:22 17    Mr. Miller.

10:52:22 18                    MR. MILLER:  June 12th, Your Honor.

10:52:24 19                    THE COURT:  How many terms?

10:52:26 20                    MR. MILLER:  I believe right now there are nine.

10:52:29 21                    THE COURT:  And the trial is scheduled for

10:52:39 22    February?

10:52:39 23                    MR. MILLER:  February.

10:52:40 24                    MR. WOLF:  22nd.

10:52:42 25                    THE COURT:  Next year.
```

10:52:43  1          MR. WOLF:  Yes.  So, we would be happy to have

10:52:44  2     this trial in advance of that and, of course, alert the

10:52:48  3     judge in that case immediately if that were to be the

10:52:52  4     situation.

10:52:52  5          THE COURT:  What's the next furthest along case?

10:52:57  6          MR. WOLF:  There really isn't one.  There are no

10:52:59  7     other -- Your Honor, let me -- we've prepared a chart and

10:53:02  8     I'm jumping ahead a little bit.

10:53:07  9          Here's the status of each of the cases.  And

10:53:13 10     what you see is none of them, other than *NXP*, have a trial

10:53:19 11     date.  Most of them are still in the initial pleading phase

10:53:23 12     or not even yet to the initial pleading phase.

10:53:44 13          THE COURT:  It's Judge Huff who's handling the

10:53:52 14     *NXP* case.

10:53:53 15          MR. MILLER:  That's correct, Your Honor.

10:53:54 16          THE COURT:  I'm thinking maybe I should speak

10:54:07 17     with Judge Huff.

10:54:09 18          MR. WOLF:  That might make sense, Your Honor.

10:54:11 19          THE COURT:  What do you think?

10:54:13 20          MR. NEWCOMER:  Your Honor, obviously, that's at

10:54:15 21     your discretion.  We think it would be an error to just, you

10:54:19 22     know, superman her current case based, you know, on issues.

10:54:22 23          THE COURT:  To "superman"?

10:54:23 24          MR. NEWCOMER:  Excuse me.  To grant an

10:54:25 25     injunction against Bell participating in her cases, without

| | | |
|---|---|---|
| 10:54:29 | 1 | considerations of comity which -- |
| 10:54:31 | 2 | THE COURT:  Well, wait.  This is all -- this |
| 10:54:32 | 3 | talk is about there being no PI entertained by me. |
| 10:54:37 | 4 | MR. NEWCOMER:  Right. |
| 10:54:38 | 5 | THE COURT:  This would be me coordinating with |
| 10:54:39 | 6 | Judge Huff. |
| 10:54:40 | 7 | MR. NEWCOMER:  Yeah.  Right. |
| 10:54:41 | 8 | THE COURT:  So, you don't object to that? |
| 10:54:42 | 9 | MR. NEWCOMER:  No, of course not, Your Honor. |
| 10:54:44 | 10 | THE COURT:  Yeah. |
| 10:54:51 | 11 | MR. WOLF:  And we would suspect, Your Honor, |
| 10:54:53 | 12 | assuming -- |
| 10:54:53 | 13 | THE COURT:  Has she had any hearings on the |
| 10:54:56 | 14 | case? |
| 10:54:56 | 15 | MS. SCHWARTZ:  She has not.  Her predecessor had |
| 10:55:01 | 16 | a hearing. |
| 10:55:02 | 17 | THE COURT:  But she's not spent time on the case |
| 10:55:04 | 18 | that you know of? |
| 10:55:05 | 19 | MS. SCHWARTZ:  Other than -- I think we've had |
| 10:55:07 | 20 | three or four discovery letter briefs.  That's it. |
| 10:55:11 | 21 | THE COURT:  I'm sure she enjoyed that. |
| 10:55:36 | 22 | Not that I don't have enough work, but it just |
| 10:55:39 | 23 | strikes me as so inefficient to have these cases being |
| 10:55:43 | 24 | litigated across the country.  What I'm inclined to suggest |
| 10:55:48 | 25 | and hear counsel is that I call Judge Huff and I say, you |

10:55:54 1    know, I'll take on a trial next January, February on these

10:56:00 2    patents, the DJ action for invalidity and non-infringement.

10:56:05 3    Because you guys are prepared to do that already, so no one

10:56:09 4    is prejudiced.  You're getting ready for trial any way.

10:56:14 5             But I don't -- and then get her reaction.  I

10:56:16 6    mean, she may say, you know, I really want to do this patent

10:56:19 7    case.  I'm well into it.  And then -- I mean, I do not want

10:56:24 8    to interfere.  I mean, that's part of the reason why I was

10:56:27 9    saying you should rethink your preliminary injunction.  I

10:56:29 10   don't like the idea of making orders that effectively tell

10:56:34 11   another judge what to do, right.

10:56:39 12            Now, let me step back.  What about the ITC?

10:56:41 13   What's being litigated in the ITC that's going to be decided

10:56:45 14   in August?

10:56:46 15            MR. WOLF:  That's going to be the -- essentially

10:56:50 16   it's going to be the subset of the patents against *NXP*.

10:56:56 17   And, again, I'll turn to make sure that I don't overstate.

10:56:59 18            One of the two we're not involved in, the other

10:57:02 19   one, *NXP*, both sets of counsel are involved in and that's

10:57:06 20   set for hearing now in August.

10:57:07 21            THE COURT:  And is that going to address

10:57:09 22   everything?  It's going to address everything?

10:57:11 23            MR. NEWCOMER:  I believe it only addresses a

10:57:14 24   subset of the patents, Your Honor.

10:57:14 25            THE COURT:  No, sorry.  But for those patents,

10:57:17 1    does it address everything, validity as well as

10:57:20 2    infringement?

10:57:20 3            MR. NEWCOMER:  Absolutely, Your Honor.  And, you

10:57:23 4    know, in talking to counsel, certainly Bell Semi would --

10:57:28 5    even though it's not binding on District Courts, if there's

10:57:31 6    a finding of invalidity in the ITC after that hearing, Bell

10:57:34 7    will agree to be bound by that to -- you know, because Bell

10:57:37 8    is interested in efficiency here as well.

10:57:39 9            THE COURT:  Yeah.  And I'm not interested -- I'm

10:57:40 10   not going to stop the ITC.

10:57:42 11           MR. NEWCOMER:  Right.

10:57:43 12           THE COURT:  It's too far along.

10:57:43 13           MR. NEWCOMER:  Right.

10:57:44 14           THE COURT:  And just respect for separation of

10:57:46 15   powers and different branches of Government, and I've

10:57:48 16   expressed these similar things in the *Koninklijke* case,

10:57:52 17   which you all cited from the transcript.

10:57:55 18           MR. WOLF:  I would note two things, Your Honor,

10:57:57 19   and if given the opportunity I'd like, you know, five

10:57:59 20   minutes to try to change your mind, recognizing that I

10:58:01 21   likely won't on the ITC issue.

10:58:04 22           But the final decision from the ITC is not -- in

10:58:08 23   either of the investigations would not be until March.

10:58:11 24   Given the way the ITC typically handles things, if Your

10:58:14 25   Honor were to find, say, by 101 motion in -- and I'm just

10:58:19 1    picking a month randomly here -- in October that these

10:58:22 2    patents were invalid under 101 or a jury would have found --

10:58:26 3    find them non-infringed or invalid in January, typically the

10:58:30 4    ITC shows a great interest in what happens in a prior

10:58:37 5    District Court opinion.

10:58:38 6              THE COURT:  Right.  But if I'm going to give you

10:58:40 7    a trial date in January, or February at the latest, of next

10:58:47 8    year, I don't think -- I think we should just -- you should

10:58:53 9    count on that's when you'll get a resolution.  I don't think

10:58:56 10   it's -- I don't intend it in -- under that expedited

10:59:00 11   schedule, I would not be saying, Let's deal with 101 the

10:59:02 12   next month or two.

10:59:03 13             MR. WOLF:  Okay.  I hear you, Your Honor.

10:59:05 14   Either way, though, that would be prior to the March 24th

10:59:08 15   final decision.

10:59:08 16             THE COURT:  The ITC can do what it wants, but I

10:59:12 17   think I'm going to respect the ITC's powers and let it do

10:59:16 18   what it wants.

10:59:22 19             What do you think of this proposal?

10:59:26 20             MR. NEWCOMER:  You know, Your Honor, obviously,

10:59:27 21   we request time to talk to our client about it specifically.

10:59:30 22   It may make sense for the parties to talk about a proposal

10:59:33 23   we can both agree to together.  I certainly think your

10:59:35 24   inclination to not issue an Order that effectively binds

10:59:38 25   another judge is a good one and, obviously, part of our

10:59:41  1    presentation was going to be about that comment.  So, I

10:59:44  2    think that's wise.

10:59:45  3                    THE COURT:  Right.  So, where are you from?

10:59:47  4                    MR. NEWCOMER:  Texas.  Houston.

10:59:49  5                    MR. WOLF:  Washington, D.C.

10:59:50  6                    THE COURT:  Are you in town for the rest of the

10:59:56  7    afternoon?

10:59:57  8                    MR. NEWCOMER:  Yes, Your Honor.

10:59:58  9                    THE COURT:  Mr. Kamprath, where are you from?

11:00:00 10                    MR. KAMPRATH:  Dallas, Your Honor.

11:00:01 11                    THE COURT:  Oh, we have a lot of Texans here.  I

11:00:03 12    just spent the past week in Big Bend National Park.  It's

11:00:07 13    beautiful.  My son was married in Austin last Saturday.

11:00:12 14                    MR. NEWCOMER:  Thank you.

11:00:13 15                    THE COURT:  It's a neat place to be.

11:00:24 16                    Okay.  You sound like you think this would be a

11:00:26 17    good course of action.

11:00:27 18                    MR. WOLF:  Yes, Your Honor.

11:00:47 19                    MR. NEWCOMER:  And, Your Honor, just because you

11:00:49 20    prompted on this afternoon, you know, considering the

11:00:52 21    proposal is new, we may need a couple hours to talk to our

11:00:55 22    clients.

11:00:55 23                    THE COURT:  Oh, no.  I have another hearing this

11:00:58 24    afternoon, so I was going to look at my calendar and try to

11:01:02 25    make a suggestion.

11:01:03  1               Again, are you all getting flights out of here?

11:01:05  2    That's why -- yeah, what time is your flight?

11:01:07  3               MR. NEWCOMER:  6:00 p.m.

11:01:08  4               THE COURT:  Oh, okay.  Yeah, we can do -- well,

11:01:11  5    actually, is that not going to give you enough time?

11:01:14  6               MR. NEWCOMER:  Yeah, that's our concern, getting

11:01:16  7    ahold of our client and saying --

11:01:17  8               THE COURT:  I thought your client was right

11:01:18  9    here.

11:01:19 10               MR. NEWCOMER:  Well, they need to get ahold of

11:01:20 11    their clients, too, Your Honor.

11:01:25 12               We need to consult with other people within

11:01:28 13    the --

11:01:28 14               THE COURT:  Oh.

11:01:30 15               MR. NEWCOMER:  Okay.  I just heard that a few

11:01:31 16    hours is fine, Your Honor.

11:01:33 17               THE COURT:  The Markman is scheduled for

11:02:05 18    June 12th?

11:02:07 19               MR. WOLF:  Yes, Your Honor.

11:02:08 20               MR. MILLER:  Correct, Your Honor.

11:02:09 21               THE COURT:  How long do you think the trial will

11:02:55 22    be?

11:02:56 23               MR. WOLF:  We could do a week?  A week, Your

11:03:00 24    Honor.

11:03:00 25               THE COURT:  How about you guys?  How long do you

11:03:02 1    think a trial will be?  A week; right?

11:03:06 2              MR. KAMPRATH:  Your Honor, that's hard to

11:03:07 3    estimate, but it's on the six patents.  I'd estimate that

11:03:12 4    it's longer than a week.

11:03:13 5              THE COURT:  Well, how much time did Judge Huff

11:03:15 6    give you?

11:03:15 7              MR. KAMPRATH:  For each one of those cases?

11:03:18 8    We'd have to look.  I don't think we have --

11:03:19 9              THE COURT:  Oh, so, wait.  I didn't realize that

11:03:22 10   she's --

11:03:23 11             MR. NEWCOMER:  The cases were consolidated in

11:03:25 12   front of Judge Huff, but -- pretrial consolidation in front

11:03:29 13   of Judge Huff.  The first case is scheduled for trial in

11:03:31 14   February of next year.

11:03:33 15             THE COURT:  And how many days did they give you

11:03:35 16   for that?

11:03:35 17             MR. NEWCOMER:  Let me check that, Your Honor.

11:03:37 18             MS. SCHWARTZ:  She gave us a week on four

11:03:39 19   patents is my recollection, Your Honor.

11:03:42 20             THE COURT:  And we have six.

11:03:43 21             MS. SCHWARTZ:  Two of the patents are not -- are

11:03:45 22   currently stayed before Judge Huff.

11:03:47 23             THE COURT:  Why?

11:03:48 24             MS. SCHWARTZ:  Because of the ITC proceeding on

11:03:52 25   those two -- other two patents.

11:03:57 1                    THE COURT:  How many patents are at issue in the

11:03:58 2      ITC that is going to trial in August?

11:04:01 3                    MS. SCHWARTZ:  There are two different trials

11:04:03 4      going to the ITC.  There's one patent in one of the ITC

11:04:06 5      actions, and there's two patents in the other ITC action.

11:04:09 6                    So, three of the patents are not involved in the

11:04:12 7      ITC at all, and there's different -- different Defendants

11:04:16 8      are -- some are in one ITC action and not the other and vice

11:04:20 9      versa.

11:04:29 10                   THE COURT:  Did you want to say something?

11:04:31 11                   Sorry.  Did you want to say anything?

11:04:32 12                   MR. NEWCOMER:  Oh, no, Your Honor.  Just on the

11:04:34 13     conferencing with opposing counsel to figure out how to

11:04:37 14     handle this.

11:04:37 15                   THE COURT:  Right.  All right.

11:05:42 16                   I'll get you a trial January 16th; 16th, 17th,

11:05:46 17     18th, 19th.  I think we can do it in four days.  If we

11:05:49 18     can't...  But I'll get you a trial.

11:05:51 19                   I'm only going to set you, nobody else.  I won't

11:05:54 20     double book.

11:05:55 21                   MR. WOLF:  Thank you, Your Honor.

11:05:56 22                   THE COURT:  Now, so you go confer.  I'll call

11:05:59 23     Judge Huff.  You want to come back at one o'clock?  Would

11:06:05 24     that give you enough time, you think?

11:06:07 25                   MR. WOLF:  Sure.

11:06:09  1          MR. NEWCOMER:  Yes, Your Honor.

11:06:10  2          MR. WOLF:  Yes, Your Honor.

11:06:10  3          THE COURT:  All right.  And then let me just

11:06:13  4    double-check and make sure I'm okay.  Yes.  One o'clock

11:06:39  5    works.  We have to be out of here at two o'clock because

11:06:42  6    there's preparations being made for tomorrow's investiture

11:06:45  7    in court.

11:06:46  8          All right.  So, how about I see you all at one

11:06:49  9    o'clock.

11:06:49 10          MR. ROSENZWEIG:  Your Honor, it's not clear if

11:06:51 11    you need to see the Government at one o'clock.

11:06:52 12          THE COURT:  No, you can go.

11:06:53 13          MR. ROSENZWEIG:  Is there anything you want to

11:06:55 14    hear about the PI as it pertains to the ITC?

11:06:59 15          THE COURT:  Did you have any thoughts?

11:06:59 16          MR. ROSENZWEIG:  Well --

11:06:59 17          THE COURT:  You can all sit.

11:07:02 18          MR. ROSENZWEIG:  Sure.  I'll keep this very

11:07:08 19    short.  If Your Honor wants to fill in the denial of the PI

11:07:11 20    as against the ITC with an oral ruling late, well --

11:07:14 21          THE COURT:  Well, wait.  There was never a PI

11:07:17 22    against the ITC.

11:07:19 23          MR. ROSENZWEIG:  A PI against -- the parties

11:07:21 24    participating at the ITC.  Bell participating at the ITC.

11:07:23 25          THE COURT:  I'm not going to grant that.

11:07:25 1                    MR. ROSENZWEIG:  If you're not going to grant

11:07:27 2      it, there are three reasons for not granting it.

11:07:29 3                    One is the first to file ruling doesn't apply.

11:07:31 4                    Second is --

11:07:31 5                    THE COURT:  Why are you asking -- why did you

11:07:34 6      have to go through the merits of it?

11:07:36 7                    MR. ROSENZWEIG:  Well, I was just going to

11:07:37 8      recite it if Your Honor wanted to address it in more detail.

11:07:41 9                    THE COURT:  I don't, because they're going to

11:07:42 10     withdraw it.

11:07:43 11                   Right?  Aren't you?  You're going to withdraw

11:07:45 12     your PI?

11:07:45 13                   MR. WOLF:  Your Honor, in light of your comment,

11:07:47 14     it would be foolish not to.

11:07:49 15                   MR. ROSENZWEIG:  Well, that takes care of it.

11:07:50 16     Thank you.

11:07:50 17                   THE COURT:  Thank you.  Okay.  Anything else?

11:07:54 18                   All right.  I'll see you all at 1:00.  Thanks.

11:07:56 19                   DEPUTY CLERK:  All rise.

11:10:27 20                   (Recess was taken.)

01:00:04 21                   DEPUTY CLERK:  All rise.

01:00:09 22                   THE COURT:  All right.  Please be seated.

01:00:12 23                   So, I did not successfully reach Judge Huff.  I

01:00:17 24     left a message with her and with the courtroom deputy.  I

01:00:22 25     Googled her.

01:00:22 1        I guess she's well known for her interest in IP

01:00:25 2   law.  Did you all know that?  Probably, of course, you would

01:00:28 3   know that.  You've researched your judge, I'm sure.

01:00:35 4        So, where are you all?  Let's hear from you

01:00:38 5   folks.

01:00:38 6        MR. WOLF:  We had positive conversations under

01:00:41 7   the -- we have -- if Your Honor decides that the

01:00:46 8   January 16th date is where we're going, which is, of course,

01:00:48 9   our preference, we have no doubt we'll be able to come up

01:00:52 10  with interim dates and an interim proposal.  The one wild

01:00:57 11  card in that scenario which has yet to be resolved is the

01:00:59 12  Markman hearing, how you want to handle --

01:01:01 13       THE COURT:  Well, I've got an idea about that.

01:01:03 14       MR. WOLF:  Yes.

01:01:03 15       THE COURT:  And it may, in fact -- if you want a

01:01:05 16  January 16th date, will you agree to be bound by Judge

01:01:10 17  Huff's rulings in the claim construction hearing on

01:01:13 18  June 12th?

01:01:13 19       MR. WOLF:  Yes, Your Honor.  The one thing I

01:01:15 20  want to note, it doesn't -- it's not a caveat, but what I'm

01:01:18 21  saying is she's only going to be construing four of the six

01:01:21 22  patents that you would.  So, there would still be a need

01:01:23 23  for or at least a potential need for a Markman hearing here,

01:01:26 24  although it would be on a subset of the total potential

01:01:30 25  claims.

01:01:30  1                     THE COURT:  Right.  What do you think?  Do you

01:01:33  2      think that could be bound by her rulings?

01:01:37  3                     MR. NEWCOMER:  There's an interesting dynamic

01:01:40  4      there that I haven't thought about, Your Honor.

01:01:40  5                     THE COURT:  If you want to talk to your counsel

01:01:42  6      for a couple minutes, you know, why don't we do that.

01:01:44  7                     MR. NEWCOMER:  I think --

01:01:44  8                     THE COURT:  I'm trying to be fair to both sides.

01:01:46  9                     MR. NEWCOMER:  I think we would certainly be

01:01:49  10     fine with them being bound by her ruling, and we, obviously,

01:01:51  11     would because they're a party.

01:01:53  12                    THE COURT:  Yeah, you want to be bound.

01:01:54  13     Basically you both -- I mean, it's more important to -- it's

01:01:59  14     their request, so it's more important that they agree.

01:02:01  15                    MR. NEWCOMER:  Right.

01:02:02  16                    THE COURT:  But it seems to me everyone ought to

01:02:09  17     agree.  We ought to do this.  The whole idea behind what I'm

01:02:12  18     doing is to save the court's resources.  We're overburdened.

01:02:17  19                    MR. NEWCOMER:  Absolutely, Your Honor, and I

01:02:18  20     think we are fully on board with agreeing to be bound.  I

01:02:22  21     thought the question was whether they have to be bound by

01:02:24  22     that or not.

01:02:25  23                    THE COURT:  Well, I wouldn't agree to their

01:02:26  24     January date unless they agreed.

01:02:28  25                    MR. WOLF:  Yeah, Your Honor.  As I said, we do.

01:02:30  1   And that's -- whatever the two of you decide, I just want to

01:02:35  2   flag, again, the fact that because it's four of six and

01:02:37  3   there's some interplay, there was an argument that it should

01:02:40  4   be all done -- all six should be done at once, and we defer

01:02:44  5   to you and Judge Huff in that discussion, however you think

01:02:46  6   that's best to be handled.

01:02:49  7            THE COURT:  Right.

01:02:50  8            MR. WOLF:  Best to handle.

01:02:51  9            THE COURT:  Okay.  So, it seems to me what we

01:02:58 10   ought to do is -- I'm going to say we're going to have trial

01:03:02 11   here.  January 16th is the date I gave you?

01:03:04 12            MR. WOLF:  Yes, Your Honor.

01:03:04 13            THE COURT:  Four-day trial.  And it will be on

01:03:07 14   the six asserted patents.  If it goes over, we'll make --

01:03:11 15   we'll do what's necessary to have it go over.  We -- and

01:03:19 16   then you work out a schedule.  I think once I give you a

01:03:23 17   trial, then I think usually counsel have always been able to

01:03:26 18   come up with a schedule.  I'm going to -- I guess, can you

01:03:28 19   do that here?

01:03:28 20            MR. WOLF:  Yes, Your Honor.  We'll be waiting to

01:03:30 21   hear from you about what's happening with Markman because if

01:03:32 22   you're going to end up with the hearing, we will need to

01:03:35 23   know when your hearing date is.

01:03:36 24            THE COURT:  Right.

01:03:36 25            MR. WOLF:  Whatever you tell us, we can work

01:03:38 1    off.

01:03:38 2                    THE COURT:  You should plan right now -- I mean,

01:03:40 3    you've got -- because June 12th is coming fast.

01:03:43 4                    MR. WOLF:  Right.

01:03:43 5                    THE COURT:  You should plan on your having

01:03:45 6    Markman then in front of her.  And let's -- I'll see what

01:03:48 7    she says.  She may say, "I haven't done any work.  I'm not

01:03:51 8    interested.  Please take the Markman."

01:03:52 9                    She may say, "I'm already into it," and she may

01:03:56 10   say -- and, you know, the caveat of this whole thing is if

01:04:01 11   she comes -- if she says to me, "I wish you wouldn't have a

01:04:03 12   trial on January 16th, that affects me in a negative way."

01:04:08 13   If she persuades me that, I'll bring you back in.  I think

01:04:10 14   I'm going to know that very, very soon.

01:04:12 15                   I left a message for her.  I mean, it's early.

01:04:14 16   I think she's going to get back to me pretty promptly is my

01:04:18 17   guess.

01:04:18 18                   MR. WOLF:  Because if that happens, then we're,

01:04:19 19   obviously, going to want our shot to argue for the

01:04:21 20   injunction under the customer exception, but we'll worry

01:04:23 21   about that, jump off that bridge when we get to it.

01:04:26 22                   THE COURT:  Correct.  I think it would be worth

01:04:29 23   your while because I think this is going to be resolved

01:04:31 24   pretty quick.  I would plan on engaging in discussions, and

01:04:34 25   I'm going to say you need to get me a Scheduling Order, a

01:04:37 1  proposed Scheduling Order with the January 16th trial date,

01:04:40 2  let's say, how about a week from Friday?  Does that work?

01:04:44 3          MR. NEWCOMER:  Yeah.  We can, obviously -- it's

01:04:46 4  their request for that time.  We have a couple issues we

01:04:50 5  wanted to just flag for the Court.

01:04:51 6          THE COURT:  Yeah, go ahead.

01:04:52 7          MR. NEWCOMER:  First, you know, within the

01:04:53 8  Scheduling Order -- and we'll work it out with them, but

01:04:56 9  we're going to be proposing an extension of the time to

01:05:00 10 answer on the DJ action here or respond to the claims.

01:05:04 11          In addition, we proposed, you know, in the

01:05:07 12 interest of getting these efficiencies you talked about, you

01:05:11 13 know, with the ITC case going forward, would they be

01:05:14 14 amenable to being bound by the outcome of that case in terms

01:05:18 15 of infringement and validity as that goes forward.

01:05:22 16          THE COURT:  Well, they don't want to be in the

01:05:24 17 ITC, so how would they ever agree to that?

01:05:27 18          MR. NEWCOMER:  Well, I'm just --

01:05:27 19          THE COURT:  But, look, I know what you're

01:05:29 20 saying.

01:05:29 21          MR. NEWCOMER:  It would be an efficiency, and

01:05:31 22 that's all we're suggesting.  And, of course, they wouldn't

01:05:34 23 have to, and we haven't, you know, worked out an agreement

01:05:38 24 to that effect or anything.

01:05:39 25          THE COURT:  Well, if they're willing to go with

01:05:41 1    that, I'm certainly not going to have a problem with that.

01:05:43 2    It would be efficient.  I will tell you this is -- you know,

01:05:48 3    we won't have a ruling.  That's a problem.  We're not going

01:05:51 4    to have an ITC ruling by January; right?

01:05:54 5              MR. NEWCOMER:  Right.  But if we both agree to

01:05:56 6    be bound for those particular patents, then that clearly

01:05:59 7    helps with the number of patents that would have to be tried

01:06:01 8    here for the declaratory judgment claims.  They have got --

01:06:04 9    because they've got in -- they've got the non-infringement

01:06:08 10   and the invalidity.

01:06:14 11             MR. WOLF:  Your Honor, I think it's unlikely we

01:06:16 12   will agree, but we've agreed to talk with them with an open

01:06:18 13   mind.  So, we'll just get back to you if anything does -- I

01:06:21 14   mean, we've been collaborative, and I have no doubt we'll

01:06:25 15   continue to be collaborative, but I think it's unlikely that

01:06:27 16   we're not going to want to avail ourselves of this Court for

01:06:31 17   those purposes, but we'll get back to you and we'll engage

01:06:33 18   with an open mind with opposing counsel.

01:06:35 19             THE COURT:  Okay.  Well, do that because I'm all

01:06:37 20   about efficiency.

01:06:38 21             MR. NEWCOMER:  And to that end, one thing they

01:06:39 22   mentioned to us is about, you know, potential motions to

01:06:44 23   stay.  They might have, in some of the other underlying

01:06:48 24   cases in your Court's decision, you know, to have trial in

01:06:52 25   January.  And one area of efficient -- it just came to our

01:06:55  1    mind.  We haven't had a chance to discuss it -- is if they

01:06:57  2    can work on getting their customers to agree to be bound

01:07:01  3    because that's what this really is about; right?  And, you

01:07:05  4    know, we think that would create a significant amount of

01:07:09  5    efficiency if this goes forward in January.

01:07:11  6              THE COURT:  Okay.  So, the problem is I don't

01:07:13  7    know how to accomplish that.  In other words, I don't think

01:07:17  8    I can force them to do that; right?

01:07:19  9              MR. KAMPRATH:  But --

01:07:20 10              THE COURT:  But I've also got to believe -- and

01:07:21 11    this is why I think it is -- the most efficient thing to do

01:07:25 12    here is if I'm a customer and there was an adverse ruling

01:07:34 13    here against either of the Plaintiffs, I think the customer

01:07:42 14    is probably not going to want to continue very much more in

01:07:45 15    litigation in another District Court.  I mean, I think

01:07:48 16    that's the reality.

01:07:49 17              MR. NEWCOMER:  That may be the reality, Your

01:07:51 18    Honor.  Obviously, the jurisdictional ruling in Houston was

01:07:54 19    because of their defense and indemnity obligations, at least

01:07:57 20    in part.  And, at least for some of the customers, they've

01:08:02 21    accepted defense where they can control, right, that case.

01:08:05 22              So, why can't those customers be bound and

01:08:09 23    when --

01:08:09 24              THE COURT:  Right.  The only thing I don't know

01:08:11 25    is whether there might be -- essentially what you want is

01:08:17  1    that there's something that distinguishes the practice of

01:08:23  2    the methods even though it's using the EDA -- is it ED --

01:08:30  3                    MR. NEWCOMER:  EDA tool.  Yes, Your Honor.  EDA

01:08:32  4    tool.

01:08:33  5                    THE COURT:  On a customer-by-customer basis.

01:08:35  6    You know, but --

01:08:36  7                    MR. NEWCOMER:  Yeah.

01:08:36  8                    THE COURT:  But, you know it's like the Venn

01:08:39  9    diagram, the intersection is in here in this court.

01:08:41 10                    MR. NEWCOMER:  Right.

01:08:42 11                    THE COURT:  It may be that in one of the circles

01:08:44 12    on the edges there's something about a customer that might

01:08:47 13    exempt it from infringement; right?  So, because that's your

01:08:51 14    point and it was --

01:08:52 15                    MR. NEWCOMER:  Right.

01:08:53 16                    THE COURT:  -- recognized by Judge Kronstadt

01:08:54 17    that you're right.  There could be a finding of infringement

01:08:59 18    here that's not going to dispose of an infringement claim

01:09:03 19    elsewhere.

01:09:04 20                    MR. NEWCOMER:  That's --

01:09:05 21                    THE COURT:  But a finding of non-infringement

01:09:07 22    here would dispose of the claims.  And my sense is, Well,

01:09:11 23    that's the way I think he interpreted -- is it he or she?

01:09:14 24                    MR. NEWCOMER:  He.

01:09:15 25                    THE COURT:  Right.

01:09:16 1          MR. NEWCOMER:  I would disagree with that just

01:09:18 2  on one front, which is, you know, my understanding is that,

01:09:20 3  at least in their reply brief, they talked about proving up

01:09:24 4  their claims related to their use on, like, using the EDA

01:09:29 5  tools sort of to test them out as a way that they might, you

01:09:34 6  know -- that infringement by --

01:09:35 7          THE COURT:  Like a direct infringement claim?

01:09:36 8          MR. NEWCOMER:  Yeah, like a direct infringement

01:09:38 9  claim.

01:09:38 10          And so, if they're proving up

01:09:41 11  infringement/non-infringement based on their use, that

01:09:44 12  wouldn't -- in year by the use of the customer in the same

01:09:48 13  way because there may be different uses.

01:09:50 14          THE COURT:  Right.  So -- well, I'll tell you

01:09:52 15  what, so -- and you can -- you just can get the transcript

01:09:55 16  at a later date.

01:09:56 17          If we got to the point in this case where that

01:09:59 18  became a real issue, that they are -- they being the

01:10:04 19  Plaintiffs -- are somehow reading the patents in a way that

01:10:10 20  would make the alleged direct infringement against them to

01:10:18 21  be different than any alleged direct infringement by a

01:10:22 22  customer, well, then, you need to come and talk to me

01:10:25 23  because then I am wasting my time.

01:10:26 24          MR. NEWCOMER:  Right.

01:10:27 25          THE COURT:  Okay.  But I read the allegations in

01:10:30  1    all of your Complaints and the claim terms to suggest

01:10:34  2    otherwise.

01:10:34  3              MR. NEWCOMER:  Yes.

01:10:35  4              THE COURT:  Okay.

01:10:36  5              MR. NEWCOMER:  This is just an issue of ordinary

01:10:38  6    use and that type of thing, Your Honor.  And, obviously, you

01:10:41  7    know, we have separate -- you know, we've just been thinking

01:10:43  8    about this, but we have separate damages allegations against

01:10:45  9    them.  And that's where the real value of the patents lies,

01:10:48 10    is in, you know, the method they apply to -- to design these

01:10:52 11    chips.  So, that's just another issue we're thinking about.

01:10:55 12              THE COURT:  Well, first of all, if you read my

01:10:57 13    form Order, I phase the cases.  I don't get to damages until

01:11:02 14    we have a finding of infringement and no invalidity.  And,

01:11:09 15    you know, if you -- I'm certainly willing to entertain -- I

01:11:13 16    normally do it in front of the same jury.  That's the way I

01:11:16 17    think it should be done.

01:11:17 18              But, again, I'm just trying to gain efficiencies

01:11:21 19    here.  I doubt that I could conceive of trying the damages

01:11:27 20    in a separate trial, but, you know, if you think that would

01:11:32 21    somehow be helpful, you can raise that with me.  I think to

01:11:35 22    me, you're right, damage is going to be different.

01:11:42 23              There's going to be a lot more damages if you

01:11:45 24    were to prevail than you would against any one customer I've

01:11:47 25    got to believe; right?

01:11:49  1          MR. NEWCOMER:  I don't know the answer to that

01:11:50  2     right now.

01:11:53  3          THE COURT:  Okay.  Fair.

01:11:53  4          MR. WOLF:  So, Your Honor, we have a fair amount

01:11:55  5     to talk about in light of Your Honor's guidance, and we look

01:11:59  6     forward to hearing the results of your conversations with

01:12:02  7     Judge Huff.  And we're prepared to proceed and get this done

01:12:05  8     expeditiously and efficiently.

01:12:08  9          THE COURT:  Okay.  Just so it's clear what's

01:12:10 10     left on the agenda, number one is by Friday next week you

01:12:15 11     need to submit a proposed Scheduling Order which has the

01:12:19 12     date.  As soon as I hear from Judge Huff, I'll communicate

01:12:22 13     with the parties.  If need be, we'll have a phone call.

01:12:26 14          MR. WOLF:  Very good.

01:12:27 15          THE COURT:  All right.  Before I forget, second,

01:12:30 16     have you submitted your Corporate 7.1 disclosures to comply

01:12:35 17     with my Orders?

01:12:38 18          MR. WOLF:  I believe so.  Yes.  Yes, Your Honor.

01:12:39 19          THE COURT:  The supplement --

01:12:40 20          MR. WOLF:  I know what you're talking about, and

01:12:42 21     I'm 99.9 percent sure we have.

01:12:44 22          THE COURT:  Okay.  And --

01:12:45 23          MR. WOLF:  And we'll, obviously, confirm today

01:12:47 24     in case we haven't.

01:12:47 25          THE COURT:  And be mindful that I have a

01:12:49  1   third-party litigation funding.

01:12:51  2              MR. WOLF:  100 percent, Your Honor.  Yes.

01:12:52  3              THE COURT:  I have looked at -- because I don't

01:12:56  4   remember seeing yours, but I did see your Disclosure Order.

01:12:58  5   It is not sufficient.  You have to go -- and I think you

01:13:03  6   might have had language in yours that said you're tracking

01:13:06  7   down information.

01:13:08  8              MR. NEWCOMER:  I believe that's correct,

01:13:10  9   Your Honor.

01:13:10 10              THE COURT:  Yeah.  You're presently doing -- and

01:13:12 11   that's fine, but you need to get that done.  This is not an

01:13:15 12   academic exercise.

01:13:17 13              You can have a seat.

01:13:18 14              I had a case within the last six months, and

01:13:21 15   it's similar to your situation, okay, where you've got a

01:13:25 16   Trust, and you still have to identify who are the

01:13:27 17   beneficiaries of the Trust.  I need to know who the people

01:13:30 18   are.

01:13:30 19              And I had a case within the last -- it's either

01:13:34 20   six or eight months where a friend of mine turned out to be

01:13:41 21   one of the beneficiaries of one of the many Trusts that were

01:13:45 22   part of an LLC that was filed here.  It turns out it was a

01:13:50 23   blind Trust.  He didn't know that there was a lawsuit.  He

01:13:54 24   didn't know his Trust was part of the LLC and -- but I

01:14:02 25   discovered it.

01:14:02  1         And I do not want to be, in the future, facing

01:14:06  2   an allegation that I presided over a case where I ruled --

01:14:13  3   you know, where I should have been recused.

01:14:16  4         All right.  So, this is not just an academic

01:14:19  5   exercise.  It has real implications.  And there's

01:14:22  6   certainly -- in this state right now, there's a lot of press

01:14:24  7   about judges hearing cases where parties are before them

01:14:28  8   that they had a relationship with.

01:14:30  9         And I don't want to have to defend that because

01:14:33 10   it's defending a negative.  It's impossible to prove a

01:14:37 11   negative, right.  And so, that's why -- one of the reasons

01:14:42 12   and a significant reason why I do this.  Okay?  So, that's

01:14:48 13   why we have to get to the individuals.

01:14:50 14         Now, fair that, you know, people can say, Well,

01:14:53 15   LLCs, why do we treat them differently than incorporated

01:14:57 16   entities or corporations?  I get that.  But the law does.

01:15:01 17   The Supreme Court does.  All the circuits do.  And all the

01:15:05 18   circuits, to my knowledge, do it when it comes to residency

01:15:09 19   that we go beneath the corporate entity in an LLC to the

01:15:14 20   individuals to determine citizenship.  So, there is a

01:15:17 21   distinction.  And so, that's -- so, please comport with that

01:15:17 22   Order.

01:15:26 23         And you think can you get it done in a week?

01:15:35 24         MR. KAMPRATH:  Probably, Your Honor.  We'll have

01:15:36 25   to confer with our client to make sure that's doable.

01:15:38  1                    THE COURT:  Okay.  All right.

01:15:40  2                    Anything else?

01:15:42  3                    MR. WOLF:  No, Your Honor.  We appreciate your

01:15:43  4    time today.  Thank you.

01:15:45  5                    THE COURT:  Anything else from you?

01:15:47  6                    MR. NEWCOMER:  No, Your Honor.

01:15:47  7                    THE COURT:  Okay.  So, the only thing is the

01:15:49  8    status.  So, the PI has been withdrawn without prejudice to

01:15:53  9    renew.

01:15:54 10                    MR. WOLF:  Thank you, Your Honor.  Yes, Your

01:15:55 11    Honor.

01:15:55 12                    THE COURT:  Or you want me to just -- I'll tell

01:15:57 13    you what, I'll just deny it without prejudice to renew.

01:16:01 14    Okay?  That's the fastest way to do it.

01:16:03 15                    MR. WOLF:  Very good.

01:16:04 16                    THE COURT:  We'll issue an oral Order that will

01:16:06 17    deny it without prejudice to renew for the reasons stated

01:16:09 18    during the hearing today.  We've already issued an oral

01:16:11 19    order for motions to dismiss for the reasons articulated on

01:16:15 20    the record today.

01:16:16 21                    Okay.  That's it?

01:16:19 22                    MR. NEWCOMER:  Thank you, Your Honor.

01:16:20 23                    THE COURT:  Thank you very much.  They were very

01:16:22 24    good arguments today.

01:16:35 25                    THE CLERK:  All rise.

01:16:38  1                    (Court was recessed at 1:16 p.m.)

          2

          3

          4              I hereby certify the foregoing is a true and

          5     accurate transcript from my stenographic notes in the

          6     proceeding.

          7                    /s/ Heather M. Triozzi
                               Certified Merit and Real-Time Reporter
          8                    U.S. District Court

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

**'**

**'22** [1] - 11:10

**/**

**/s** [1] - 99:7

**1**

**1** [1] - 57:20
**100** [1] - 96:2
**101** [8] - 72:2, 72:6, 72:9, 72:16, 72:17, 77:25, 78:2, 78:11
**12** [3] - 58:22, 62:10, 69:24
**12th** [4] - 73:18, 80:18, 85:18, 88:3
**14** [1] - 6:3
**1512** [2] - 21:8, 29:2
**1516** [1] - 21:8
**16** [1] - 11:20
**1659** [1] - 7:4
**16th** [7] - 82:16, 85:8, 85:16, 87:11, 88:12, 89:1
**17** [1] - 62:24
**17-3** [2] - 63:9, 63:14
**17th** [1] - 82:16
**18th** [1] - 82:17
**19th** [1] - 82:17
**1:00** [1] - 84:18
**1:16** [1] - 99:1

**2**

**2** [8] - 37:1, 37:2, 51:24, 52:10, 58:22, 58:23, 62:10, 69:24
**20** [2] - 51:8, 68:11
**20-minute** [1] - 51:5
**2022** [8] - 10:25, 11:4, 11:5, 11:6, 11:7, 11:8, 11:9, 40:2
**2023** [1] - 1:16
**2024** [2] - 45:17, 72:8
**22-1512-CFC** [1] - 1:6
**22-1569-CFC** [1] - 1:10
**22nd** [1] - 73:24
**24** [1] - 11:12
**24th** [1] - 78:14
**26** [1] - 58:8
**27** [1] - 1:16
**271(b** [1] - 38:10
**271(b)** [1] - 38:10
**271(c** [1] - 36:19
**28** [11] - 7:4, 11:22, 11:25, 12:25, 13:7,

13:12, 13:18, 15:17, 62:1, 69:13, 72:10

**3**

**3** [4] - 37:1, 37:2, 52:5, 52:8
**30** [1] - 11:6
**30(b)(1** [1] - 51:10
**31** [1] - 11:8
**32** [1] - 57:21
**35** [1] - 36:19

**4**

**4** [1] - 37:2

**5**

**5** [2] - 37:1, 37:2

**6**

**6** [4] - 37:1, 37:3, 63:15, 63:18
**6:00** [2] - 80:3
**6th** [1] - 45:17

**7**

**7.1** [1] - 95:16
**755** [2] - 22:22, 23:5

**8**

**8** [1] - 63:15
**844** [1] - 1:15
**899** [2] - 22:22, 23:5

**9**

**9** [1] - 28:12
**90** [4] - 25:23, 32:3, 41:10, 50:8
**90-some** [1] - 31:2
**904** [8] - 23:21, 23:24, 64:21, 64:24, 67:15, 67:18, 68:5, 70:15
**905** [1] - 57:9
**91** [2] - 11:18, 12:13
**94** [1] - 11:12
**99.9** [1] - 95:21
**9:00** [1] - 1:17

**A**

**a.m** [1] - 1:17
**able** [4] - 49:13, 54:7, 85:9, 87:17
**absolutely** [4] - 9:16, 62:6, 77:3, 86:19

**abstract** [1] - 26:23
**academic** [2] - 96:12, 97:4
**accept** [2] - 35:6, 53:6
**accepted** [4] - 65:8, 65:24, 66:2, 91:21
**accomplish** [1] - 91:7
**accordance** [1] - 7:4
**accurate** [2] - 12:24, 99:5
**accusation** [1] - 58:1
**accused** [15] - 16:9, 16:12, 16:15, 16:16, 18:20, 31:23, 32:9, 38:14, 38:24, 38:25, 42:9, 45:24, 46:2, 48:3, 57:13
**acknowledge** [1] - 69:21
**act** [2] - 37:24, 38:14
**Act** [1] - 30:14
**Acting** [1] - 5:14
**action** [19] - 21:3, 21:8, 24:4, 24:23, 25:1, 26:21, 27:20, 30:4, 47:12, 47:16, 56:12, 62:22, 63:20, 70:22, 76:2, 79:17, 82:5, 82:8, 89:10
**actions** [11] - 12:25, 15:21, 15:25, 16:18, 21:6, 21:24, 22:3, 24:21, 30:10, 82:5
**active** [7] - 12:8, 12:10, 13:14, 13:15, 15:17, 53:17, 53:19
**acts** [3] - 31:22, 38:15, 39:23
**actual** [5] - 32:8, 40:5, 46:1, 47:1, 66:6
**addition** [1] - 89:11
**additional** [3] - 52:5, 52:22, 54:7
**address** [12] - 18:12, 46:11, 54:7, 55:7, 66:25, 67:1, 69:21, 70:7, 76:21, 76:22, 77:1, 84:8
**addressed** [3] - 19:25, 43:19, 72:17
**addresses** [1] - 76:23
**addressing** [2] - 48:17, 60:15
**adduced** [1] - 69:9
**adjudicate** [1] - 32:7
**adjudicates** [1] - 7:2
**administration** [2] - 30:17, 30:21
**administrative** [1] - 10:5

**admit** [2] - 60:10, 65:25
**admits** [1] - 37:19
**admitted** [6] - 22:4, 65:7, 65:11, 65:23, 66:14, 68:3
**admittedly** [1] - 70:10
**advance** [1] - 74:2
**advanced** [2] - 13:18, 31:8
**advantages** [1] - 47:14
**adverse** [2] - 54:18, 91:12
**advocate** [1] - 60:13
**affairs** [1] - 35:14
**affects** [1] - 88:12
**affidavit** [2] - 62:21, 63:18
**affidavits** [3] - 34:4, 34:6, 61:25
**afternoon** [3] - 79:7, 79:20, 79:24
**agenda** [1] - 95:10
**ago** [3] - 5:23, 10:25, 15:1
**agree** [22] - 25:17, 25:21, 26:3, 28:3, 28:4, 29:6, 30:7, 30:25, 33:15, 47:23, 61:10, 67:2, 77:7, 78:23, 85:16, 86:14, 86:17, 86:23, 89:17, 90:5, 90:12, 91:2
**agreed** [5] - 45:24, 51:25, 53:6, 86:24, 90:12
**agreeing** [1] - 86:20
**agreement** [2] - 53:24, 89:23
**agreements** [5] - 28:17, 28:19, 28:20, 29:13, 56:3
**ahead** [6] - 43:7, 51:13, 64:11, 66:11, 74:8, 89:6
**ahold** [2] - 80:7, 80:10
**aisle** [1] - 68:17
**alert** [1] - 74:2
**allegation** [13] - 15:24, 16:5, 16:8, 16:15, 16:16, 22:17, 27:1, 27:4, 35:10, 42:11, 55:9, 57:19, 97:2
**allegations** [23] - 22:19, 25:12, 26:15, 26:19, 27:5, 33:16, 35:6, 35:7, 36:2, 38:5, 40:12, 42:2, 42:13, 42:15, 54:21,

56:17, 57:23, 59:2, 59:15, 69:17, 70:19, 93:25, 94:8
**allege** [4] - 21:15, 22:3, 22:10, 24:21
**alleged** [12] - 21:22, 21:23, 22:2, 22:10, 25:15, 26:1, 28:7, 28:10, 42:8, 61:8, 93:20, 93:21
**alleges** [3] - 15:25, 25:23, 59:13
**allergies** [1] - 22:16
**allow** [1] - 47:11
**allows** [1] - 37:6
**almost** [2] - 44:24, 47:21
**alone** [2] - 60:6, 67:7
**ambiguity** [1] - 29:19
**amenable** [2] - 71:24, 89:14
**America** [1] - 47:6
**amount** [2] - 91:4, 95:4
**ample** [2] - 30:22, 56:6
**analog** [1] - 37:12
**analysis** [3] - 20:21, 35:1, 35:11
**analyze** [2] - 26:18, 72:16
**Andrews** [1] - 61:3
**answer** [5] - 26:12, 47:8, 57:14, 89:10, 95:1
**answers** [1] - 26:11
**anyway** [1] - 41:7
**apart** [1] - 21:7
**apologies** [1] - 50:12
**appear** [1] - 60:20
**APPEARANCES** [2] - 1:20, 2:1
**appellees** [3] - 24:3, 64:25, 65:1
**appellees'** [1] - 67:5
**applicable** [1] - 69:2
**Applied** [1] - 19:18
**apply** [3] - 18:10, 84:3, 94:10
**appreciate** [1] - 98:3
**appreciative** [1] - 71:25
**apprehend** [1] - 69:14
**apprehension** [11] - 22:13, 24:12, 25:15, 26:1, 28:4, 32:25, 33:24, 38:4, 38:9, 39:10, 40:5, 40:22, 54:19, 56:24, 66:16, 69:6
**appropriate** [1] -

30:23
**April** [5] - 1:16, 10:25, 13:20, 40:1, 40:18
**area** [1] - 90:25
**argue** [4] - 24:3, 64:25, 72:6, 88:19
**argued** [1] - 72:15
**arguing** [1] - 65:2
**Argument** [1] - 1:17
**argument** [5] - 25:11, 32:19, 34:8, 46:21, 87:3
**arguments** [2] - 43:15, 98:24
**arise** [1] - 71:14
**ARNOLD** [1] - 2:2
**Arnold** [4] - 3:16, 3:22, 4:4, 52:1
**Arris** [1] - 57:1, 70:8
**Article** [4] - 26:6, 69:4, 70:9, 71:13
**article** [1] - 36:22
**articulated** [3] - 24:19, 24:20, 98:19
**articulating** [1] - 43:2
**asserted** [7] - 25:5, 31:18, 38:25, 60:8, 72:22, 73:3, 87:14
**assertion** [2] - 57:2, 57:6
**asserts** [1] - 73:9
**Assistant** [1] - 5:14
**assisting** [1] - 54:2
**assuming** [2] - 49:17, 75:12
**attached** [4] - 17:3, 38:21, 39:21, 61:12
**attack** [6] - 18:22, 19:12, 20:14, 33:4, 34:14, 34:16
**ATTORNEY'S** [1] - 2:19
**August** [5] - 10:5, 11:6, 76:14, 76:20, 82:2
**Austin** [1] - 79:13
**authority** [7] - 8:7, 8:12, 8:23, 9:1, 9:2, 9:8, 9:9
**avail** [1] - 90:16

**B**

**background** [1] - 58:11
**backwards** [1] - 45:3
**Barrington** [1] - 51:18
**BARRINGTON** [1] - 2:7
**based** [29] - 16:6,

16:16, 17:19, 19:7, 22:4, 22:10, 24:12, 25:24, 26:12, 27:9, 27:12, 34:4, 35:11, 35:13, 35:17, 57:8, 57:13, 59:14, 60:5, 60:10, 60:25, 61:7, 66:6, 69:15, 69:16, 69:23, 74:22, 93:11
**bases** [1] - 24:8
**Bashant** [2] - 49:24, 50:14
**basing** [1] - 39:15
**basis** [19] - 16:1, 16:7, 22:18, 24:8, 28:13, 36:14, 37:21, 39:1, 41:20, 41:22, 59:4, 59:20, 65:16, 66:6, 67:19, 70:6, 70:7, 71:11, 92:5
**bear** [2] - 32:25, 33:1
**beautiful** [1] - 79:13
**became** [1] - 93:18
**beef** [2] - 28:25, 29:3
**BEFORE** [1] - 1:19
**beginning** [1] - 70:15
**behalf** [5] - 4:16, 5:3, 5:12, 52:18, 52:20
**behind** [2] - 10:10, 86:17
**behind-the-scenes** [1] - 10:10
**believes** [1] - 17:5
**BELL** [2] - 1:7, 1:12
**Bell** [33] - 4:16, 5:6, 6:11, 7:12, 8:1, 8:18, 8:24, 10:8, 10:18, 10:25, 11:21, 14:6, 17:5, 37:19, 39:23, 40:20, 42:20, 51:4, 54:16, 54:25, 57:23, 59:13, 60:8, 61:12, 66:13, 66:14, 72:14, 74:25, 77:4, 77:6, 77:7, 83:24
**Bell's** [1] - 50:16
**bells** [1] - 72:4
**Bend** [1] - 79:12
**beneath** [1] - 97:19
**beneficiaries** [2] - 96:17, 96:21
**best** [4] - 10:11, 64:20, 87:6, 87:8
**better** [2] - 34:8, 43:13
**between** [9] - 12:6, 13:10, 21:2, 27:23, 41:2, 47:4, 54:16, 54:18, 54:25
**beyond** [1] - 24:19
**big** [2] - 20:17, 67:11

**Big** [1] - 79:12
**bigger** [2] - 29:15, 31:13
**biggest** [1] - 66:9
**binding** [2] - 8:23, 77:5
**binds** [1] - 78:24
**bit** [2] - 10:9, 74:8
**bleeds** [1] - 46:20
**blind** [1] - 96:23
**board** [2] - 73:6, 86:20
**Boggs** [1] - 1:14
**boil** [1] - 57:11
**book** [1] - 82:20
**bottom** [3] - 15:16, 57:4, 67:18
**bound** [12] - 45:24, 77:7, 85:16, 86:2, 86:10, 86:12, 86:20, 86:21, 89:14, 90:6, 91:7, 91:22
**Boyce** [1] - 4:7
**branches** [1] - 77:15
**break** [2] - 21:7, 68:11
**Brian** [1] - 4:16
**BRIAN** [1] - 2:12
**bridge** [1] - 88:21
**brief** [6] - 5:20, 6:17, 43:20, 59:25, 93:3
**briefing** [7] - 10:3, 12:3, 13:24, 28:4, 44:22, 55:25, 56:5
**briefly** [2] - 48:20, 64:16
**briefs** [1] - 75:20
**bring** [5] - 17:25, 24:4, 35:4, 66:15, 88:13
**bringing** [2] - 21:19, 26:21
**broaden** [1] - 65:1
**brought** [7] - 40:15, 42:21, 50:18, 56:12, 57:9, 65:20, 69:6
**bunch** [2] - 37:11, 37:13
**burden** [2] - 19:18, 47:24
**burdens** [1] - 47:19
**BY** [17] - 1:21, 1:22, 2:3, 2:3, 2:4, 2:6, 2:7, 2:9, 2:10, 2:12, 2:15, 2:15, 2:16, 2:16, 2:17, 2:19, 2:22

**C**

**C.A** [2] - 1:6, 1:10
**Cadence** [25] - 3:17, 3:23, 4:4, 4:7, 11:3,

16:7, 16:8, 17:9, 28:12, 36:25, 37:1, 37:3, 40:20, 46:3, 49:3, 51:16, 51:25, 52:2, 52:6, 52:14, 59:7, 59:18, 60:9, 62:6, 62:13
**CADENCE** [1] - 1:4
**Cadence's** [2] - 48:23, 58:16
**calculus** [1] - 42:23
**Caleb** [1] - 1:14
**calendar** [2] - 68:18, 79:24
**California** [3] - 13:24, 14:3, 14:20
**campaign** [6] - 11:1, 11:11, 11:19, 21:16, 25:22, 41:12
**can't..** [1] - 82:18
**candid** [1] - 47:8
**candor** [1] - 72:16
**cannot** [7] - 8:14, 8:18, 8:21, 9:5, 22:18, 36:22, 37:20
**card** [1] - 85:11
**care** [2] - 41:16, 84:15
**careful** [2] - 12:23, 50:4
**carried** [2] - 58:18, 58:19
**cart** [1] - 66:13
**case** [131] - 5:22, 6:7, 6:10, 7:11, 8:1, 8:14, 9:7, 9:15, 11:2, 11:3, 11:5, 11:10, 13:21, 13:24, 14:3, 14:5, 14:8, 14:12, 16:3, 17:18, 17:20, 18:8, 19:18, 19:22, 19:24, 20:2, 20:7, 20:13, 22:18, 22:19, 22:22, 23:17, 25:2, 25:3, 25:4, 25:5, 26:8, 27:6, 27:10, 27:24, 28:6, 29:16, 29:23, 30:3, 30:13, 31:10, 31:12, 31:24, 32:5, 32:7, 33:2, 33:23, 34:9, 34:19, 35:3, 36:11, 36:19, 39:4, 39:20, 40:3, 40:15, 40:18, 41:11, 43:22, 44:17, 45:13, 45:17, 45:25, 48:2, 48:3, 48:11, 48:21, 48:22, 48:24, 49:21, 49:23, 49:24, 50:18, 51:7, 53:11, 54:12, 55:17, 56:16, 57:3, 57:9,

57:11, 57:14, 58:12, 60:7, 60:17, 60:24, 61:23, 62:1, 62:6, 63:4, 63:5, 64:18, 64:20, 65:17, 65:22, 66:5, 66:7, 66:14, 67:22, 69:2, 69:12, 71:9, 71:15, 72:25, 73:3, 73:8, 73:11, 73:12, 74:3, 74:5, 74:14, 74:22, 75:14, 75:17, 76:7, 77:16, 81:13, 89:13, 89:14, 91:21, 93:17, 95:24, 96:14, 96:19, 97:2
**cases** [106] - 6:2, 6:4, 6:15, 8:5, 9:24, 11:2, 11:4, 11:6, 11:7, 11:8, 11:9, 11:18, 11:22, 11:24, 12:4, 12:5, 12:8, 12:11, 12:21, 13:7, 13:8, 13:9, 13:12, 13:18, 13:20, 13:22, 14:13, 14:17, 14:20, 15:4, 15:12, 15:17, 16:6, 16:11, 16:21, 17:2, 17:19, 18:10, 18:16, 18:20, 20:15, 22:7, 30:5, 31:2, 31:11, 31:12, 31:14, 31:19, 31:21, 31:25, 32:3, 32:10, 33:25, 39:6, 39:25, 40:1, 40:3, 40:6, 40:7, 40:9, 41:10, 42:19, 44:12, 44:21, 45:23, 46:19, 47:22, 50:18, 51:6, 51:18, 51:20, 52:1, 52:6, 52:7, 52:11, 52:12, 52:15, 53:17, 53:20, 62:1, 67:21, 68:2, 69:5, 69:12, 69:13, 69:18, 69:19, 71:4, 71:10, 72:10, 73:10, 74:9, 74:25, 75:23, 81:7, 81:11, 90:24, 94:13, 97:7
**causes** [3] - 21:2, 26:20, 27:20
**caution** [1] - 9:1
**caveat** [2] - 85:20, 88:10
**certain** [1] - 51:25
**certainly** [6] - 50:19, 51:7, 77:4, 78:23, 86:9, 90:1, 94:15, 97:6
**Certified** [1] - 99:7
**certify** [1] - 99:4

**challenge** [2] - 8:13, 9:9
**chance** [1] - 91:1
**change** [2] - 42:22, 77:20
**changed** [1] - 35:5
**changes** [1] - 34:25
**chart** [7] - 17:3, 42:6, 58:9, 58:17, 58:24, 74:7
**charts** [20] - 17:3, 17:7, 27:8, 27:17, 36:12, 38:18, 38:21, 39:3, 39:4, 39:5, 39:6, 39:13, 39:21, 41:24, 42:5, 56:15, 59:4, 60:5, 61:11, 69:16
**check** [2] - 81:17, 83:4
**chips** [7] - 37:8, 37:11, 37:12, 37:13, 94:11
**choosing** [1] - 47:20
**chose** [1] - 40:9
**Cimino** [3] - 4:1, 53:1, 53:5
**CIMINO** [16] - 2:9, 4:2, 53:4, 53:16, 53:19, 53:23, 54:1, 62:23, 63:2, 63:5, 63:9, 63:11, 63:13, 63:15, 63:21, 63:24
**circles** [1] - 92:11
**circling** [1] - 51:14
**circuit** [2] - 37:6, 37:7
**Circuit** [13] - 5:23, 7:14, 18:19, 19:22, 19:23, 20:1, 20:3, 20:6, 20:7, 20:9, 65:17
**circuits** [3] - 46:2, 97:17, 97:18
**circumstances** [1] - 60:11
**citation** [2] - 28:12, 29:16
**citations** [2] - 39:6, 58:24
**cite** [5] - 23:1, 27:15, 38:22, 57:24, 59:15
**cited** [5] - 6:16, 27:15, 30:13, 38:19, 77:17
**cites** [1] - 59:16
**citing** [1] - 19:21
**citizenship** [1] - 97:20
**claim** [33] - 16:2, 17:4, 17:6, 20:20, 27:8, 41:22, 41:23, 42:5, 42:6, 42:12, 44:22, 44:23, 56:14, 56:15, 56:19, 56:25, 57:8,

58:9, 58:17, 58:23, 58:24, 59:4, 60:5, 60:8, 61:11, 69:16, 85:17, 92:18, 93:7, 93:9, 94:1
**claim-by-claim** [1] - 20:20
**claims** [16] - 22:4, 31:18, 36:15, 40:14, 42:13, 42:21, 56:22, 66:15, 69:6, 69:20, 85:25, 89:10, 90:8, 92:22, 93:4
**clarification** [2] - 9:18, 16:25
**clarity** [1] - 64:2
**cleanly** [1] - 59:11
**clear** [4] - 45:12, 69:5, 83:10, 95:9
**clearly** [2] - 70:14, 90:6
**CLERK** [6] - 3:3, 68:21, 68:23, 84:19, 84:21, 98:25
**client** [16] - 5:3, 41:19, 42:18, 47:11, 47:24, 78:21, 80:7, 80:8, 97:25
**clients** [2] - 79:22, 80:11
**closed** [1] - 12:21
**closer** [1] - 40:7
**closes** [1] - 9:24
**co** [1] - 48:17
**co-counsel** [1] - 48:17
**collaborative** [2] - 90:14, 90:15
**colleague** [3] - 33:5, 65:18, 73:16
**collecting** [1] - 47:1
**COLM** [1] - 3:5
**Colm** [1] - 3:5
**colors** [1] - 46:20
**comfortable** [1] - 23:17
**coming** [2] - 61:9, 88:3
**comity** [1] - 75:1
**comment** [2] - 79:1, 84:13
**commerce** [1] - 36:22
**COMMISSION** [1] - 2:21
**Commission** [25] - 2:23, 5:13, 5:22, 5:25, 6:1, 6:3, 6:11, 6:24, 7:1, 7:5, 7:10, 7:13, 7:15, 7:16, 7:17, 7:19, 7:21, 7:25, 8:5, 8:12, 8:15,

8:16, 8:22, 9:21
**Commission's** [4] - 5:14, 6:22, 7:6, 7:8
**committed** [1] - 72:4
**commodity** [1] - 36:22
**communicate** [1] - 95:12
**company** [1] - 53:9
**compelling** [2] - 29:7, 30:9
**complain** [1] - 7:23
**Complaint** [32] - 17:3, 18:18, 19:5, 19:7, 19:8, 19:12, 19:14, 20:12, 20:18, 20:19, 20:23, 21:1, 26:16, 26:19, 28:8, 28:13, 29:21, 29:22, 33:7, 33:16, 34:20, 34:21, 35:2, 35:9, 35:13, 36:24, 37:1, 39:20, 54:16, 54:18, 54:22, 66:15
**Complaints** [17] - 15:24, 17:2, 20:15, 21:4, 21:15, 22:2, 24:21, 26:16, 27:5, 37:15, 39:22, 42:2, 42:8, 42:9, 61:13, 69:17, 94:1
**complaints** [1] - 56:14
**complete** [2] - 47:8, 70:12
**completely** [2] - 9:25, 30:25
**complicated** [4] - 30:16, 34:19, 35:1, 37:7
**comply** [1] - 95:16
**comport** [1] - 97:21
**comprehensive** [1] - 30:19
**compromise** [2] - 8:17, 8:19
**Conaway** [2] - 3:11, 3:12
**CONAWAY** [1] - 1:21
**concede** [3] - 59:22, 67:7, 70:4
**conceded** [1] - 67:8
**conceivably** [1] - 8:11
**conceive** [1] - 94:19
**concern** [1] - 80:6
**concerns** [2] - 7:9, 7:13
**conclude** [1] - 6:25
**concluded** [1] - 9:25
**conclusion** [1] - 69:23
**conducted** [1] - 10:4
**confer** [2] - 82:22,

97:25
**conferencing** [1] - 82:13
**confirm** [5] - 62:5, 62:12, 62:15, 63:16, 95:23
**confirming** [1] - 62:13
**confirms** [1] - 57:1
**confusing** [1] - 62:11
**conglomerate** [1] - 11:16
**Congress** [2] - 6:23, 7:1
**connection** [3] - 50:17, 55:24, 63:25
**CONNOLLY** [1] - 1:19
**Connolly** [1] - 3:5
**conservation** [1] - 30:18
**considerations** [1] - 75:1
**considering** [2] - 53:10, 79:20
**Considering** [2] - 39:5, 39:7
**consistent** [1] - 61:5
**consolidated** [1] - 81:11
**consolidation** [1] - 81:12
**constitute** [1] - 38:16
**construction** [3] - 44:22, 44:23, 85:17
**construed** [1] - 72:15
**construing** [1] - 85:21
**consult** [1] - 80:12
**contain** [1] - 29:13
**contemplated** [1] - 6:23
**contemporaneous** [1] - 72:18
**contend** [1] - 7:24
**contest** [2] - 64:4, 64:5
**context** [8] - 10:23, 39:25, 41:9, 48:19, 49:10, 54:7, 54:11, 60:19
**continue** [4] - 20:13, 35:3, 90:15, 91:14
**CONTINUED** [1] - 2:1
**contractual** [1] - 5:24
**contradicted** [1] - 41:1
**contributory** [13] - 24:14, 26:22, 27:2, 27:21, 36:1, 36:16, 36:18, 36:20, 36:21, 37:21, 59:22, 59:23, 60:1

**control** [1] - 91:21
**controversy** [8] - 17:14, 28:6, 33:2, 33:23, 54:16, 54:25, 56:7, 60:4
**convenience** [1] - 72:7
**conversations** [2] - 85:6, 95:6
**Convertible** [2] - 6:1, 8:10
**coordinate** [1] - 30:17
**coordinating** [1] - 75:5
**copies** [3] - 10:22, 23:6, 23:9
**copy** [7] - 17:24, 22:23, 22:24, 23:8, 23:13, 23:14, 63:2
**Corp** [1] - 23:3
**Corporate** [1] - 95:16
**corporate** [1] - 97:19
**corporations** [1] - 97:16
**correct** [34] - 7:19, 14:21, 15:22, 16:13, 20:5, 20:8, 21:25, 22:7, 22:8, 26:7, 26:17, 32:16, 32:20, 32:22, 34:2, 35:16, 38:6, 39:12, 39:18, 40:19, 40:24, 41:5, 42:3, 45:15, 47:13, 47:22, 53:1, 55:18, 62:14, 72:22, 74:15, 80:20, 88:22, 96:8
**corrected** [1] - 29:9
**correctly** [1] - 16:5
**correspondence** [1] - 63:25
**cost** [2] - 33:25, 62:2
**costs** [2] - 53:22, 69:10
**Counsel** [1] - 5:15
**counsel** [21] - 3:19, 30:19, 48:17, 48:22, 48:23, 49:6, 51:15, 51:20, 52:5, 52:6, 53:2, 54:2, 62:19, 66:23, 75:25, 76:19, 77:4, 82:13, 86:5, 87:17, 90:18
**count** [3] - 16:1, 58:4, 78:9
**country** [3] - 43:22, 47:21, 75:24
**couple** [6] - 28:14, 44:10, 49:20, 79:21, 86:6, 89:4
**course** [13] - 30:4,

34:25, 43:12, 43:17, 47:17, 67:13, 71:9, 74:2, 75:9, 79:17, 85:2, 85:8, 89:22

**COURT** [325] - 1:1, 3:6, 3:10, 4:9, 4:12, 4:15, 5:6, 5:16, 5:19, 6:7, 6:20, 7:18, 8:6, 8:21, 9:4, 9:14, 9:17, 9:22, 10:6, 10:13, 10:19, 11:23, 12:2, 12:8, 12:12, 12:16, 12:23, 13:3, 13:5, 13:12, 13:15, 13:17, 14:2, 14:5, 14:7, 14:12, 14:15, 14:19, 14:24, 15:3, 15:7, 15:11, 15:15, 15:19, 15:23, 16:11, 16:14, 16:20, 16:23, 17:10, 17:13, 17:21, 18:1, 18:14, 18:21, 19:1, 19:3, 19:16, 19:21, 20:2, 20:6, 20:10, 21:4, 21:11, 21:14, 21:19, 21:21, 22:2, 22:9, 22:20, 22:23, 22:25, 23:4, 23:8, 23:11, 23:14, 23:16, 23:20, 23:23, 24:1, 24:10, 24:17, 25:8, 25:10, 25:20, 26:13, 26:15, 27:4, 27:22, 28:1, 28:9, 28:21, 28:25, 29:4, 29:9, 29:11, 29:23, 30:1, 30:7, 31:1, 32:11, 32:17, 32:21, 32:23, 33:15, 33:22, 34:3, 34:6, 34:15, 35:11, 35:20, 36:4, 38:1, 38:3, 38:7, 39:11, 39:15, 40:11, 40:23, 40:25, 41:6, 41:13, 41:16, 42:1, 42:4, 42:7, 42:22, 43:1, 43:5, 43:7, 43:10, 43:13, 43:18, 44:16, 44:19, 45:6, 46:9, 46:14, 46:22, 47:6, 47:10, 47:14, 47:19, 48:12, 48:14, 49:1, 49:5, 49:7, 49:11, 49:16, 50:1, 50:4, 50:13, 51:8, 51:12, 51:22, 52:9, 52:13, 52:18, 52:23, 53:3, 53:13, 53:18, 53:21, 53:25, 54:5, 54:10, 55:5, 55:10, 55:13, 55:19, 55:22, 56:1,

58:5, 58:12, 58:14, 59:21, 59:24, 60:2, 60:12, 60:18, 61:3, 61:15, 61:19, 61:21, 62:7, 62:9, 62:15, 62:18, 62:25, 63:3, 63:6, 63:10, 63:12, 63:14, 63:16, 63:22, 64:2, 64:7, 64:10, 64:14, 64:19, 65:10, 65:13, 66:8, 66:11, 66:19, 66:24, 67:8, 67:11, 67:16, 68:6, 68:9, 68:15, 68:24, 71:6, 71:22, 72:9, 72:21, 72:24, 73:2, 73:6, 73:11, 73:14, 73:19, 73:21, 73:25, 74:5, 74:13, 74:16, 74:19, 74:23, 75:2, 75:5, 75:8, 75:10, 75:13, 75:17, 75:21, 76:21, 76:25, 77:9, 77:12, 77:14, 78:6, 78:16, 79:3, 79:6, 79:9, 79:11, 79:15, 79:23, 80:4, 80:8, 80:14, 80:17, 80:21, 80:25, 81:5, 81:9, 81:15, 81:20, 81:23, 82:1, 82:10, 82:15, 82:22, 83:3, 83:12, 83:15, 83:17, 83:21, 83:25, 84:5, 84:9, 84:17, 84:22, 85:13, 85:15, 86:1, 86:5, 86:8, 86:12, 86:16, 86:23, 87:7, 87:9, 87:13, 87:24, 88:2, 88:5, 88:22, 89:6, 89:16, 89:19, 89:25, 90:19, 91:6, 91:10, 91:24, 92:5, 92:8, 92:11, 92:16, 92:21, 92:25, 93:7, 93:14, 93:25, 94:4, 94:12, 95:3, 95:9, 95:15, 95:19, 95:22, 95:25, 96:3, 96:10, 98:1, 98:5, 98:7, 98:12, 98:16, 98:23

**Court** [59] - 3:4, 7:3, 7:9, 7:12, 7:13, 7:25, 8:1, 8:3, 8:7, 8:11, 8:14, 8:18, 8:24, 9:1, 9:3, 9:5, 11:2, 11:5, 11:7, 11:18, 11:22, 11:25, 12:11, 12:25, 13:11, 14:14, 14:15, 14:19, 15:17, 16:6, 17:19, 18:15, 22:18,

25:6, 25:14, 26:18, 27:12, 27:16, 30:9, 30:11, 30:12, 30:13, 40:11, 46:11, 47:20, 48:18, 52:3, 54:14, 56:21, 66:14, 70:12, 70:21, 78:5, 89:5, 90:16, 91:15, 97:17, 99:1, 99:8

**court** [8] - 41:14, 42:19, 44:1, 60:19, 68:10, 70:2, 83:7, 92:9

**Court's** [6] - 8:10, 8:17, 8:20, 9:9, 50:19, 90:24

**court's** [1] - 86:18

**Courthouse** [1] - 1:14

**courtroom** [1] - 84:24

**Courts** [3] - 7:16, 50:9, 77:5

**courts** [3] - 30:17, 30:24, 43:25

**coverage** [1] - 33:20

**covered** [3] - 4:10, 24:24, 25:25

**create** [9] - 17:14, 26:1, 26:6, 28:5, 33:23, 43:21, 44:1, 67:7, 91:4

**created** [1] - 30:16

**creating** [1] - 67:24

**current** [1] - 35:14, 74:22

**customer** [24] - 18:9, 24:22, 26:5, 45:10, 49:23, 50:15, 56:14, 57:3, 58:9, 59:2, 59:14, 61:13, 65:2, 65:4, 88:20, 91:12, 91:13, 92:5, 92:12, 93:12, 93:22, 94:24

**customer's** [1] - 22:5

**customer-by-customer** [1] - 92:5

**customer-suit** [4] - 18:9, 49:23, 50:15

**customers** [27] - 21:24, 24:5, 24:25, 25:23, 27:9, 28:16, 28:18, 28:24, 34:25, 51:21, 51:25, 53:7, 53:12, 53:17, 53:18, 53:19, 54:2, 55:1, 56:4, 57:12, 57:23, 58:2, 70:19, 91:2, 91:20, 91:22

**customers'** [1] - 67:6

**cut** [2] - 58:16, 70:5

**cut-and-paste** [1] -

58:16

# D

**D.C** [1] - 79:5

**Dallas** [1] - 79:10

**damage** [1] - 94:22

**damages** [4] - 94:8, 94:13, 94:19, 94:23

**DataTern** [43] - 22:21, 22:22, 22:25, 24:7, 25:3, 25:4, 26:8, 27:6, 27:19, 27:23, 28:3, 36:7, 36:8, 36:10, 36:18, 37:25, 38:12, 38:18, 39:3, 39:17, 55:5, 55:7, 56:8, 56:9, 56:20, 57:3, 57:9, 57:11, 60:14, 60:15, 60:25, 64:17, 64:23, 65:16, 67:4, 67:14, 67:17, 68:4, 70:10, 70:11

**dataTern** [1] - 23:3

**date** [13] - 10:6, 44:16, 45:17, 74:11, 78:7, 85:8, 85:16, 86:24, 87:11, 87:23, 89:1, 93:16, 95:12

**dates** [2] - 10:11, 85:10

**days** [3] - 15:1, 81:15, 82:17

**deal** [1] - 78:11

**December** [1] - 11:10

**decide** [3] - 44:7, 53:11, 87:1

**decided** [6] - 18:7, 31:11, 45:4, 48:10, 76:13

**decides** [1] - 85:7

**deciding** [1] - 25:4

**decision** [11] - 8:10, 9:11, 9:14, 18:4, 41:3, 49:25, 50:14, 54:14, 77:22, 78:15, 90:24

**decisions** [1] - 9:11

**declarants** [2] - 65:20, 66:1

**declaration** [3] - 62:23, 63:19, 70:5

**declarations** [4] - 51:17, 51:19, 57:21, 61:12

**declaratory** [4] - 24:4, 56:12, 69:3, 90:8

**Declaratory** [1] - 30:14

**decline** [1] - 67:5

**deep** [1] - 72:2

**defend** [7] - 30:5, 32:17, 32:24, 51:25, 53:6, 67:21, 97:9

**Defendant** [9] - 1:8, 2:18, 11:16, 22:5, 60:7, 63:20, 69:13, 69:16, 70:2

**defendant** [1] - 1:13

**defendants** [1] - 45:10

**Defendants** [15] - 16:3, 21:21, 21:23, 22:6, 24:22, 32:4, 34:10, 51:19, 55:16, 63:17, 63:23, 69:11, 69:20, 82:7

**defended** [1] - 68:2

**defenders** [1] - 32:9

**defending** [2] - 68:4, 97:10

**defense** [26] - 20:25, 29:13, 29:16, 29:20, 29:24, 30:3, 32:14, 33:13, 33:20, 34:11, 48:24, 49:2, 49:5, 52:12, 52:24, 53:22, 55:15, 62:2, 62:21, 64:23, 65:15, 67:1, 67:18, 69:10, 91:19, 91:21

**defenses** [3] - 52:14, 52:15, 54:3

**defer** [2] - 33:5, 87:4

**definitely** [1] - 57:24

**definitively** [1] - 44:7

**degree** [1] - 30:22

**DELAWARE** [1] - 1:2

**Delaware** [2] - 1:15, 3:4

**demand** [1] - 62:2

**DEMAND** [1] - 1:7

**demands** [6] - 53:15, 53:16, 53:21, 55:14, 55:15, 64:1

**demonstrate** [1] - 57:24

**denial** [2] - 35:5, 83:19

**denied** [4] - 17:21, 17:22, 49:23, 72:13

**deny** [6] - 50:20, 69:1, 71:1, 71:3, 98:13, 98:17

**denying** [2] - 50:15, 71:14

**depose** [1] - 51:8

**deposed** [1] - 65:22

**depositions** [4] - 33:9, 51:4, 51:5, 51:10

**deputy** [1] - 84:24

**DEPUTY** [4] - 3:3,

5

68:23, 84:19, 84:21
**design** [5] - 25:25, 37:6, 37:7, 37:11, 94:10
**DESIGN** [1] - 1:4
**designers** [1] - 37:7
**designing** [1] - 37:12
**detail** [1] - 84:8
**determine** [2] - 57:5, 97:20
**determined** [2] - 20:11, 35:12
**development** [1] - 54:22
**devil's** [1] - 60:13
**DI-17** [3] - 63:1, 63:3, 63:6
**DI-17-3** [1] - 63:18
**DI-39** [3] - 58:22, 62:10, 69:23
**DI-53** [4] - 51:16, 51:23, 51:24, 52:8
**DI-54** [2] - 51:16, 52:10
**diagram** [1] - 92:9
**dicta** [1] - 70:14
**difference** [1] - 67:12
**different** [22] - 9:4, 21:6, 24:8, 30:15, 31:22, 37:4, 37:11, 37:13, 37:17, 41:10, 50:9, 51:9, 55:2, 59:7, 62:10, 77:15, 82:3, 82:7, 93:13, 93:21, 94:22
**differently** [2] - 18:7, 97:15
**digital** [1] - 37:12
**direct** [25] - 24:5, 24:13, 24:25, 25:9, 26:22, 27:2, 27:20, 36:2, 36:17, 41:20, 41:23, 57:13, 60:5, 60:8, 60:16, 61:6, 61:18, 69:22, 70:16, 70:17, 70:19, 93:7, 93:8, 93:20, 93:21
**directed** [1] - 16:11
**directly** [7] - 7:14, 8:12, 8:15, 27:18, 47:15, 59:3, 67:2
**disagree** [5] - 31:6, 46:9, 46:14, 62:16, 93:1
**disciplined** [2] - 30:23, 31:3
**Disclosure** [1] - 96:4
**disclosures** [1] - 95:16
**discovered** [1] - 96:25

**discovery** [11] - 9:23, 13:22, 15:7, 19:9, 33:8, 44:6, 44:23, 51:4, 51:6, 75:20
**discretion** [2] - 30:23, 74:21
**discretionary** [1] - 35:5
**discuss** [7] - 24:16, 37:3, 65:19, 71:21, 71:22, 71:23, 91:1
**discussed** [2] - 31:7, 31:9, 32:3, 36:8, 36:10, 40:1, 46:1
**discusses** [2] - 17:5, 67:17
**discussing** [2] - 26:9, 38:17
**discussion** [2] - 68:14, 87:5
**discussions** [1] - 88:24
**dismiss** [15] - 10:16, 12:15, 13:9, 15:6, 50:17, 50:20, 51:1, 54:12, 54:23, 57:22, 64:13, 69:1, 71:1, 71:4, 98:19
**dismissed** [12] - 12:4, 12:6, 12:13, 12:20, 12:21, 13:8, 42:19
**dismisses** [1] - 66:14
**dispense** [1] - 66:20
**dispose** [2] - 92:18, 92:22
**disposition** [1] - 30:19
**dispute** [2] - 8:6, 8:9
**disputes** [2] - 5:24, 7:2
**distinction** [1] - 97:21
**distinguishes** [1] - 92:1
**district** [3] - 9:12, 43:24, 60:7
**District** [29] - 3:4, 7:3, 7:15, 8:7, 11:2, 11:5, 11:6, 11:18, 11:22, 11:25, 12:10, 12:25, 14:2, 14:14, 14:15, 14:19, 14:20, 15:17, 16:6, 17:19, 22:18, 48:18, 50:9, 52:3, 77:5, 78:5, 91:15, 99:8
**DISTRICT** [2] - 1:1, 1:2
**DJ** [51] - 17:16, 17:19, 19:19, 20:23, 20:24, 21:1, 22:19, 24:13, 25:1, 26:5, 26:21, 28:22, 28:23, 30:5,

30:10, 31:8, 31:16, 31:19, 32:2, 36:9, 36:13, 36:14, 37:18, 37:23, 38:23, 39:20, 39:24, 40:2, 40:3, 40:6, 42:20, 45:21, 46:17, 48:9, 50:18, 59:20, 64:23, 65:7, 65:9, 65:25, 66:15, 66:16, 66:23, 67:21, 70:22, 76:2, 89:10
**doable** [1] - 97:25
**document** [1] - 33:9
**Document** [1] - 62:24
**documentation** [11] - 57:19, 57:25, 58:16, 58:20, 58:25, 59:5, 59:6, 59:7, 59:16, 61:14
**done** [12] - 7:4, 43:1, 44:7, 44:22, 67:20, 87:4, 88:7, 94:17, 95:7, 96:11, 97:23
**double** [2] - 82:20, 83:4
**double-check** [1] - 83:4
**doubt** [4] - 59:13, 85:9, 90:14, 94:19
**down** [7] - 37:25, 43:25, 49:15, 57:11, 61:9, 64:25, 96:7
**duplicative** [1] - 48:11
**during** [1] - 98:18
**dwell** [2] - 28:2, 41:7
**DYER** [1] - 2:7
**DYER** [1] - 51:18
**Dylan** [1] - 5:11
**DYLAN** [1] - 2:19
**dynamic** [1] - 86:3

# E

**earliest** [1] - 6:25
**early** [1] - 88:15
**easily** [2] - 57:15, 60:8
**ED** [1] - 92:2
**EDA** [9] - 16:1, 17:6, 37:17, 37:19, 38:23, 92:2, 92:3, 93:4
**edges** [1] - 92:12
**effect** [2] - 49:8, 89:24
**effectively** [2] - 76:10, 78:24
**efficiencies** [3] - 45:2, 89:12, 94:18
**efficiency** [11] - 40:8, 43:22, 44:1, 45:1, 45:5, 45:14, 46:21, 77:8, 89:21, 90:20,

91:5
**efficient** [7] - 45:19, 46:6, 46:7, 46:10, 90:2, 90:25, 91:11
**efficiently** [1] - 95:8
**eight** [5] - 11:21, 12:10, 15:18, 15:19, 96:20
**either** [10] - 12:19, 18:25, 55:13, 57:18, 61:17, 62:2, 77:23, 78:14, 91:13, 96:19
**eleven** [1] - 11:9
**elsewhere** [1] - 92:19
**employ** [1] - 25:25
**employed** [1] - 69:15
**encourage** [1] - 38:14
**encouraging** [2] - 27:18, 37:24
**encumbered** [1] - 7:24
**end** [4] - 33:17, 70:14, 87:22, 90:21
**engage** [2] - 44:5, 90:17
**engaged** [1] - 21:15
**engaging** [1] - 88:24
**engineer** [2] - 37:9, 37:10
**engineers** [2] - 37:7, 51:9
**enjoin** [6] - 8:1, 8:7, 8:12, 8:15, 8:18, 9:13
**enjoining** [5] - 5:24, 7:16, 7:20, 8:24
**enjoinment** [1] - 51:18
**enjoyed** [1] - 75:21
**enormous** [1] - 45:14
**entered** [3] - 28:17, 28:18, 28:19
**entertain** [1] - 94:15
**entertained** [1] - 75:3
**entire** [3] - 41:9, 58:23, 59:3
**entirety** [1] - 69:15
**entities** [6] - 11:12, 11:20, 11:21, 15:19, 47:25, 97:16
**entity** [1] - 97:19
**equitable** [1] - 30:22
**error** [1] - 74:21
**especially** [2] - 25:13, 61:11
**ESQUIRE** [17] - 1:21, 1:22, 2:3, 2:3, 2:4, 2:6, 2:7, 2:9, 2:10, 2:12, 2:15, 2:15, 2:16, 2:16, 2:17, 2:19, 2:22
**essentially** [2] - 76:15,

91:25
**establish** [5] - 19:19, 40:13, 55:3, 56:13, 61:25
**estimate** [2] - 81:3
**Evans** [2] - 62:24, 63:19
**evidence** [36] - 17:7, 27:17, 31:15, 31:20, 33:10, 37:14, 39:1, 39:8, 39:16, 40:13, 46:2, 46:4, 47:1, 49:7, 49:12, 51:15, 52:24, 53:14, 55:10, 55:14, 55:24, 56:6, 56:23, 57:8, 59:9, 59:12, 60:22, 60:24, 61:1, 61:25, 62:20, 65:6, 65:19, 65:21, 69:8
**exact** [2] - 31:10, 60:11
**exactly** [1] - 24:18
**example** [6] - 27:9, 34:23, 45:21, 58:5, 58:9, 63:21
**examples** [1] - 58:21
**excellent** [1] - 33:4
**exception** [4] - 18:9, 50:15, 88:20
**excerpts** [1] - 58:16
**excuse** [4] - 22:15, 43:8, 44:9, 74:24
**exempt** [1] - 92:13
**exercise** [3] - 9:8, 96:12, 97:5
**exercising** [1] - 9:2
**exhibit** [1] - 63:13
**Exhibit** [4] - 58:22, 58:23, 62:10, 69:24
**Exhibits** [1] - 57:20
**exist** [2] - 71:8, 71:13
**existed** [1] - 39:17
**existence** [1] - 12:18
**existing** [1] - 9:6
**exists** [4] - 69:3, 69:4, 69:7, 69:8
**expect** [1] - 54:6
**expected** [2] - 10:2, 10:4
**expedited** [2] - 44:6, 78:10
**expeditiously** [1] - 95:8
**expense** [3] - 32:24, 32:25, 33:1
**experienced** [2] - 30:23, 31:2
**expert** [1] - 61:11
**explicit** [1] - 59:5

expressed [1] - 77:16
extension [1] - 89:9
extensive [2] - 58:24
extensively [1] - 70:16
extent [6] - 9:2, 24:3, 50:19, 50:22, 52:21, 64:25

## F

F.3d [2] - 22:22, 23:5
facial [3] - 18:21, 20:14, 34:13
facially [4] - 19:6, 19:14, 20:18, 34:1
facilitating [1] - 30:14
facing [1] - 97:1
fact [11] - 9:23, 26:5, 26:8, 37:16, 37:19, 39:24, 42:7, 42:8, 65:18, 85:15, 87:2
factor [1] - 27:13
factors [1] - 30:21
facts [15] - 8:1, 9:7, 11:17, 18:17, 19:11, 24:18, 31:13, 31:15, 34:22, 35:5, 35:9, 54:15, 66:6, 71:14
factual [14] - 18:22, 19:11, 27:5, 33:4, 34:3, 34:7, 34:16, 34:17, 35:11, 45:24, 52:22, 54:22, 56:17, 64:8
factually [1] - 34:2
failed [1] - 18:17
fails [1] - 20:18
fair [9] - 14:25, 15:23, 21:6, 29:8, 33:20, 86:8, 95:3, 95:4, 97:14
fairness [2] - 45:6, 50:1
familiar [1] - 48:24
far [4] - 15:5, 33:9, 53:11, 77:12
FARNAN [9] - 2:12, 2:12, 4:14, 4:16, 4:21, 4:23, 4:25, 5:2, 5:5
Farnan [2] - 4:13, 4:16
FARR [1] - 2:6
Farr [1] - 3:25
fashion [1] - 58:3
fast [2] - 43:22, 88:3
fast-track [1] - 43:22
fastest [1] - 98:14
features [1] - 42:14
February [6] - 45:17, 73:22, 73:23, 76:1,

78:7, 81:14
Federal [9] - 5:23, 7:14, 18:19, 19:22, 20:1, 20:2, 20:6, 30:14, 65:17
few [3] - 19:17, 33:13, 80:15
Fifth [1] - 20:3
fighting [1] - 34:24
figure [2] - 38:8, 82:13
file [11] - 18:8, 18:13, 40:2, 40:20, 47:21, 48:6, 48:10, 72:5, 84:3
filed [32] - 11:1, 11:4, 11:5, 11:6, 11:8, 11:9, 11:10, 13:9, 13:20, 17:2, 17:19, 19:5, 19:9, 20:14, 40:1, 40:5, 40:6, 40:7, 40:9, 40:18, 41:10, 46:18, 48:2, 54:3, 67:21, 70:4, 72:9, 73:8, 73:10, 96:22
filing [6] - 11:15, 20:12, 33:7, 35:13, 36:8, 54:23
filings [1] - 41:3
fill [1] - 83:19
final [2] - 77:22, 78:15
findings [1] - 45:25
fine [4] - 68:9, 80:16, 86:10, 96:11
finished [1] - 44:24
finishes [1] - 58:17
first [20] - 6:4, 7:5, 18:8, 18:13, 29:3, 39:25, 40:7, 40:9, 49:22, 51:4, 55:11, 61:4, 69:8, 70:7, 71:22, 71:23, 81:13, 84:3, 89:7, 94:12
five [3] - 6:16, 73:9, 77:19
flag [2] - 87:2, 89:5
flight [1] - 80:2
flights [1] - 80:1
focus [1] - 25:12
focused [1] - 60:16
folks [1] - 85:5
follow [1] - 66:23
foolish [1] - 84:14
FOR [2] - 1:2, 1:7
force [1] - 91:8
foregoing [1] - 99:4
forget [1] - 95:15
form [5] - 16:6, 36:14, 61:25, 62:20, 94:13
forms [2] - 16:7, 69:7

forth [1] - 65:20
forward [8] - 6:23, 18:10, 45:1, 66:5, 89:13, 89:15, 91:5, 95:6
four [8] - 24:8, 24:16, 75:20, 81:18, 82:17, 85:21, 87:2, 87:13
four-day [1] - 87:13
Frank [1] - 4:1
FRANK [1] - 2:9
frank [1] - 53:4
frankly [3] - 25:10, 61:4, 66:24
Friday [2] - 89:2, 95:10
friend [2] - 68:17, 96:20
front [11] - 5:23, 6:6, 14:10, 15:10, 18:6, 18:7, 81:12, 88:6, 93:2, 94:16
fulfilled [1] - 33:11
fully [2] - 32:7, 86:20
fulsome [1] - 33:16
funding [1] - 96:1
furthest [2] - 73:12, 74:5
future [1] - 97:1

## G

gain [1] - 94:18
GALLAGHER [1] - 2:6
gallery [1] - 4:6
general [2] - 16:24, 56:17
General [1] - 5:14
generally [1] - 31:15
GeoTag [1] - 60:7
Gilstrap [1] - 41:3
given [3] - 59:12, 77:19, 77:24
Googled [1] - 84:25
governing [1] - 11:14
Government [2] - 77:15, 83:11
grant [4] - 50:22, 74:24, 83:25, 84:1
granting [1] - 84:2
great [5] - 18:23, 19:5, 23:16, 28:11, 78:4
ground [1] - 60:4
grounds [1] - 59:20
Group [1] - 57:1
guess [6] - 8:21, 24:17, 43:24, 85:1, 87:18, 88:17
guidance [2] - 38:11, 95:5

guides [6] - 27:9, 38:19, 38:22, 39:7, 58:19, 69:25
guys [2] - 76:3, 80:25

## H

hamstrung [1] - 48:5
hand [4] - 18:1, 49:14, 62:25, 63:2
handful [2] - 33:11, 33:12
handle [2] - 82:14, 85:12, 87:8
handled [1] - 87:6
handles [1] - 77:24
handling [3] - 14:5, 14:8, 74:13
HANNAH [1] - 2:17
hannah [1] - 4:23
happy [3] - 72:20, 74:1
hard [3] - 41:6, 50:9, 81:2
hardware [1] - 37:10
hear [7] - 43:15, 75:25, 78:13, 83:14, 85:4, 87:21, 95:12
heard [8] - 42:18, 57:14, 60:10, 64:22, 65:6, 65:25, 66:1, 80:15
hearing [18] - 10:3, 13:25, 43:14, 72:13, 72:18, 73:14, 75:16, 76:20, 77:6, 79:23, 85:12, 85:17, 85:23, 87:22, 87:23, 95:6, 97:7, 98:18
hearings [1] - 75:13
Heartland [1] - 48:7
Heather [1] - 99:7
height [1] - 11:19
help [1] - 53:11
helpful [3] - 9:22, 10:14, 94:21
helps [1] - 90:7
hereby [1] - 99:4
high [1] - 37:5
hit [1] - 36:4
hmm [1] - 24:10
Hoist [1] - 6:17
hold [5] - 23:23, 44:20, 51:22, 62:9, 67:6
Honor [213] - 3:9, 3:18, 3:21, 3:24, 4:2, 4:5, 4:8, 4:14, 4:19, 4:20, 4:22, 4:24, 5:1, 5:4, 5:11, 5:18, 10:17, 10:20, 11:12,

11:14, 12:1, 12:11, 12:14, 12:22, 13:16, 13:19, 14:4, 14:11, 14:23, 15:2, 15:9, 15:13, 15:14, 15:22, 16:4, 16:13, 16:19, 16:22, 17:12, 17:15, 17:23, 18:5, 18:13, 18:15, 18:23, 19:8, 19:20, 20:8, 20:12, 21:10, 21:12, 21:18, 21:20, 22:1, 22:8, 22:15, 22:21, 23:2, 23:6, 23:19, 23:22, 23:25, 24:9, 24:16, 25:2, 25:19, 26:7, 26:17, 27:7, 27:10, 27:25, 28:8, 28:23, 29:10, 29:15, 29:25, 30:2, 31:5, 31:13, 32:1, 32:16, 32:20, 32:22, 33:3, 33:21, 34:1, 34:14, 35:19, 36:6, 37:5, 37:22, 38:2, 38:6, 38:18, 39:12, 39:14, 39:19, 39:24, 40:17, 40:24, 41:5, 41:9, 41:19, 41:22, 42:3, 42:11, 42:18, 42:24, 43:3, 43:4, 43:8, 43:9, 44:9, 44:21, 44:25, 45:16, 45:18, 46:4, 46:13, 46:24, 47:13, 47:17, 47:23, 48:13, 48:16, 50:11, 50:19, 50:22, 53:4, 53:23, 58:13, 61:10, 62:17, 62:23, 63:2, 63:11, 63:15, 63:21, 64:5, 64:9, 64:13, 64:16, 64:17, 65:5, 65:22, 66:12, 66:22, 67:3, 67:10, 68:5, 68:8, 68:12, 68:20, 71:5, 71:20, 71:24, 72:11, 72:16, 72:23, 73:18, 74:7, 74:15, 74:18, 74:20, 75:9, 75:11, 76:24, 77:3, 77:18, 77:25, 78:13, 78:20, 79:8, 79:10, 79:18, 79:19, 80:11, 80:16, 80:19, 80:20, 80:24, 81:2, 81:17, 81:19, 82:12, 82:21, 83:1, 83:2, 83:10, 83:19, 84:8, 84:13, 85:7, 85:19, 86:4, 86:19, 86:25, 87:12, 87:20, 90:11, 91:18, 92:3,

94:6, 95:4, 95:18, 96:2, 96:9, 97:24, 98:3, 98:6, 98:10, 98:11, 98:22
**Honor's** [5] - 51:14, 71:25, 72:7, 72:19, 95:5
**HONORABLE** [1] - 1:19
**Honorable** [1] - 3:5
**horse** [1] - 66:13
**hours** [2] - 79:21, 80:16
**housekeeping** [1] - 68:13
**Houston** [2] - 79:4, 91:18
**Huff** [19] - 15:10, 15:13, 18:7, 44:11, 45:16, 49:22, 74:13, 74:17, 75:6, 75:25, 81:5, 81:12, 81:13, 81:22, 82:23, 84:23, 87:5, 95:7, 95:12
**Huff's** [1] - 85:17
**hundred** [1] - 47:22
**hypothetical** [1] - 70:14

**I**

**idea** [5] - 32:14, 59:24, 76:10, 85:13, 86:17
**ideal** [1] - 29:6
**identical** [1] - 21:13
**identified** [3] - 63:18, 64:3, 69:13
**identifies** [1] - 29:6
**identify** [3] - 52:23, 72:14, 96:16
**ignoring** [1] - 60:21
**III** [4] - 26:6, 69:4, 70:9, 71:13
**immediately** [1] - 74:3
**impact** [1] - 54:20
**implicates** [1] - 55:1
**implications** [1] - 97:5
**implicit** [2] - 57:2, 57:6
**implied** [5] - 56:15, 58:1, 58:3, 60:4, 61:18
**important** [6] - 12:16, 56:20, 60:23, 66:3, 86:13, 86:14
**imposes** [1] - 32:24
**impossible** [1] - 97:10
**improper** [3] - 8:16, 8:19, 9:10
**impugn** [1] - 47:10

**IN** [1] - 1:1
**INC** [3] - 1:4, 1:4, 1:9
**inclination** [1] - 78:24
**inclined** [1] - 75:24
**include** [1] - 13:8
**includes** [2] - 14:18, 52:5
**including** [7] - 9:11, 9:14, 11:8, 13:21, 31:22, 52:15, 55:23
**incorporated** [1] - 97:15
**Incorporated** [1] - 23:3
**incorrect** [1] - 24:6
**incur** [1] - 33:24
**indeed** [1] - 71:25
**indemnification** [9] - 28:5, 33:19, 52:25, 53:22, 55:15, 62:3, 65:7, 67:6, 69:11
**indemnified** [1] - 68:2
**indemnify** [2] - 65:3, 67:21
**indemnifying** [1] - 68:3
**indemnity** [29] - 20:25, 24:11, 25:7, 25:12, 28:14, 29:13, 29:18, 29:20, 32:14, 33:10, 34:12, 34:24, 35:23, 42:25, 53:6, 55:9, 56:10, 62:21, 64:17, 64:22, 65:12, 65:13, 65:17, 65:23, 66:1, 67:1, 67:18, 67:24, 91:19
**independent** [1] - 59:19
**indirect** [16] - 24:14, 35:25, 39:10, 41:22, 56:7, 56:16, 56:19, 56:25, 57:2, 57:6, 57:18, 58:3, 59:19, 60:17, 61:1, 61:17
**individual** [1] - 51:21
**individuals** [2] - 97:13, 97:20
**induced** [4] - 38:5, 38:13, 38:15, 69:22
**inducement** [11] - 24:14, 26:22, 27:2, 27:17, 27:20, 35:25, 36:16, 37:23, 39:2, 41:22, 60:1
**inducer** [1] - 38:14
**INDUSTRY** [1] - 1:9
**Industry** [1] - 63:7
**inefficiencies** [1] - 45:2

**inefficient** [1] - 75:23
**inferences** [1] - 20:22
**information** [1] - 96:7
**infringe** [3] - 27:18, 37:25, 47:25
**infringed** [4] - 24:22, 31:19, 45:21, 78:3
**infringement** [91] - 11:18, 15:25, 16:2, 16:5, 16:8, 22:4, 22:10, 22:14, 22:17, 24:5, 24:13, 24:14, 24:15, 25:1, 25:9, 25:24, 26:22, 26:23, 27:2, 27:3, 27:20, 27:21, 31:14, 31:22, 35:25, 36:1, 36:2, 36:16, 36:17, 36:18, 36:21, 37:22, 38:5, 38:13, 38:15, 38:16, 39:10, 40:14, 41:20, 41:23, 42:9, 45:8, 45:10, 45:11, 45:12, 45:13, 46:11, 47:22, 56:8, 56:15, 56:16, 56:19, 56:25, 57:2, 57:6, 57:13, 57:19, 58:4, 59:19, 59:22, 60:5, 60:9, 60:16, 60:17, 61:1, 61:7, 61:9, 61:18, 69:20, 69:22, 69:23, 70:17, 70:19, 70:23, 76:2, 77:2, 89:15, 90:9, 92:13, 92:17, 92:18, 92:21, 93:6, 93:7, 93:8, 93:11, 93:20, 93:21, 94:14
**infringement/non** [1] - 93:11
**infringement/non-infringement** [1] - 93:11
**infringer** [2] - 16:12, 46:2
**infringers** [9] - 16:10, 16:15, 16:17, 18:20, 31:23, 38:24, 42:9, 45:24, 48:3
**infringes** [1] - 59:14
**infringing** [6] - 32:10, 36:23, 37:16, 37:20, 47:5, 58:2
**initial** [3] - 41:2, 74:11, 74:12
**initiation** [1] - 30:15
**Injunction** [1] - 63:8
**injunction** [18] - 18:12, 19:10, 32:12, 43:14, 48:20, 49:10,

49:15, 50:22, 54:8, 55:24, 56:5, 68:14, 68:25, 71:3, 71:19, 74:25, 76:9, 88:20
**instance** [1] - 61:5
**instead** [2] - 7:15, 48:10
**Instead** [1] - 65:1
**instruct** [1] - 59:6
**instructing** [1] - 58:1
**instructions** [2] - 39:5, 39:8
**Instruments** [1] - 73:9
**insufficient** [1] - 35:18
**integrity** [1] - 47:10
**intend** [1] - 78:10
**interconnected** [1] - 50:25
**interest** [7] - 6:20, 6:21, 7:6, 7:8, 78:4, 85:1, 89:12
**interested** [5] - 6:12, 16:14, 77:8, 77:9, 88:8
**interesting** [1] - 86:3
**interests** [1] - 54:18
**interfere** [2] - 8:4, 76:8
**interim** [2] - 85:10
**INTERNATIONAL** [1] - 2:21
**International** [2] - 2:23, 5:12
**interplay** [1] - 87:3
**interpreted** [1] - 92:23
**interrupt** [1] - 45:7
**intersection** [1] - 92:9
**intervene** [4] - 31:2, 32:2, 32:6, 32:21
**intervened** [2] - 11:3, 40:8
**intervening** [1] - 6:4
**intimating** [1] - 38:18
**invalid** [2] - 78:2, 78:3
**invalidity** [4] - 76:2, 77:6, 90:10, 94:14
**investigations** [3] - 9:21, 11:19, 77:23
**investiture** [1] - 83:6
**involve** [1] - 56:9
**involved** [5] - 5:22, 47:1, 76:18, 76:19, 82:6
**involves** [2] - 21:19, 25:23
**IP** [1] - 85:1
**Isaac** [2] - 3:23, 4:7
**isolation** [1] - 26:4
**issue** [19] - 5:24, 19:8, 28:2, 31:10, 31:13, 32:12, 43:14, 44:12,

46:8, 51:2, 65:5, 66:9, 77:21, 78:24, 82:1, 93:18, 94:5, 94:11, 98:16
**issued** [2] - 10:1, 98:18
**issues** [20] - 18:6, 31:9, 31:10, 31:22, 31:23, 31:24, 32:7, 32:8, 35:23, 35:24, 36:1, 36:3, 36:4, 44:10, 44:14, 46:8, 56:10, 72:2, 74:22, 89:4
**ITC** [37] - 5:19, 6:20, 6:21, 8:8, 11:2, 11:8, 11:19, 11:22, 12:11, 14:14, 14:17, 52:3, 76:12, 76:13, 77:6, 77:10, 77:21, 77:22, 77:24, 78:4, 78:16, 81:24, 82:2, 82:4, 82:5, 82:7, 82:8, 83:14, 83:20, 83:22, 83:24, 89:13, 89:17, 90:4
**ITC's** [1] - 78:17
**items** [1] - 33:8
**itself** [6] - 19:7, 19:14, 26:11, 26:23, 33:23, 36:9

**J**

**January** [17] - 17:22, 72:1, 72:2, 72:8, 76:1, 78:3, 78:7, 82:16, 85:8, 85:16, 86:24, 87:11, 88:12, 89:1, 90:4, 90:25, 91:5
**Jeff** [1] - 3:16
**JEFFREY** [1] - 2:3
**job** [2] - 43:2, 50:5
**John** [2] - 5:5
**join** [1] - 18:19
**joined** [1] - 40:9
**Josh** [3] - 4:21, 5:3, 18:11
**JOSHUA** [1] - 2:15
**JR** [1] - 2:9
**Judge** [31] - 8:10, 15:10, 15:11, 15:13, 18:6, 18:7, 41:3, 44:2, 44:11, 45:9, 45:16, 49:22, 49:24, 50:14, 61:3, 74:13, 74:17, 75:6, 75:25, 81:5, 81:12, 81:13, 81:22, 82:23, 84:23,

85:16, 87:5, 92:16, 95:7, 95:12
**judge** [6] - 14:7, 72:13, 74:3, 76:11, 78:25, 85:3
**judge's** [1] - 14:9
**judges** [5] - 10:5, 30:24, 31:3, 70:12, 97:7
**judgment** [4] - 24:4, 56:12, 69:3, 90:8
**Judgments** [1] - 30:14
**judicial** [5] - 30:17, 30:18, 43:21, 44:1, 45:14
**July** [1] - 11:5
**jump** [2] - 55:9, 88:21
**jumping** [1] - 74:8
**June** [5] - 11:4, 73:18, 80:18, 85:18, 88:3
**jurisdiction** [52] - 8:17, 8:20, 17:16, 18:16, 18:18, 18:22, 18:24, 19:7, 19:13, 19:15, 19:20, 19:25, 20:11, 20:16, 24:12, 25:1, 26:6, 26:24, 27:1, 27:12, 27:16, 28:6, 29:17, 32:18, 34:18, 34:23, 35:2, 35:8, 35:18, 35:22, 36:9, 36:14, 37:21, 39:2, 44:6, 55:6, 56:13, 56:21, 59:20, 61:17, 66:5, 67:20, 67:24, 69:3, 69:4, 70:9, 70:25, 71:8, 71:11, 71:12, 71:13, 71:16
**jurisdictional** [1] - 91:18
**jurisprudence** [1] - 25:14
**jury** [3] - 72:5, 78:2, 94:16
**JURY** [1] - 1:7
**justify** [1] - 70:22
**Justin** [1] - 4:6

### K

**KAMPRATH** [143] - 2:15, 4:19, 10:17, 10:20, 12:1, 12:5, 12:10, 12:14, 12:22, 13:2, 13:4, 13:6, 13:14, 13:16, 13:19, 14:4, 14:6, 14:9, 14:14, 14:16, 14:22, 15:1, 15:5, 15:9,

15:12, 15:18, 15:22, 16:4, 16:13, 16:19, 16:22, 16:24, 17:12, 17:15, 17:22, 18:5, 18:15, 18:23, 19:2, 19:4, 19:17, 19:23, 20:5, 20:8, 20:11, 21:9, 21:18, 21:20, 22:1, 22:8, 22:15, 22:21, 22:24, 23:2, 23:5, 23:13, 23:15, 23:19, 23:21, 23:25, 24:2, 24:11, 25:2, 25:9, 25:19, 26:7, 26:14, 26:17, 27:7, 27:25, 28:7, 28:11, 28:22, 29:3, 29:8, 29:10, 29:12, 29:25, 30:2, 30:25, 31:5, 32:16, 32:20, 32:22, 33:3, 33:21, 34:1, 34:5, 34:13, 34:17, 35:16, 35:21, 36:6, 38:2, 38:6, 38:8, 39:12, 39:18, 40:17, 40:24, 41:5, 41:8, 41:15, 41:18, 42:3, 42:6, 42:11, 43:8, 43:12, 43:17, 44:9, 44:18, 44:20, 45:15, 46:13, 46:15, 46:24, 47:9, 47:13, 47:17, 47:23, 48:13, 48:15, 62:17, 64:5, 64:9, 64:16, 64:21, 65:12, 65:15, 66:9, 66:12, 66:22, 67:3, 67:10, 67:13, 67:17, 68:7, 79:10, 81:2, 81:7, 91:9, 97:24
**Kamprath** [17] - 4:17, 10:18, 23:12, 23:13, 23:16, 50:5, 51:3, 57:14, 60:10, 60:19, 61:22, 62:16, 64:4, 64:15, 70:13, 71:7, 79:9
**keep** [2] - 50:9, 83:18
**kept** [1] - 10:7
**Kerotest** [1] - 30:13
**Kershaw** [1] - 6:17
**kind** [6] - 10:23, 32:12, 34:19, 55:4, 57:4, 57:12
**King** [1] - 1:15
**knowledge** [3] - 10:10, 38:15, 97:18
**known** [1] - 85:1
**knows** [2] - 19:8, 19:20

**Koninklijke** [1] - 77:16
**Kraman** [3] - 3:8, 3:11
**KRAMAN** [10] - 1:21, 3:9, 3:11, 3:15, 3:19, 3:22, 3:25, 4:3, 4:6, 4:11
**KRISTA** [1] - 2:6
**Krista** [1] - 3:23
**Kronstadt** [6] - 15:11, 15:13, 18:6, 44:2, 45:9, 92:16
**KURT** [1] - 2:4
**Kurt** [1] - 4:4
**KYLE** [1] - 2:16
**Kyle** [1] - 4:25

### L

**lack** [1] - 19:12
**lacked** [1] - 34:23
**language** [3] - 70:10, 70:13, 96:6
**large** [1] - 50:16
**last** [12] - 6:3, 6:15, 13:20, 35:21, 40:16, 40:18, 41:20, 43:19, 73:10, 79:13, 96:14, 96:19
**late** [2] - 70:3, 83:20
**latest** [1] - 78:7
**LAUREN** [1] - 2:16
**Lauren** [1] - 4:17
**law** [12] - 10:5, 18:19, 19:24, 20:3, 20:4, 20:7, 20:9, 22:20, 29:16, 65:17, 85:2, 97:16
**lawsuit** [8] - 10:24, 11:15, 26:11, 26:13, 36:8, 40:20, 66:17, 96:23
**lawsuits** [7] - 11:13, 11:14, 21:19, 22:9, 31:6, 38:22, 41:25
**least** [19] - 14:24, 16:3, 17:4, 17:11, 26:4, 32:5, 33:18, 33:19, 39:18, 40:13, 56:22, 60:20, 61:1, 61:4, 63:17, 85:23, 91:19, 91:20, 93:3
**left** [4] - 30:24, 84:24, 88:15, 95:10
**legal** [1] - 54:18
**less** [1] - 8:19
**letter** [1] - 75:20
**level** [1] - 37:5
**liability** [4] - 25:16, 26:2, 61:9, 69:7
**license** [6] - 28:17,

28:18, 28:20, 29:13, 56:3, 63:24
**licenses** [1] - 28:24
**licensing** [3] - 11:1, 21:16, 47:18
**lies** [1] - 94:9
**light** [3] - 19:11, 84:13, 95:5
**likely** [1] - 77:21
**likewise** [1] - 8:17
**limitations** [1] - 42:12
**Lin** [1] - 4:7
**LIN** [1] - 4:8
**line** [1] - 15:16
**lists** [2] - 52:1, 52:11
**litigate** [2] - 43:23, 44:14
**litigated** [3] - 44:2, 75:24, 76:13
**litigating** [1] - 44:12
**litigation** [13] - 7:24, 11:11, 13:15, 15:4, 30:15, 30:19, 39:25, 40:5, 46:18, 59:2, 69:15, 91:15, 96:1
**litigation/licensing** [1] - 25:22
**litigations** [11] - 10:24, 45:3, 48:18, 58:10
**LLC** [5] - 1:7, 1:12, 96:22, 96:24, 97:19
**LLCs** [1] - 97:15
**LLP** [4] - 1:21, 2:6, 2:9, 2:12
**look** [23] - 19:13, 25:13, 26:20, 27:19, 30:7, 36:19, 36:24, 41:1, 45:4, 55:2, 56:18, 58:7, 60:22, 60:24, 64:17, 64:24, 67:4, 67:15, 71:6, 79:24, 81:8, 89:19, 95:5
**looked** [4] - 25:6, 39:4, 64:18, 96:3
**looking** [9] - 29:21, 34:20, 35:1, 39:5, 39:24, 44:14, 45:1, 49:19, 64:19
**looks** [3] - 36:8, 39:4, 57:12
**lower** [1] - 30:24

### M

**majority** [1] - 61:2
**mandamus** [1] - 7:15
**manner** [2] - 6:23, 6:24
**manuals** [7] - 17:8,

27:10, 27:13, 27:15, 38:19, 38:23, 39:7
**manufactured** [6] - 16:2, 16:17, 22:6, 22:11, 42:10, 46:12
**many-sided** [1] - 30:16
**March** [2] - 77:23, 78:14
**Markman** [15] - 9:24, 10:1, 10:2, 13:24, 13:25, 14:1, 72:13, 72:18, 73:14, 80:17, 85:12, 85:23, 87:21, 88:6, 88:8
**married** [1] - 79:13
**Materials** [1] - 19:18
**materials** [1] - 27:15
**Matt** [1] - 3:19
**matter** [34] - 18:16, 18:18, 18:24, 19:6, 19:13, 19:14, 19:19, 19:25, 20:16, 24:12, 26:24, 26:25, 27:12, 27:16, 29:17, 34:18, 34:23, 35:2, 35:8, 35:18, 35:22, 37:21, 39:2, 56:13, 56:21, 61:17, 64:8, 66:3, 66:4, 67:19, 67:24, 71:8, 71:12, 71:16
**Matthew** [1] - 71:5
**MATTHEW** [1] - 2:3
**McKool** [2] - 5:2, 10:18
**mcKOOL** [1] - 2:14
**MDL** [2] - 46:17, 48:8
**mean** [19] - 21:7, 22:12, 29:5, 35:21, 40:25, 41:1, 45:8, 46:20, 47:8, 50:2, 71:13, 76:6, 76:7, 76:8, 86:13, 88:2, 88:15, 90:14, 91:15
**meaningful** [1] - 32:15
**means** [2] - 11:21, 12:20
**mechanical** [1] - 30:20
**mechanism** [1] - 46:16
**MedImmune** [2] - 54:12, 69:2
**Megan** [1] - 3:13
**MEGAN** [1] - 2:10
**mental** [1] - 57:17
**mention** [1] - 32:2
**mentioned** [2] - 68:16, 90:22
**mentions** [1] - 51:24

**mere** [3] - 22:17, 26:11, 26:13
**Merit** [1] - 99:7
**merit** [1] - 65:4
**meritorious** [1] - 50:17
**merits** [1] - 84:6
**message** [2] - 84:24, 88:15
**met** [2] - 17:6, 42:12
**method** [4] - 31:18, 42:12, 42:13, 94:10
**methods** [3] - 25:25, 38:25, 92:2
**Microsoft** [13] - 23:3, 25:3, 27:5, 27:9, 27:18, 27:23, 38:19, 39:7, 56:11, 56:16, 60:6, 60:25, 61:2
**Microsoft's** [1] - 56:22
**middle** [1] - 44:23
**might** [12] - 6:12, 8:22, 34:1, 40:19, 45:19, 64:7, 74:18, 90:23, 91:25, 92:12, 93:5, 96:6
**Miller** [4] - 3:16, 48:23, 51:17, 73:17
**MILLER** [7] - 2:3, 3:18, 73:18, 73:20, 73:23, 74:15, 80:20
**mind** [6] - 68:16, 70:14, 77:20, 90:13, 90:18, 91:1
**mindful** [1] - 95:25
**mine** [1] - 96:20
**minutes** [3] - 51:8, 77:20, 86:6
**Mirzoeff** [1] - 4:23
**MIRZOEFF** [2] - 2:17, 4:24
**misleading** [1] - 50:6
**misrepresentation** [1] - 50:2
**misrepresentations** [1] - 49:21
**Mitek** [12] - 20:2, 22:12, 25:13, 27:23, 40:11, 40:14, 41:1, 41:2, 41:10, 61:5, 69:3, 70:9
**mixed** [2] - 5:9, 37:12
**moment** [1] - 49:3
**month** [5] - 13:25, 44:22, 73:10, 78:1, 78:12
**months** [5] - 40:2, 40:19, 41:2, 96:14, 96:20
**morning** [26] - 3:6,

3:9, 3:10, 3:14, 3:18, 3:21, 3:24, 4:2, 4:5, 4:8, 4:14, 4:15, 4:19, 4:20, 4:22, 4:24, 5:1, 5:4, 5:11, 5:18, 5:19, 10:17, 21:16, 48:16, 52:19, 53:4
**most** [10] - 13:17, 21:12, 34:10, 46:7, 46:10, 69:2, 70:16, 73:8, 74:11, 91:11
**Motion** [1] - 63:7
**motion** [24] - 10:15, 12:15, 15:6, 17:18, 18:12, 44:7, 48:19, 49:10, 49:23, 50:15, 50:17, 50:20, 50:21, 50:23, 51:1, 54:8, 54:11, 54:23, 56:5, 57:22, 64:13, 69:1, 71:1, 77:25
**motions** [8] - 12:20, 13:9, 71:3, 72:3, 72:6, 72:10, 90:22, 98:19
**mount** [1] - 19:1
**mounted** [2] - 19:2, 19:3
**movants** [2] - 7:23, 9:12
**move** [1] - 50:21
**moving** [2] - 10:11, 41:12
**MR** [297] - 3:18, 3:21, 4:2, 4:5, 4:8, 4:14, 4:16, 4:19, 4:21, 4:22, 4:23, 4:25, 5:1, 5:2, 5:4, 5:5, 5:11, 5:18, 5:21, 6:9, 6:21, 7:20, 8:9, 8:25, 9:6, 9:16, 9:19, 9:23, 10:8, 10:17, 10:20, 12:1, 12:5, 12:10, 12:14, 12:22, 13:2, 13:4, 13:6, 13:14, 13:16, 13:19, 14:4, 14:6, 14:9, 14:14, 14:16, 14:22, 15:1, 15:5, 15:9, 15:12, 15:18, 15:22, 16:4, 16:13, 16:19, 16:22, 16:24, 17:12, 17:15, 17:22, 18:5, 18:15, 18:23, 19:2, 19:4, 19:17, 19:23, 20:5, 20:8, 20:11, 21:9, 21:18, 21:20, 22:1, 22:8, 22:15, 22:21, 22:24, 23:2, 23:5, 23:13, 23:15, 23:19,

23:21, 23:25, 24:2, 24:11, 25:2, 25:9, 25:19, 26:7, 26:14, 26:17, 27:7, 27:25, 28:7, 28:11, 28:22, 29:3, 29:8, 29:10, 29:12, 29:25, 30:2, 30:25, 31:5, 32:16, 32:20, 32:22, 33:3, 33:21, 34:1, 34:5, 34:13, 34:17, 35:16, 35:21, 36:6, 38:2, 38:6, 38:8, 39:12, 39:18, 40:17, 40:24, 41:5, 41:8, 41:15, 41:18, 42:3, 42:6, 42:11, 42:24, 43:3, 43:6, 43:8, 43:12, 43:17, 44:9, 44:18, 44:20, 45:15, 46:13, 46:15, 46:24, 47:9, 47:13, 47:17, 47:23, 48:13, 48:15, 53:4, 53:16, 53:19, 53:23, 54:1, 62:17, 62:23, 63:2, 63:5, 63:9, 63:11, 63:13, 63:15, 63:21, 63:24, 64:5, 64:9, 64:16, 64:21, 65:12, 65:15, 66:9, 66:12, 66:22, 67:3, 67:10, 67:13, 67:17, 68:7, 68:12, 68:20, 71:5, 71:20, 71:24, 72:11, 72:23, 73:1, 73:4, 73:7, 73:13, 73:16, 73:18, 73:20, 73:23, 73:24, 74:1, 74:6, 74:15, 74:18, 74:20, 74:24, 74:54, 75:7, 75:9, 75:11, 76:15, 76:23, 77:3, 77:11, 77:13, 77:18, 78:13, 78:20, 79:4, 79:5, 79:8, 79:10, 79:14, 79:18, 79:19, 80:3, 80:6, 80:10, 80:15, 80:19, 80:20, 80:23, 81:2, 81:7, 81:11, 81:17, 82:12, 82:21, 82:25, 83:1, 83:2, 83:10, 83:13, 83:16, 83:18, 83:23, 84:1, 84:7, 84:13, 84:15, 85:6, 85:14, 85:19, 86:3, 86:7, 86:9, 86:15, 86:19, 86:25, 87:8, 87:12, 87:20, 87:25, 88:4, 88:18, 89:3, 89:7, 89:18, 89:21, 90:5,

90:11, 90:21, 91:9, 91:17, 92:3, 92:7, 92:10, 92:15, 92:20, 92:24, 93:1, 93:8, 93:24, 94:3, 94:5, 95:1, 95:4, 95:14, 95:18, 95:20, 95:23, 96:2, 96:8, 97:24, 98:3, 98:6, 98:10, 98:15, 98:22
**MS** [62] - 3:9, 3:11, 3:14, 3:15, 3:19, 3:22, 3:24, 3:25, 4:3, 4:6, 4:11, 4:20, 4:24, 21:12, 23:6, 23:10, 48:16, 49:3, 49:6, 49:9, 49:13, 49:19, 50:3, 50:11, 50:14, 51:9, 51:14, 51:24, 52:10, 52:17, 52:20, 53:1, 54:6, 54:11, 55:8, 55:12, 55:18, 55:21, 55:23, 56:2, 58:7, 58:13, 58:15, 59:23, 59:25, 60:3, 60:15, 60:21, 61:10, 61:16, 61:20, 62:5, 62:8, 62:14, 64:12, 73:8, 75:15, 75:19, 81:18, 81:21, 81:24, 82:3
**multidistrict** [1] - 46:18
**multiple** [4] - 23:9, 36:25, 38:20, 38:21
**must** [3] - 20:11, 30:24, 38:13
**muster** [1] - 29:5

**N**

**name** [1] - 14:9
**National** [1] - 79:12
**nature** [1] - 30:22
**neat** [1] - 79:15
**necessarily** [4] - 24:24, 30:22, 45:11, 55:1
**necessary** [1] - 87:15
**need** [23] - 6:9, 21:7, 31:23, 34:12, 34:13, 34:15, 51:12, 57:7, 63:14, 70:24, 79:21, 80:10, 80:12, 83:11, 85:22, 85:23, 87:22, 88:25, 93:22, 95:11, 95:13, 96:11, 96:17
**negative** [3] - 88:12, 97:10, 97:11
**never** [1] - 83:21

**new** [2] - 34:22, 79:21
**Newcomer** [4] - 4:21, 18:11, 33:5, 65:18
**NEWCOMER** [51] - 2:15, 4:22, 74:20, 74:24, 75:4, 75:7, 75:9, 76:23, 77:3, 77:11, 77:13, 78:20, 79:4, 79:8, 79:14, 79:19, 80:3, 80:6, 80:10, 80:15, 81:11, 81:17, 82:12, 83:1, 86:3, 86:7, 86:9, 86:15, 86:19, 89:3, 89:7, 89:18, 89:21, 90:5, 90:21, 91:17, 92:3, 92:7, 92:10, 92:15, 92:20, 92:24, 93:1, 93:8, 93:24, 94:3, 94:5, 95:1, 96:8, 98:6, 98:22
**next** [15] - 3:13, 9:24, 13:25, 26:18, 44:22, 57:16, 67:4, 72:6, 73:25, 74:5, 76:1, 78:7, 78:12, 81:14, 95:10
**nexus** [1] - 11:17
**nice** [3] - 50:5, 58:8, 59:10
**nicer** [1] - 43:1
**nine** [1] - 73:20
**nobody** [1] - 82:19
**nobody's** [1] - 7:18
**non** [10] - 36:23, 37:16, 37:20, 45:8, 45:13, 46:11, 76:2, 78:3, 90:9, 92:21
**non-infringed** [1] - 78:3
**non-infringement** [6] - 45:8, 45:13, 46:11, 76:2, 90:9, 92:21
**non-infringing** [3] - 36:23, 37:16, 37:20
**none** [5] - 11:5, 17:7, 45:23, 66:1, 74:10
**normally** [1] - 94:16
**North** [1] - 1:15
**Northern** [2] - 14:2, 14:20
**notable** [1] - 47:11
**note** [5] - 9:20, 56:20, 72:2, 77:18, 85:20
**notes** [1] - 99:5
**nothing** [1] - 64:12
**noticeable** [1] - 42:7
**notification** [1] - 6:13
**notified** [1] - 6:9
**November** [1] - 11:9

**nullify** [1] - 70:6
**number** [14] - 6:15, 12:5, 13:5, 13:7, 13:21, 32:3, 33:8, 33:9, 45:23, 46:1, 50:7, 58:15, 90:7, 95:10
**Number** [2] - 28:16, 44:11
**NXP** [24] - 13:21, 13:24, 15:13, 17:20, 44:21, 45:16, 48:21, 48:22, 48:24, 49:5, 49:21, 51:6, 51:9, 52:2, 52:12, 52:15, 63:21, 72:24, 73:3, 73:12, 74:10, 74:14, 76:16, 76:19

## O

**o'clock** [5] - 82:23, 83:4, 83:5, 83:9, 83:11
**oath** [4] - 66:19, 66:25, 70:4, 70:5
**object** [1] - 75:8
**obligation** [8] - 25:12, 28:5, 29:16, 29:24, 32:17, 32:24, 65:12, 65:18
**obligations** [19] - 20:25, 24:11, 25:7, 28:14, 29:18, 30:4, 33:10, 33:13, 34:24, 35:23, 52:25, 65:8, 65:15, 65:23, 66:2, 67:1, 67:19, 67:25, 91:19
**obtaining** [1] - 47:14
**obviously** [10] - 53:10, 74:20, 78:20, 78:25, 86:10, 88:19, 89:3, 91:18, 94:6, 95:23
**occur** [2] - 7:2, 46:17
**occurred** [2] - 43:20, 70:3
**occurs** [1] - 43:18
**October** [2] - 11:8, 78:1
**OF** [1] - 1:2
**OFFICE** [1] - 2:19
**often** [1] - 7:3
**Omni** [5] - 14:12, 14:13, 14:17, 14:20, 16:21
**Omnivision** [3] - 14:18, 15:12, 17:18
**once** [3] - 64:23, 87:4, 87:16

**one** [92] - 6:4, 6:14, 9:19, 9:25, 10:2, 10:25, 11:2, 11:5, 11:10, 11:17, 14:17, 15:20, 16:3, 16:17, 16:25, 17:4, 17:6, 17:8, 17:10, 17:11, 22:6, 22:11, 23:7, 23:11, 27:1, 28:16, 28:21, 32:5, 33:9, 33:19, 34:12, 34:13, 34:15, 42:10, 44:11, 44:13, 45:4, 45:10, 45:16, 45:18, 45:22, 45:23, 46:10, 48:2, 48:3, 48:8, 51:22, 56:11, 56:22, 58:6, 58:8, 58:10, 58:21, 59:10, 59:11, 61:12, 62:1, 63:17, 63:22, 69:11, 69:12, 70:24, 72:12, 74:6, 76:3, 76:18, 76:19, 78:25, 81:7, 82:4, 82:8, 82:23, 83:4, 83:8, 83:11, 84:3, 85:10, 85:19, 90:21, 90:25, 92:11, 93:2, 94:24, 95:10, 96:21, 97:11
**one's** [1] - 7:20
**ones** [1] - 36:16
**open** [6] - 41:14, 42:19, 69:12, 70:2, 90:12, 90:18
**opinion** [3] - 68:1, 70:11, 78:5
**opportunity** [2] - 61:22, 77:19
**opposed** [1] - 60:1
**opposing** [2] - 82:13, 90:18
**opposition** [1] - 57:22
**option** [1] - 48:8
**oral** [3] - 83:20, 98:16, 98:18
**Oral** [1] - 1:17
**order** [5] - 56:12, 57:5, 57:18, 98:19
**Order** [10] - 10:1, 78:24, 88:25, 89:1, 89:8, 94:13, 95:11, 96:4, 97:22, 98:16
**orders** [1] - 76:10
**Orders** [1] - 95:17
**ordinarily** [1] - 7:5
**ordinary** [1] - 94:5
**otherwise** [1] - 94:2
**ought** [6] - 7:14, 43:21, 65:3, 86:16, 86:17, 87:10

**ourselves** [1] - 90:16
**outcome** [3] - 46:5, 53:10, 89:14
**overburdened** [1] - 86:18
**overcoming** [1] - 22:16
**overlap** [1] - 31:10
**overstate** [1] - 76:17
**overstated** [1] - 34:9
**overt** [1] - 39:23
**own** [4] - 9:14, 23:13, 23:14, 34:25

## P

**p.m** [2] - 80:3, 99:1
**Page** [12] - 23:21, 23:24, 57:9, 58:22, 62:10, 64:21, 64:24, 67:15, 67:18, 68:5, 69:24, 70:15
**paid** [1] - 52:25
**panel** [1] - 70:12
**paragraph** [5] - 23:21, 24:2, 43:19, 63:15, 64:24
**Paragraph** [7] - 37:1, 37:2, 51:24, 52:5, 52:8, 52:10, 63:18
**paragraphs** [3] - 36:25, 37:2, 37:17
**Park** [16] - 71:12
**part** [16] - 11:13, 17:1, 20:17, 21:13, 34:19, 35:4, 41:24, 48:1, 48:5, 50:16, 56:22, 76:8, 78:25, 91:20, 96:22, 96:24
**participate** [1] - 32:6
**participated** [2] - 6:1, 6:18
**participating** [5] - 8:2, 8:8, 74:25, 83:24
**particular** [5] - 18:4, 48:21, 49:20, 68:15, 90:6
**particularly** [1] - 70:13
**parties** [12] - 5:25, 6:14, 7:17, 10:9, 12:7, 13:10, 30:15, 43:15, 78:22, 83:23, 95:13, 97:7
**partner** [2] - 18:11, 51:17
**party** [5] - 8:7, 27:15, 36:12, 86:11, 96:1
**pass** [1] - 29:5
**passed** [1] - 10:21
**past** [2] - 51:5, 79:12

**paste** [1] - 58:16
**patent** [13] - 11:15, 17:6, 19:24, 20:14, 20:20, 27:14, 38:16, 42:14, 42:20, 56:23, 76:6, 82:4
**patent-by-patent** [1] - 20:20
**patented** [1] - 42:14
**patentee** [2] - 38:13, 40:12
**patents** [33] - 17:4, 24:22, 25:5, 25:25, 27:8, 27:11, 38:25, 45:20, 47:25, 48:1, 61:2, 72:21, 72:22, 73:3, 76:2, 76:16, 76:24, 76:25, 78:2, 81:3, 81:19, 81:21, 81:25, 82:1, 82:5, 82:6, 85:22, 87:14, 90:6, 90:7, 93:19, 94:9
**pattern** [1] - 26:8
**paying** [2] - 49:5, 52:14
**peak** [1] - 11:11
**pending** [18] - 11:25, 12:18, 12:20, 12:25, 13:7, 14:25, 18:20, 31:8, 51:1, 58:12, 62:1, 62:22, 63:20, 69:12, 69:18, 69:19, 72:10, 72:13
**penny** [3] - 53:14, 54:1, 54:4
**people** [7] - 46:24, 49:17, 50:7, 50:8, 80:12, 96:17, 97:14
**percent** [2] - 95:21, 96:2
**perform** [1] - 59:8
**person** [1] - 50:8
**personal** [5] - 44:6, 54:9, 71:11, 71:12, 71:13
**perspective** [1] - 6:2
**persuades** [1] - 88:13
**pertains** [1] - 83:14
**phase** [3] - 74:11, 74:12, 94:13
**Philips** [3] - 6:6, 6:14, 9:15
**phone** [1] - 95:13
**PI** [8] - 63:25, 75:3, 83:14, 83:19, 83:21, 83:23, 84:12, 98:8
**picking** [1] - 78:1
**pieces** [1] - 50:25
**pike** [1] - 61:9

**Pilar** [1] - 3:11
**PILAR** [1] - 1:21
**place** [3] - 48:8, 54:22, 79:15
**placed** [1] - 47:19
**Plaintiff** [6] - 2:11, 20:20, 26:5, 33:18, 70:22
**plaintiff** [1] - 1:10
**Plaintiff-by-Plaintiff** [1] - 20:20
**plaintiffs** [1] - 46:12
**Plaintiffs** [58] - 1:5, 3:12, 4:10, 15:20, 16:18, 18:17, 19:19, 20:23, 20:24, 21:1, 21:24, 22:7, 22:11, 24:13, 24:23, 26:21, 28:17, 28:19, 28:22, 28:23, 29:1, 30:5, 31:9, 31:16, 31:20, 32:2, 33:24, 36:13, 37:23, 38:23, 39:24, 40:2, 42:10, 42:21, 45:21, 46:17, 46:23, 47:3, 47:12, 47:15, 47:21, 48:9, 50:18, 55:17, 56:11, 61:7, 62:3, 64:23, 65:7, 65:25, 66:16, 69:9, 70:3, 71:24, 91:13, 93:19
**Plaintiffs'** [4] - 39:20, 66:15, 66:23, 69:25
**plan** [4] - 24:16, 88:2, 88:5, 88:24
**play** [3] - 33:5, 56:9, 60:12
**plead** [1] - 18:17
**pleading** [6] - 21:1, 37:14, 39:19, 65:6, 74:11, 74:12
**pleadings** [2] - 20:15, 20:18
**pled** [4] - 20:19, 36:16, 36:24, 54:15
**plural** [2] - 26:16, 71:3
**plus** [1] - 27:13
**point** [21] - 18:3, 21:9, 26:10, 33:4, 42:25, 46:15, 48:5, 49:11, 50:11, 51:23, 56:4, 61:3, 61:13, 64:17, 66:9, 66:21, 67:13, 71:7, 71:21, 92:14, 93:17
**pointed** [2] - 65:21, 67:25
**pointing** [3] - 36:12, 56:14, 58:18, 58:20,

59:6
**points** [4] - 48:17, 54:7, 54:9, 57:12
**Porter** [4] - 3:16, 3:22, 4:4, 52:1
**PORTER** [1] - 2:2
**positing** [1] - 32:13
**position** [3] - 10:12, 35:15, 72:17
**positive** [1] - 85:6
**posits** [1] - 70:18
**possible** [2] - 50:20, 55:3
**potential** [14] - 40:14, 40:15, 46:5, 54:20, 56:19, 57:8, 57:10, 61:8, 69:6, 69:19, 85:23, 85:24, 90:22
**potentially** [3] - 7:16, 8:4, 70:23
**powers** [2] - 77:15, 78:17
**practical** [1] - 6:25
**practice** [4] - 12:15, 38:25, 72:4, 92:1
**practiced** [1] - 42:17
**preceded** [1] - 6:3
**precedent** [3] - 8:2, 9:7, 65:2
**preclude** [1] - 8:24
**predecessor** [2] - 49:24, 75:15
**prefer** [1] - 7:23
**preference** [2] - 72:19, 85:9
**prejudice** [4] - 71:14, 98:8, 98:13, 98:17
**prejudiced** [1] - 76:4
**Preliminary** [1] - 63:7
**preliminary** [16] - 18:12, 19:10, 32:12, 43:14, 48:20, 49:10, 49:15, 50:22, 54:8, 55:24, 56:5, 68:14, 71:2, 71:18, 72:3, 76:9
**premature** [1] - 72:15
**preparation** [1] - 72:5
**preparations** [1] - 83:6
**prepared** [5] - 71:21, 72:1, 74:7, 76:3, 95:7
**presentation** [1] - 79:1
**presently** [1] - 96:10
**presided** [1] - 97:2
**presiding** [1] - 3:5
**press** [1] - 97:6
**presumably** [1] -

31:11
**pretrial** [1] - 81:12
**pretty** [3] - 53:9, 88:16, 88:24
**prevail** [1] - 94:24
**prevent** [1] - 48:4
**problem** [14] - 19:4, 24:17, 29:15, 34:2, 39:3, 41:21, 45:18, 45:19, 66:24, 66:25, 90:1, 90:3, 91:6
**problems** [3] - 28:14, 30:16, 30:20
**proceed** [1] - 95:7
**proceeding** [4] - 8:8, 13:23, 81:24, 99:6
**PROCEEDINGS** [1] - 3:1
**proceedings** [9] - 5:25, 6:10, 6:22, 6:25, 7:3, 7:5, 9:25, 10:1, 52:4
**produced** [4] - 56:3, 56:6, 63:24, 63:25
**product** [3] - 36:20, 36:21, 61:8
**production** [1] - 33:9
**products** [10] - 37:4, 37:5, 37:6, 37:10, 37:15, 37:18, 46:25, 47:2, 59:3, 61:14
**prompted** [2] - 6:8, 79:20
**promptly** [2] - 72:20, 88:16
**pronounce** [1] - 23:12
**proper** [1] - 30:4
**proposal** [4] - 78:19, 78:22, 79:21, 85:10
**proposed** [3] - 89:1, 89:11, 95:11
**proposing** [1] - 89:9
**proposition** [1] - 71:25
**prove** [3] - 19:19, 38:13, 97:10
**provide** [5] - 9:12, 22:13, 23:11, 38:11, 54:16
**provided** [6] - 16:2, 22:5, 24:23, 41:24, 51:15, 65:21
**provides** [1] - 16:1
**providing** [8] - 48:23, 49:1, 49:6, 51:20, 52:2, 52:6, 52:11, 52:14
**proving** [2] - 93:3, 93:10
**provisions** [2] - 29:14,

29:20
**purport** [1] - 9:9
**purposes** [3] - 21:13, 68:13, 90:17
**put** [6] - 11:16, 46:19, 48:3, 52:23, 53:3, 54:8
**putting** [1] - 66:13

**Q**

**questions** [3] - 43:9, 56:9, 68:1
**quick** [1] - 88:24
**quickly** [1] - 29:9
**quite** [3] - 50:20, 65:2, 66:24

**R**

**raise** [3] - 51:2, 71:14, 94:21
**raised** [1] - 71:7
**randomly** [1] - 78:1
**rather** [3] - 33:16, 35:12, 63:19
**reach** [1] - 84:23
**reaction** [2] - 43:11, 76:5
**read** [5] - 23:22, 26:4, 43:20, 93:25, 94:12
**reading** [1] - 93:19
**ready** [3] - 72:6, 72:7, 76:4
**real** [5] - 13:5, 13:6, 93:18, 94:9, 97:5
**Real** [1] - 99:7
**Real-Time** [1] - 99:7
**reality** [2] - 91:16, 91:17
**realize** [1] - 81:9
**really** [16] - 12:17, 12:23, 25:11, 30:9, 30:12, 31:3, 32:13, 42:8, 43:18, 54:13, 54:14, 56:8, 71:12, 74:6, 76:6, 91:3
**reason** [9] - 10:10, 11:13, 20:17, 35:4, 40:10, 63:1, 72:3, 76:8, 97:12
**reasonable** [25] - 22:13, 24:12, 25:15, 26:1, 28:4, 32:25, 33:23, 38:4, 38:9, 39:9, 40:4, 40:13, 40:15, 40:21, 40:22, 54:19, 56:18, 56:24, 57:7, 57:10, 61:8, 68:18, 69:5, 69:14,

69:19
**reasons** [4] - 84:2, 97:11, 98:17, 98:19
**rebut** [1] - 61:23
**receipt** [1] - 33:19
**received** [2] - 6:13, 33:14
**recent** [1] - 27:24
**recently** [1] - 73:8
**Recess** [2] - 68:22, 84:20
**recessed** [1] - 99:1
**recitation** [1] - 59:5
**recite** [1] - 84:8
**recited** [1] - 60:19
**recognize** [1] - 70:1
**recognized** [3] - 7:1, 8:11, 92:16
**recognizing** [1] - 77:20
**recollection** [1] - 81:19
**recommend** [2] - 30:3, 32:1
**reconsider** [1] - 50:21
**record** [31] - 33:18, 39:9, 39:16, 40:13, 49:7, 49:11, 51:15, 52:14, 52:24, 53:3, 53:14, 54:9, 55:10, 55:14, 55:20, 56:23, 57:8, 57:20, 59:9, 59:13, 60:21, 60:22, 60:24, 60:25, 61:22, 61:24, 62:20, 65:20, 69:8, 98:20
**recused** [1] - 97:3
**reference** [2] - 17:10, 69:24
**referring** [1] - 23:24
**regard** [2] - 30:18, 65:4
**regarding** [1] - 31:14
**regardless** [1] - 32:23
**regime** [1] - 7:7
**reimbursement** [3] - 55:16, 62:2, 69:10
**related** [4] - 19:9, 32:8, 33:25, 93:4
**relates** [1] - 70:17
**relating** [2] - 11:17, 70:16
**relationship** [1] - 97:8
**relative** [1] - 64:1
**relevant** [2] - 30:21, 32:7
**relied** [4] - 20:3, 50:16, 70:13, 70:16
**relief** [3] - 7:12, 7:21, 9:12

**rely** [4] - 20:7, 50:7, 59:15, 69:23
**remain** [1] - 11:22
**remainder** [1] - 12:12
**remaining** [2] - 15:18, 67:23
**remember** [2] - 34:17, 96:4
**renew** [2] - 98:9, 98:13, 98:17
**repeated** [1] - 59:1
**repercussions** [1] - 45:14
**reply** [3] - 43:19, 43:20, 93:3
**report** [1] - 6:11
**reporter** [1] - 68:10
**Reporter** [1] - 99:7
**representation** [3] - 50:16, 52:2, 62:19
**representing** [5] - 10:18, 14:6, 52:16, 52:17, 53:12
**request** [11] - 33:19, 46:19, 62:21, 65:3, 65:4, 65:6, 67:5, 69:10, 78:21, 86:14, 89:4
**requested** [1] - 53:8
**requests** [5] - 34:12, 53:9, 64:22, 67:6, 67:9
**required** [3] - 6:24, 7:5, 22:14
**requires** [2] - 11:15, 36:20
**requisite** [2] - 54:13, 57:17
**researched** [1] - 85:3
**residency** [1] - 97:18
**resolution** [3] - 12:6, 13:10, 78:9
**resolve** [2] - 31:21, 45:11
**resolved** [10] - 5:23, 11:20, 11:24, 31:24, 31:25, 32:4, 71:10, 72:12, 85:11, 88:23
**resolving** [1] - 43:13
**resources** [2] - 30:18, 86:18
**respect** [2] - 77:14, 78:17
**respected** [1] - 7:7
**respectfully** [1] - 31:5
**respond** [2] - 61:23, 89:10
**response** [2] - 32:13, 64:6
**rest** [3] - 39:8, 39:16,

79:6
result [1] - 48:25
results [1] - 95:6
rethink [1] - 76:9
reversed [1] - 41:4
review [1] - 7:14
RICHARD [1] - 2:15
Richard [2] - 4:17, 10:18
RIESTER [2] - 2:4, 4:5
Riester [1] - 4:4
rigid [1] - 30:20
rise [12] - 3:3, 5:24, 29:17, 32:18, 33:2, 65:3, 68:21, 68:23, 70:9, 84:19, 84:21, 98:25
risk [1] - 54:24
Rob [2] - 3:12, 3:13
ROBERT [1] - 1:22
ROSENZWEIG [21] - 2:22, 5:18, 5:21, 6:9, 6:21, 7:20, 8:9, 8:25, 9:6, 9:16, 9:19, 9:23, 10:8, 83:10, 83:13, 83:16, 83:18, 83:23, 84:1, 84:7, 84:15
Rosenzweig [1] - 5:14
rosenzweig [1] - 5:17
route [1] - 48:9
routine [1] - 8:1
Rowing [2] - 6:1, 8:10
rule [3] - 13:11, 18:8, 18:13
ruled [1] - 97:2
ruling [2] - 10:2, 50:19, 70:6, 70:8, 70:25, 83:20, 84:3, 86:10, 90:3, 90:4, 91:12, 91:18
rulings [2] - 85:17, 86:2
Ryman [1] - 4:25
RYMAN [2] - 2:16, 5:1

**S**

sampling [1] - 57:22
satisfied [1] - 57:15
satisfy [1] - 59:19
Saturday [1] - 79:13
save [1] - 86:18
scenario [2] - 45:19, 85:11
scenes [1] - 10:10
schedule [3] - 78:11, 87:16, 87:18
scheduled [4] - 73:14, 73:21, 80:17, 81:13
Scheduling [4] -

88:25, 89:1, 89:8, 95:11
SCHWARTZ [51] - 2:6, 3:24, 21:12, 23:6, 23:10, 48:16, 49:3, 49:6, 49:9, 49:13, 49:19, 50:3, 50:11, 50:14, 51:9, 51:14, 51:24, 52:10, 52:17, 52:20, 53:1, 54:6, 54:11, 55:8, 55:12, 55:18, 55:21, 55:23, 56:2, 58:7, 58:13, 58:15, 59:23, 59:25, 60:3, 60:15, 60:21, 61:10, 61:16, 61:20, 62:5, 62:8, 62:14, 64:12, 73:8, 75:15, 75:19, 81:18, 81:21, 81:24, 82:3
Schwartz [2] - 3:23, 8:11
seat [1] - 96:13
seated [3] - 3:7, 68:24, 84:22
second [6] - 23:23, 51:12, 51:22, 70:6, 84:4, 95:15
secondly [2] - 29:12, 69:14
Section [1] - 7:4
see [13] - 6:7, 23:8, 27:22, 37:16, 58:11, 59:1, 65:6, 74:10, 83:8, 83:11, 84:18, 88:6, 96:4
seeing [1] - 96:4
seek [1] - 65:1
seem [7] - 7:10, 7:11
Semi [7] - 11:21, 37:19, 39:23, 40:20, 66:13, 66:14, 77:4
SEMICONDUCTOR [2] - 1:7, 1:12
Semiconductor [3] - 4:17, 11:1, 42:20
seminal [1] - 25:3
sense [3] - 74:18, 78:22, 92:22
sent [1] - 65:21
sentence [1] - 24:18, 25:21, 26:3, 26:4, 26:10, 29:12, 60:18, 60:23, 65:1, 70:15, 70:24
sentences [1] - 67:4
separate [4] - 11:15, 94:7, 94:8, 94:20
separation [1] - 77:14
September [1] - 11:7

Sequans [1] - 52:3
serious [1] - 53:9
serve [1] - 22:18
set [2] - 76:20, 82:19
sets [3] - 54:13, 57:4, 76:19
setting [1] - 56:15
settled [1] - 52:7
settlements [2] - 12:3, 47:15
seven [3] - 11:7, 40:2, 40:19
short [2] - 7:22, 83:19
shot [1] - 88:19
show [8] - 17:8, 20:16, 23:17, 36:12, 37:23, 38:3, 38:13, 38:22
showed [1] - 27:8
showing [1] - 47:2
shows [1] - 78:4
sided [1] - 30:16
sides [1] - 86:8
Sidney [1] - 5:13
SIDNEY [1] - 2:22
SIEMENS [1] - 1:9
Siemens [25] - 2:11, 3:15, 4:3, 5:7, 16:7, 16:9, 17:9, 37:3, 40:21, 46:3, 52:16, 52:19, 52:21, 52:25, 53:2, 53:5, 58:19, 59:7, 59:18, 60:9, 62:18, 62:22, 63:5, 63:7, 65:10
Siemens's [1] - 58:20
signal [1] - 37:12
significant [3] - 54:24, 91:4, 97:12
Simenauer [1] - 4:18
SIMENAUER [2] - 2:16, 4:20
similar [6] - 11:17, 26:8, 27:10, 56:19, 77:16, 96:15
similarly [3] - 21:10, 27:7, 52:10
simultaneous [1] - 7:24
simultaneously [1] - 7:2
single [4] - 17:8, 45:22, 53:14, 54:1
sit [2] - 49:15, 83:17
sitting [1] - 42:23, 49:17
situated [1] - 16:21
situation [4] - 9:11, 70:18, 74:4, 96:15
six [14] - 53:7, 53:19, 72:21, 73:2, 73:4,

73:5, 81:3, 81:20, 85:21, 87:2, 87:4, 87:14, 96:14, 96:20
skip [2] - 55:8, 56:7
slide [1] - 59:11
Slide [2] - 28:12, 58:8
slides [1] - 10:21
SMITH [1] - 2:14
Smith [2] - 5:2, 10:18
so.. [1] - 59:25
Socionext [3] - 52:3, 52:12, 58:10
soft [1] - 37:9
SOFTWARE [1] - 1:9
software [13] - 15:20, 16:1, 16:17, 22:5, 22:11, 24:23, 25:24, 31:17, 36:13, 37:6, 42:10, 46:12, 58:2
Software's [1] - 63:7
sole [1] - 67:19
solely [6] - 24:4, 24:25, 25:24, 60:16, 70:17, 70:18
solution [2] - 30:20, 31:4
someone [1] - 49:19
son [1] - 79:13
soon [2] - 88:14, 95:12
sorry [14] - 3:23, 5:5, 5:7, 14:7, 14:15, 15:14, 23:2, 45:6, 51:13, 57:17, 62:10, 63:11, 76:25, 82:11
sort [1] - 93:5
sought [2] - 7:21, 8:16
sound [1] - 79:16
sounded [1] - 12:3
speaking [2] - 52:18, 52:20
specific [10] - 20:19, 20:25, 26:15, 26:20, 27:20, 31:22, 36:15, 38:23, 52:24, 69:17
specifically [4] - 15:25, 61:13, 69:22, 78:21
specifics [1] - 53:2
spend [1] - 53:13
spent [4] - 54:1, 54:4, 75:17, 79:12
spoken [1] - 39:25
square [1] - 60:13
stage [1] - 15:6
standard [3] - 18:25, 54:13, 57:4
standing [3] - 55:3, 65:3, 67:7
staple [1] - 36:22

STARGATT [1] - 1:21
start [4] - 5:17, 10:15, 19:17, 54:12
started [1] - 11:1
starting [1] - 26:10
starts [3] - 23:22, 24:3, 64:24
state [7] - 35:14, 41:13, 41:15, 41:18, 42:19, 57:17, 97:6
statement [2] - 24:24, 66:18
statements [2] - 20:22, 20:23
States [2] - 3:4, 5:12
STATES [1] - 1:1
status [5] - 6:11, 9:21, 10:23, 74:9, 98:8
statute [4] - 6:24, 11:14, 36:19, 38:10
statutes [1] - 48:4
stay [5] - 17:19, 49:23, 50:15, 50:21, 90:23
stayed [1] - 54:24, 81:22
staying [1] - 45:3
STEINBERG [2] - 2:19, 5:11
Steinberg [2] - 5:10, 5:12
stenographic [1] - 99:5
step [4] - 7:22, 26:18, 43:25, 76:12
steps [3] - 58:18, 58:19, 59:8
still [9] - 15:17, 45:21, 53:17, 58:12, 72:12, 74:11, 85:22, 96:16
stop [2] - 38:1, 77:10
straight [1] - 12:17
strategy [4] - 47:18, 48:2, 69:15
Street [1] - 1:15
strikes [1] - 75:23
string [1] - 6:16
subject [38] - 18:16, 18:18, 18:24, 19:6, 19:12, 19:14, 19:19, 19:25, 20:16, 24:11, 26:24, 26:25, 27:12, 27:16, 28:5, 29:17, 34:18, 34:23, 35:2, 35:8, 35:18, 35:22, 37:21, 38:4, 39:2, 56:13, 56:21, 61:17, 66:4, 67:19, 67:24, 69:10, 69:20, 70:23, 71:8, 71:12, 71:16, 72:18

**submit** [10] - 8:2, 34:14, 39:13, 40:17, 46:7, 47:24, 59:18, 66:22, 67:4, 95:11
**submitted** [1] - 95:16
**subsequent** [2] - 22:19, 48:10
**subsequently** [1] - 72:14
**subset** [4] - 31:24, 76:16, 76:24, 85:24
**substantial** [5] - 36:23, 37:15, 37:20, 54:16, 54:25
**substantially** [1] - 65:2
**substantiate** [4] - 54:18, 54:23, 56:6, 56:24
**successfully** [1] - 84:23
**sudden** [1] - 71:15
**sue** [10] - 27:14, 41:14, 42:20, 46:22, 47:3, 47:4, 47:12, 47:20, 57:3, 70:2
**sued** [10] - 11:12, 22:13, 24:5, 24:13, 24:25, 26:5, 40:23, 53:8, 56:4, 67:2
**sues** [1] - 50:8
**sufficient** [8] - 20:16, 25:11, 26:6, 29:24, 35:7, 61:16, 70:8, 96:5
**suggest** [3] - 33:17, 75:24, 94:1
**suggesting** [1] - 89:22
**suggestion** [1] - 79:25
**suing** [3] - 25:23, 47:15, 61:6
**suit** [7] - 11:17, 18:9, 39:10, 49:23, 50:15, 54:3
**suitable** [1] - 36:23
**suits** [1] - 11:15
**summarized** [1] - 55:4
**superman** [2] - 74:22, 74:23
**supplement** [1] - 95:19
**supplier** [2] - 57:3, 59:14
**supplier's** [4] - 57:13, 57:24, 59:3, 59:4
**suppliers** [12] - 51:20, 54:17, 54:20, 54:24, 55:1, 55:3, 56:2, 57:17, 58:1, 59:6, 59:11, 59:17

**suppliers'** [2] - 54:25, 59:15
**suppliers's** [1] - 61:14
**support** [4] - 18:17, 19:11, 35:10, 57:21
**Supreme** [6] - 25:14, 30:9, 30:11, 30:12, 54:14, 97:17
**surprised** [1] - 8:22
**suspect** [1] - 75:11
**SYNOPSYS** [1] - 1:4
**Synopsys** [22] - 3:25, 4:7, 16:7, 16:9, 17:9, 28:12, 36:25, 37:1, 40:21, 46:3, 49:4, 51:16, 52:11, 52:13, 52:17, 58:18, 59:7, 59:19, 60:9, 62:6, 62:13
**Synopsys'** [1] - 37:3
**system** [2] - 44:1, 47:20
**SYSTEMS** [1] - 1:4

**T**

**table** [3] - 3:19, 42:23, 49:17
**talks** [3] - 24:8, 37:17, 38:12
**targeted** [1] - 7:12
**TAYLOR** [1] - 1:21
**TC** [1] - 48:7
**technically** [1] - 35:16
**ten** [1] - 11:2
**tension** [1] - 27:23
**terms** [5] - 15:4, 72:15, 73:19, 89:14, 94:1
**Tessera** [1] - 5:22
**test** [3] - 25:14, 25:17, 93:5
**Texans** [1] - 79:11
**Texas** [3] - 20:3, 73:9, 79:4
**Thales** [2] - 6:6, 6:14
**THE** [329] - 1:1, 1:2, 1:19, 3:6, 3:10, 4:9, 4:12, 4:15, 5:6, 5:16, 5:19, 6:7, 6:20, 7:18, 8:6, 8:21, 9:4, 9:14, 9:17, 9:22, 10:6, 10:13, 10:19, 11:23, 12:2, 12:8, 12:12, 12:16, 12:23, 13:3, 13:5, 13:12, 13:15, 13:17, 14:2, 14:5, 14:7, 14:12, 14:15, 14:19, 14:24, 15:3, 15:7, 15:11, 15:15,

15:19, 15:23, 16:11, 16:14, 16:20, 16:23, 17:10, 17:13, 17:21, 18:1, 18:14, 18:21, 19:1, 19:3, 19:16, 19:21, 20:2, 20:6, 20:10, 21:4, 21:11, 21:14, 21:19, 21:21, 22:2, 22:9, 22:20, 22:23, 22:25, 23:4, 23:8, 23:11, 23:14, 23:16, 23:20, 23:23, 24:1, 24:10, 24:17, 25:8, 25:10, 25:20, 26:13, 26:15, 27:4, 27:22, 28:1, 28:9, 28:21, 28:25, 29:4, 29:9, 29:11, 29:23, 30:1, 30:7, 31:1, 32:11, 32:17, 32:21, 32:23, 33:15, 33:22, 34:3, 34:6, 34:15, 35:11, 35:20, 36:4, 38:1, 38:3, 38:7, 39:11, 39:15, 40:11, 40:23, 40:25, 41:6, 41:13, 41:16, 42:1, 42:4, 42:7, 42:22, 43:1, 43:5, 43:7, 43:10, 43:13, 43:18, 44:16, 44:19, 45:6, 46:9, 46:14, 46:22, 47:6, 47:10, 47:14, 47:19, 48:12, 48:14, 49:1, 49:5, 49:7, 49:11, 49:16, 50:1, 50:4, 50:13, 51:8, 51:12, 51:22, 52:9, 52:13, 52:18, 52:23, 53:3, 53:13, 53:18, 53:21, 53:25, 54:5, 54:10, 55:5, 55:10, 55:13, 55:19, 55:22, 56:1, 58:5, 58:12, 58:14, 59:21, 59:24, 60:2, 60:12, 60:18, 61:3, 61:15, 61:19, 61:21, 62:7, 62:9, 62:15, 62:18, 62:25, 63:3, 63:6, 63:10, 63:12, 63:14, 63:16, 63:22, 64:2, 64:7, 64:10, 64:14, 64:19, 65:10, 65:13, 66:8, 66:11, 66:19, 66:24, 67:8, 67:11, 67:16, 68:6, 68:9, 68:15, 68:21, 68:24, 71:6, 71:22, 72:9, 72:21, 72:24, 73:2, 73:6, 73:11, 73:14, 73:19,

73:21, 73:25, 74:5, 74:13, 74:16, 74:19, 74:23, 75:2, 75:5, 75:8, 75:10, 75:13, 75:17, 75:21, 76:21, 76:25, 77:9, 77:12, 77:14, 78:6, 78:16, 79:3, 79:6, 79:9, 79:11, 79:15, 79:23, 80:4, 80:8, 80:14, 80:17, 80:21, 80:25, 81:5, 81:9, 81:15, 81:20, 81:23, 82:1, 82:10, 82:15, 82:22, 83:3, 83:12, 83:15, 83:17, 83:21, 83:25, 84:5, 84:9, 84:17, 84:22, 85:13, 85:15, 86:1, 86:5, 86:8, 86:12, 86:16, 86:23, 87:7, 87:9, 87:13, 87:24, 88:2, 88:5, 88:22, 89:6, 89:16, 89:19, 89:25, 90:19, 91:6, 91:10, 91:24, 92:5, 92:8, 92:11, 92:16, 92:21, 92:25, 93:7, 93:14, 93:25, 94:4, 94:12, 95:3, 95:9, 95:15, 95:19, 95:22, 95:25, 96:3, 96:10, 98:1, 98:5, 98:7, 98:12, 98:16, 98:23, 98:25
**themselves** [1] - 42:2
**they've** [10] - 11:23, 14:24, 22:9, 34:22, 65:22, 67:8, 68:3, 90:9, 91:20
**thinking** [5] - 44:4, 45:9, 74:16, 94:7, 94:11
**third** [5] - 27:14, 27:15, 36:12, 60:4, 96:1
**Third** [4] - 19:22, 19:23, 20:7, 20:9
**third-party** [2] - 27:15, 96:1
**Thomas** [1] - 63:19
**thoughts** [1] - 83:15
**three** [26] - 11:18, 14:13, 14:17, 14:19, 15:1, 15:20, 16:3, 16:17, 17:11, 22:6, 22:7, 22:11, 25:5, 27:11, 46:12, 46:23, 54:17, 55:3, 56:2, 59:5, 59:10, 59:16, 62:3, 75:20, 82:6,

84:2
**throughout** [4] - 20:13, 34:18, 35:3, 71:8
**throw** [1] - 43:10
**Thursday** [1] - 1:16
**timeline** [2] - 15:4, 41:1
**Title** [1] - 7:4
**titled** [1] - 63:6
**today** [9] - 4:17, 11:21, 51:1, 66:18, 95:23, 98:4, 98:18, 98:20, 98:24
**together** [2] - 46:19, 78:23
**Tom** [1] - 62:24
**tomorrow's** [1] - 83:6
**ton** [3] - 31:21, 38:11, 42:15
**took** [3] - 38:14, 51:4, 51:10
**tool** [2] - 92:3, 92:4
**tools** [9] - 16:7, 17:6, 37:18, 37:20, 38:23, 46:3, 57:14, 59:14, 93:5
**topic** [1] - 62:10
**total** [1] - 85:24
**toto** [1] - 72:1
**touch** [1] - 48:20
**touched** [1] - 48:18
**toward** [1] - 7:12
**town** [1] - 79:6
**track** [2] - 43:22, 50:9
**tracking** [1] - 96:6
**TRADE** [1] - 2:21
**trade** [1] - 7:2
**Trade** [2] - 2:23, 5:12
**transactions** [1] - 30:16
**transcript** [3] - 77:17, 93:15, 99:5
**treat** [4] - 21:5, 21:10, 97:15
**trial** [26] - 10:6, 10:11, 31:12, 44:16, 45:17, 72:1, 72:5, 73:21, 74:2, 74:10, 76:1, 76:4, 78:7, 80:21, 81:1, 81:13, 82:2, 82:16, 82:18, 87:10, 87:13, 87:17, 88:12, 89:1, 90:24, 94:20
**TRIAL** [1] - 1:7
**trials** [2] - 10:4, 82:3
**tried** [3] - 6:18, 48:4, 90:7
**trigger** [1] - 70:22
**Triozzi** [1] - 99:7

**true** [5] - 24:18, 10:8, 35:7, 40:6, 99:4
**Trust** [4] - 96:16, 96:17, 96:23, 96:24
**Trusts** [1] - 96:21
**try** [5] - 45:22, 46:7, 56:13, 77:20, 79:24
**trying** [5] - 25:20, 25:22, 86:8, 94:18, 94:19
**turn** [3] - 28:3, 36:7, 76:17
**turned** [1] - 96:20
**turning** [1] - 73:16
**turns** [2] - 6:14, 96:22
**twenty** [1] - 12:10
**twenty-eight** [1] - 12:10
**two** [29] - 7:22, 9:21, 9:25, 11:8, 11:22, 12:11, 15:20, 20:15, 21:6, 27:11, 29:1, 39:19, 46:1, 51:4, 51:9, 51:10, 57:12, 69:7, 70:11, 76:18, 77:18, 78:12, 81:21, 81:25, 82:3, 82:5, 83:5, 87:1
**two-step** [1] - 7:22
**type** [2] - 6:13, 94:6
**types** [1] - 37:13
**typically** [2] - 77:24, 78:3

## U

**U.S** [4] - 2:19, 2:21, 2:23, 99:8
**U.S.C** [1] - 36:19
**U.S.D.C.J** [1] - 1:19
**ultimately** [2] - 25:17, 30:10
**under** [22] - 7:25, 9:6, 15:25, 18:8, 18:19, 18:24, 26:22, 28:3, 30:10, 48:7, 61:17, 66:19, 66:25, 69:1, 70:4, 70:5, 70:8, 78:2, 78:10, 85:6, 88:20
**underlining** [1] - 31:14
**underlying** [33] - 16:6, 16:9, 17:2, 18:20, 22:3, 22:18, 24:21, 30:5, 31:6, 31:19, 31:21, 31:25, 32:4, 32:8, 32:10, 34:10, 38:21, 38:24, 39:22, 40:1, 40:7, 41:24,

42:8, 45:23, 55:16, 60:11, 67:21, 68:2, 69:11, 69:12, 71:10, 90:23
**understood** [3] - 12:22, 32:18, 68:20
**underway** [1] - 51:6
**unfortunately** [1] - 38:10
**United** [2] - 3:3, 5:12
**UNITED** [1] - 1:1
**unless** [5] - 11:17, 19:24, 43:8, 68:7, 86:24
**unlikely** [2] - 90:11, 90:15
**unprecedented** [2] - 7:22, 9:8
**unusual** [1] - 70:11
**up** [17] - 5:9, 17:25, 18:1, 32:11, 32:13, 35:4, 49:9, 56:4, 56:15, 58:17, 62:25, 66:23, 85:9, 87:18, 87:22, 93:3, 93:10
**update** [1] - 10:23
**user** [10] - 17:8, 27:9, 27:15, 38:19, 38:22, 39:7, 58:18, 58:20, 58:25, 69:25
**uses** [3] - 37:17, 37:20, 93:13

## V

**vague** [1] - 33:16
**valid** [3] - 45:20, 67:7, 67:9
**validity** [5] - 43:23, 45:4, 46:11, 77:1, 89:15
**value** [1] - 94:9
**various** [2] - 48:18, 52:12
**VENABLE** [1] - 2:9
**Venable** [2] - 3:13, 4:3
**Venn** [1] - 92:8
**venue** [1] - 48:7
**versa** [1] - 82:9
**versus** [2] - 32:14, 60:6
**VESCHI** [1] - 5:4
**vice** [1] - 82:8
**view** [3] - 21:9, 39:8, 61:11
**Vrana** [1] - 3:12
**VRANA** [1] - 1:22
**vs** [2] - 6:6, 6:14

## W

**wait** [4] - 67:8, 75:2, 81:9, 83:21
**waited** [1] - 40:2
**waiting** [3] - 13:10, 40:19, 87:20
**wants** [4] - 55:7, 78:16, 78:18, 83:19
**warrant** [1] - 9:7
**Washington** [1] - 79:5
**wasting** [1] - 93:23
**watch** [1] - 28:2
**ways** [2] - 55:2, 55:4
**wealth** [2] - 55:23, 59:9
**week** [13] - 9:24, 22:16, 51:5, 72:6, 79:12, 80:23, 81:1, 81:4, 81:18, 89:2, 95:10, 97:23
**welcome** [1] - 5:10
**whistles** [1] - 72:5
**whole** [8] - 37:11, 37:13, 41:8, 42:24, 44:1, 47:20, 86:17, 88:10
**wild** [1] - 85:10
**Wilkie** [1] - 3:25
**WILKIE** [1] - 2:6
**willing** [2] - 89:25, 94:15
**Wilmington** [1] - 1:15
**wise** [5] - 30:17, 30:21, 31:2, 68:19, 79:2
**wish** [1] - 88:11
**withdraw** [2] - 84:10, 84:11
**withdrawn** [1] - 98:8
**WOLF** [53] - 2:3, 3:21, 42:24, 43:3, 43:6, 68:12, 68:20, 71:5, 71:20, 71:24, 72:11, 72:23, 73:1, 73:4, 73:7, 73:13, 73:16, 73:24, 74:1, 74:6, 74:18, 75:11, 76:15, 77:18, 78:13, 79:5, 79:18, 80:19, 80:23, 82:21, 82:25, 83:2, 84:13, 85:6, 85:14, 85:19, 86:25, 87:8, 87:12, 87:20, 87:25, 88:4, 88:18, 90:11, 95:4, 95:14, 95:18, 95:20, 95:23, 96:2, 98:3, 98:10, 98:15
**Wolf** [3] - 3:20, 54:6, 71:5

**wondering** [1] - 6:8
**WOODWORTH** [2] - 2:10, 3:14
**Woodworth** [1] - 3:13
**words** [3] - 21:16, 50:5, 91:7
**works** [2] - 31:17, 83:5
**worry** [1] - 88:20
**worth** [1] - 88:22
**written** [1] - 5:20

## Y

**year** [11] - 10:25, 13:20, 31:8, 40:16, 40:18, 44:12, 44:15, 73:25, 78:8, 81:14, 93:12
**years** [2] - 6:3, 6:16
**Young** [2] - 3:11, 3:12
**YOUNG** [1] - 1:21